IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOSTON DYNAMICS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 22-1483 (MN) |
| | ) |
| GHOST ROBOTICS CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**JOINT LETTER TO THE HONORABLE MARYELLEN NOREIKA
<u>FOR CASE NARROWING</u>**

OF COUNSEL:

Steven C. Cherny
QUINN EMANUEL URQUHART
  &amp; SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000

Deepa Acharya
QUINN EMANUEL URQUHART
  &amp; SULLIVAN, LLP
1300 I Street, NW, Suite 900
Washington, DC  20005
(202) 538-8000

December 12, 2023

MORRIS, NICHOLS, ARSHT &amp; TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

*Attorneys for Plaintiff*

Dear Judge Noreika:

This letter is submitted on behalf of the parties in the above-captioned case. Pursuant to the Court's April 28, 2023 Scheduling Order (D.I. 22), the parties have conferred regarding case narrowing but were unable to reach agreement. Therefore, the parties are submitting separate proposals in this joint letter.

**Plaintiff's Position:** Boston Dynamics has alleged in its preliminary infringement contentions that the accused Ghost Robotics' robots infringe 110 claims across seven patents. Ghost Robotics has asserted over 70 unique prior art references across the seven patents and from what Boston Dynamics can surmise, around 200 obviousness combinations in *one single* invalidity chart in its preliminary invalidity contentions. Boston Dynamics proposes the following case-narrowing schedule to further narrow *both* the number of claims and prior art-based invalidity:

| | **Preliminary Narrowing** |
|---|---|
| May 27, 2024 | Boston Dynamics will narrow its claims to a total of 32 claims (no more than 10 claims per patent) |
| June 10, 2024 | Ghost Robotics will narrow its prior art references to a total of 35 prior art references (no more than 12 references per patent) and 130 obviousness combinations (one combination is two or more prior art references per claim) |
| | **Final Narrowing** |
| August 30, 2024 | Boston Dynamics will narrow its claims to a total of 21 claims (no more than 5 claims per patent) |
| September 7, 2024 | Ghost Robotics will narrow its prior art references to a total of 28 prior art references (no more than 5 references per patent) and 84 obviousness combinations (one combination is two or more prior art references per claim) |

**Ghost Robotics' Deficient Discovery Impedes Boston Dynamics' Ability to Narrow Now**

Although the parties have exchanged preliminary infringement and invalidity contentions and a list of claim terms to be construed, the parties have not exchanged proposed claim constructions (due December 19) and have not served final infringement contentions (due January 25), final invalidity contentions (due February 15), or final validity and non-infringement contentions (due February 29). Three months of fact discovery remain, followed by claim construction briefing and a June 28 *Markman* hearing. Further, Ghost Robotics has yet to make its accused robots available for inspection, and inspection and analysis of Ghost Robotics' source code is still ongoing. Moreover, no depositions have been taken to date (despite Boston Dynamics' service of deposition notices), and there are many key technical and other documents missing from Ghost Robotics' production. Ghost Robotics makes much of the documents it produced in May and the substantial completion of document production deadline that passed last Friday, yet Boston Dynamics has outlined to Ghost Robotics the severe deficiencies in its technical document production, and Ghost Robotics as of *last week* said it was still investigating core technical documents, such as software design documents, testing, user manuals, teardowns, etc. Notwithstanding its delay in making key evidence and discovery available to Boston Dynamics, Ghost Robotics seeks an aggressive case narrowing proposal.

The Honorable Maryellen Noreika
December 12, 2023
Page 2

**Boston Dynamics' Proposal Is Balanced And Consistent With This Court's Prior Orders**

In contrast to Ghost Robotics' aggressive proposal, Boston Dynamics' proposal for a two-stage case narrowing makes sense given the early nature of the case, balances the quantity and timing of the narrowing for *both* parties with some flexibility, and is consistent with, if not more conservative than, this Court's prior case narrowing orders. Under Boston Dynamics' proposal, the preliminary narrowing will result in Boston Dynamics asserting, on average, fewer than five claims per patent and Ghost Robotics asserting, on average, five unique prior art references per patent and fewer than 19 obviousness combinations per patent. But given the overlap in the asserted technology and that some of the patents are part of the same families, Ghost Robotics will have a lot of flexibility to assert prior art and obviousness combinations within the limits proposed by Boston Dynamics. Boston Dynamics' final narrowing would further reduce the number of asserted claims and prior art references to, on average, three claims and four unique prior art references (and 12 obviousness combinations) per patent.

Separately, Boston Dynamics proposes that the preliminary narrowing occur before the June 28 *Markman* hearing, and that Boston Dynamics will narrow the asserted claims after claim construction briefing is complete but with sufficient time before the parties are required to meet and confer on June 4 regarding claim construction to narrow issues. Ghost Robotics has yet to provide Boston Dynamics with substantive non-infringement contentions in response to Boston Dynamics' interrogatory asking for them, so Boston Dynamics needs Ghost Robotics' claim construction briefing to understand what Ghost Robotics is likely to rely on for non-infringement.

Boston Dynamics' case narrowing proposal is consistent with this Court's prior case narrowing orders. For example, *PureWick Corp. v. Sage Products LLC*, C.A. No. 19-1508-MN (D. Del.), involved four asserted patents and 37 asserted claims. In *PureWick*, this Court ordered: (1) an initial narrowing of 32 asserted claims, 35 prior art references, and 130 obviousness initial narrowing before the *Markman* hearing; and (2) a final narrowing to 16 asserted claims, 20 prior art references, and 48 obviousness combinations after the exchange of expert reports but before dispositive motions. D.I. 87, 89. That resulted in, on average, eight asserted claims, less than nine prior art references, and over 32 obviousness combinations per patent for the preliminary narrowing and four asserted claims, five prior art references, and 12 obviousness combinations per patent for the final narrowing. Here, Boston Dynamics' proposal for both stages of narrowing is the same as in *PureWick* in several respects—the timing of the narrowing as well as the resulting quantity of claim and prior art references left after the preliminary narrowing—but is even more conservative than *PureWick* in other respects because there are seven asserted patents in this case, requiring Boston Dynamics to narrow further than the plaintiff in *PureWick* to reach these limits.

**Ghost Robotics' Proposal Is Lopsided And Unfairly Biases Boston Dynamics**

In contrast, Ghost Robotics' case narrowing proposal is lopsided in its favor. For example, although Ghost Robotics proposes that Boston Dynamics preliminarily narrow its claims to no more than four claims per patent, Ghost Robotics affords itself up to "4 prior art-based invalidity grounds per asserted claim" without any limitation as to the number of unique prior art references. This leaves open the possibility of Ghost Robotics relying on any number of prior art references for each ground. Under this proposal, any purported prior art narrowing based on its proposal is

The Honorable Maryellen Noreika
December 12, 2023
Page 3

essentially sleeves off their vest. Ghost Robotics' final narrowing proposal further requires Boston Dynamics to effectively assert, on average, two claims per patent while reserving for itself up to "3 prior art-based invalidity grounds per asserted claim," which suffers from the same issues as its preliminary narrowing for invalidity.

Ghost Robotics' concern that Boston Dynamics' proposal would not reduce the number of issues to be addressed (*e.g.*, Boston Dynamics could include system claims but drop the corresponding method claim) as part of its invalidity defense is speculative and unreasonable. Boston Dynamics is proposing to reduce the number of its asserted claims by *over 70%* in its proposed preliminary narrowing, which will necessarily reduce the number of issues that will eventually be tried. Although method and system claims can be similar, they each pose different issues. For example, method and system claims can bring in different prior art, despite their similarities. Further, the issues related to proving infringement or any affirmative defenses between system and method claims do not overlap completely. Method claims may imply an order of steps or divided infringement issue that is not applicable to system claims while the marking doctrine would apply to system, but not method, claims. Contrary to Ghost Robotics' contention, the dropping of either type of claim (and with the amount of narrowing that Boston Dynamics proposes) will necessarily narrow the issues to be tried.[1]

Further, Ghost Robotics' proposal on the timing of its proposed preliminary narrowing is unduly prejudicial to Boston Dynamics. Namely, its proposal would require Boston Dynamics to narrow the number of asserted claims in **about two weeks** but would give itself **about seven weeks** to narrow its prior art references, which lands on the same day Ghost Robotics serves its final invalidity contentions. Ghost Robotics has not adequately explained why Boston Dynamics should be required to narrow its claims before it even receives Ghost Robotics' final invalidity and non-infringement contentions and other key discovery mentioned above. Ghost Robotics contends that the claims should be narrowed before claim construction briefing to reduce any purported waste but the parties must follow this Court's practices and limit the number of terms for briefing to 10 terms. The 10 terms briefed will focus on the parties' most important issues, which are not likely to be affected by the preliminary narrowing.

---

[1] Some of the asserted patents do not have method claims, so Ghost Robotics' arguments would not apply to those patents.

The Honorable Maryellen Noreika
December 12, 2023
Page 4

**Defendant's Position:**

**Preliminary Case Narrowing:**

1. **December 29, 2023** – Boston Dynamics narrows its claims to a total of **no more than 4 claims per patent** (i.e., no more than 28 claims overall if all 7 patents continue to be asserted)

2. **February 15, 2024** – Ghost Robotics narrows its invalidity contentions to include **no more than 4 prior art-based invalidity grounds per asserted claim**.

**Final Case Narrowing:**

1. **August 30, 2024** – Boston Dynamics narrows its claims to a total of **no more than 15 claims overall and no more than 3 claims per patent**

2. **September 7, 2024** – Ghost Robotics narrows its invalidity contentions to include **no more than 3 prior art-based invalidity grounds per asserted claim**.

Boston Dynamics is presently asserting 109 claims across 7 patents. No narrowing has occurred to date. The parties dispute (1) when the initial narrowing should occur and (2) the nature of the claim narrowing.

**Regarding the timing**: Ghost Robotics proposes that the parties' initial narrowing occur before claim construction briefing begins. This avoids the parties briefing claim terms relating to claims that will ultimately not be asserted by Boston Dynamics.

Boston Dynamics is well poised to begin narrowing its asserted claims now because it received Ghost Robotics's core technical documents seven months ago (in May), the substantial completion deadline for document production passed on December 8th, and Boston Dynamics's expert has been reviewing Ghost Robotics's source code for months. Boston Dynamics wrongly alleges delay and that many key technical documents are missing from Ghost Robotics's production. Ghost Robotics substantially completed its document production on December 8th, leaving Boston Dynamics ample time before December 29th for any final review of documents. Moreover, Boston Dynamics has repeatedly alleged that the source code is the primary means of understanding how the products function for purposes of the asserted claims. Boston Dynamics's expert has been inspecting Ghost's source code for months now.

Boston Dynamics's proposal, on the other hand, waits until after claim construction briefing is *completed* for the initial claim narrowing, which will likely result in wasted effort for the parties on terms appearing in later-dropped claims. It will also result in the parties submitting briefing to the Court that may include terms that are ultimately dropped after Boston Dynamics narrows its claims. The parties both have limited resources, and it would not be beneficial for the Court for those resources to be spent briefing terms the Court will not need to decide, rather than focusing on briefing the terms that will be relevant to the Court. Moreover, while the parties will comply with the Court's procedures and brief no more than 10 terms during claim construction, Boston Dynamics has recently objected to Ghost Robotics identifying 22 terms (from over 100 asserted claims) for construction. Reducing the number of asserted claims *before* claim construction,

The Honorable Maryellen Noreika
December 12, 2023
Page 5

however, will help to ensure that the 10 most relevant terms are briefed and addressed by the Court, and to avoid later unnecessary *O2 Micro* disputes regarding claim terms that could and should have been addressed during the claim construction process.

**Regarding the nature of the narrowing**: The parties' second dispute is on the nature of the claim narrowing. Ghost Robotics proposes that Boston Dynamics's initial narrowing limit the asserted claims to a total of no more than 4 claims per patent, which results in no more than 28 claims overall if all 7 patents continue to be asserted. By limiting the number of claims from each patent to 4, this proposal ensures that the quantity of subject matter at issue is reduced (i.e., that the case is actually narrowed). Boston Dynamics's proposal, on the other hand, could result in a reduction in the number of asserted claims *without any issue narrowing* because it permits up to 10 claims per patent. Because each patent has multiple claim sets, under Boston Dynamics's proposal, it could drop all the method claims from each patent, leaving all the system claims directed to the same subject matter, resulting in *no narrowing of the issues*. It would not be fair for Ghost Robotics to be required to then narrow its invalidity contentions when the same scope of subject matter is still at issue after Boston Dynamics's initial claim reduction.

For similar reasons, Ghost Robotics proposes that its narrowing be presented in a manner that couples the number of asserted invalidity grounds to the asserted claims. Ghost Robotics specifically proposes that its invalidity positions be limited on a number of *grounds* rather than a number of prior art references. (E.g., claim X of patent '123 is invalid under § 102 under reference A would be one ground, invalid under § 103 under references A+B would be a second ground, and invalid under § 103 under references A+C+D would be a third ground.) Boston Dynamics by contrast seeks to limit Ghost Robotics to a specific number of references (and an unreasonably low number of references relative to the number of claims), which would unreasonably limit Ghost Robotics's ability to address the disparity of claims potentially at issue. Ghost Robotics's proposal ensures that Ghost Robotics is entitled to challenge the subject matter of each claim that continues to be asserted, even if Boston Dynamics's narrowing does not reduce the number of issues in the case.

Boston Dynamic's complaints about the number of obviousness combinations are resolved by either parties' proposal, and are irrelevant. Further, given that Ghost Robotics's proposal limits the number of *grounds* rather than references, it will result in a substantial reduction of asserted prior art as compared to the invalidity contentions served thus far.

Respectfully,

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)

JBB/bac
Attachments

cc:   Clerk of the Court (via hand delivery)
      All counsel of record (via electronic mail)