# Exhibit 14

```
09:32:59   1                    IN THE UNITED STATES DISTRICT COURT
                                 FOR THE DISTRICT OF DELAWARE
           2


           3
               BOSTON DYNAMICS, INC.,        )
           4                                 )
                            Plaintiff,       )
           5                                 ) C.A. No. 22-1483(MN)
               v.                            )
           6                                 )
               GHOST ROBOTICS CORPORATION,   )
           7                                 )
                            Defendant.       )
           8


           9
                                 Thursday, September 12, 2024
          10                     10:40 a.m.
                                 Claim Construction Hearing
          11


          12                     844 King Street
                                 Wilmington, Delaware
          13


          14


          15   BEFORE:   THE HONORABLE MARYELLEN NOREIKA
                         United States District Court Judge
          16


          17


          18   APPEARANCES:

          19
                              MORRIS NICHOLS ARSHT & TUNNELL LLP
          20                  BY:  JACK BLUMENFELD, ESQ.
                              BY:  BRIAN P. EGAN, ESQ.
          21
                              -and-
          22
                              QUINN EMANUEL URQUHART & SULLIVAN
          23                  BY:  STEVEN C. CHERNY, ESQ.
                              BY:  JARED NEWTON, ESQ.
          24                  BY:  DEEPA ACHARYA, ESQ.

          25
                                         Counsel for the Plaintiff
```

1     APPEARANCES CONTINUED:

2

3
              SHAW KELLER LLP
4             BY:  KAREN KELLER, ESQ.

5             -and-

6             FINNEGAN HENDERSON FARABOW GARRETT & DUNNER LLP
              BY:  FRANK DECOSTA, ESQ.
7             BY:  KELLY S. HORN, ESQ.
              BY:  MILAN FELICIELLO, ESQ.

8

9                       Counsel for the Defendant

10

11

12                 _ _ _ _ _ _ _ _ _ _ _ _ _ _

13

09:33:16 14

09:33:16 15           COURTROOM DEPUTY:   All rise.   The District

09:56:05 16  Court in and for the District of Delaware is now in session.

09:56:08 17  The Honorable Maryellen Noreika presiding.

10:02:57 18           THE COURT:  Good morning, everyone.   Please be

10:03:00 19  seated.

10:03:02 20           All right.   Mr. Blumenfeld.

10:03:05 21           MR. BLUMENFELD:   Thank you, Your Honor.   Jack

10:03:11 22  Blumenfeld from Morris Nichols for the plaintiff, Boston

10:03:14 23  Dynamics.   With me at counsel table is Steve Cherny and

10:03:19 24  Deepa Acharya from Quinn Emanuel.   Behind them are Jared

10:03:22 25  Newton from Quinn Emanuel and my partner, Brian Egan.   In

10:03:27  1    the first row, Jason Fiorillo and James Bowman from Boston

10:03:33  2    Dynamics.

10:03:33  3              THE COURT:  All right.  Good morning.

10:03:35  4              MR. BLUMENFELD:  Thank you.

10:03:35  5              MS. KELLER:  Good morning, Your Honor.  Karen

10:03:40  6    Keller from Shaw Keller on behalf of the defendant, Ghost

10:03:43  7    Robotics.  With me today is Frank DeCosta, Kelly Horn, and

10:03:50  8    Milan Feliciello.

10:03:50  9              THE COURT:  Good morning, everyone.  Thanks for

10:03:54 10    being here.  We have the Markman and I think we'll do what

10:04:02 11    we typically do, just go term by term.  I know there is some

10:04:06 12    you sort of briefed together.  If you feel like they should

10:04:09 13    do it together, we can, but generally term by term.

10:04:12 14              Mr. Cherny.

10:04:14 15              MR. CHERNY:  Okay.  May it please the Court,

10:04:16 16    Your Honor.  I am going to start with the '588 patent.

10:04:23 17    Handling gait disturbances of asynchronous timing.  I'm

10:04:27 18    going to spend a few minutes giving a product broad overview

10:04:31 19    of the patent because it provides a context here.

10:04:34 20              THE COURT:  We have read them, but I'm happy to

10:04:36 21    do it.

10:04:37 22              MR. CHERNY:  I was confident you read them,

10:04:39 23    that's why it's only a two-page overview.  Basically this is

10:04:42 24    about a robot and it's dealing with it walks normally on a

10:04:46 25    flat surface and it's called the gait.  The gait is the

10:04:49 1   pattern of walking.  So you'll see the reference to gait.

10:04:53 2   No one is looking to construe gait, but you'll see about

10:04:58 3   disturbing the gait or affecting the gait.  The gait is the

10:05:01 4   robot has a pattern of walking, for example, it lifts its

10:05:05 5   leg up at the beginning and maybe five seconds later it puts

10:05:08 6   it down.

10:05:08 7          This patent is about dealing with situations

10:05:11 8   where you deal with rough terrain and I think pop up

10:05:15 9   disturbances is in the patent and uneven terrain is

10:05:19 10  something that is talked about where essentially the robot

10:05:21 11  is coming up on something that is not expected.  There are

10:05:24 12  three examples right up front that deal with the claims at

10:05:28 13  issue in this patent.  That's claims 1, 12 and 17 which are

10:05:31 14  the independent claims here.  Each deal with specific

10:05:34 15  circumstance.

10:05:35 16         Claim 1 deals with the circumstance where the

10:05:37 17  robot has a disturbance.  You'll see in a second a

10:05:43 18  disturbance is anything that can or is anticipated to

10:05:46 19  disturb the gait of the robot.  And it talks about this.

10:05:49 20  This actually corresponds to claim 1.

10:05:51 21         When you look at claim 1, it talks about the

10:05:53 22  robot coming to a disturbance and then as we'll talk about

10:05:56 23  later with terms like swing state, what happens is when that

10:06:00 24  happens, it goes out of swing state and exits and goes into

10:06:03 25  step down state because of the disturbance.  That's claim 1.

10:06:07  1          The second examples right up front in the patent

10:06:10  2   is basically the hill one which is basically it detects an

10:06:14  3   indication that the first foot of the robot has contacted

10:06:17  4   ground surface before the end of the target swing

10:06:21  5   trajectory.

10:06:21  6          We'll talk about target swing trajectory later.

10:06:25  7   But basically because the robot has this timing, it's going

10:06:29  8   forward on its gait and if it hits the ground surface before

10:06:32  9   the end of each cycle trajectory, it realizes it's on a

10:06:36 10   hill.  So, for example, it's five seconds, for example, I'm

10:06:39 11   just making five seconds up as a time period, at three

10:06:42 12   seconds it hits the ground, it says okay, I'm hitting a

10:06:46 13   hill.

10:06:46 14          And the third example is the opposite where

10:06:50 15   essentially in that same anticipated time, it doesn't hit

10:06:54 16   ground and it's going to a decline.  Those are basically --

10:06:57 17   that's claim 17.  And those three examples are the three

10:07:00 18   independent claims here.  So that's so much for the

10:07:05 19   overview.

10:07:05 20          So for the first term, determining -- detecting,

10:07:09 21   we say it's determining the existence of.  Ghost said

10:07:12 22   measuring in the beginning brief and now it's changing it to

10:07:16 23   sensing.  Neither measure or sensing really captures it.

10:07:19 24   And before I go into --

10:07:20 25          THE COURT:  Can you explain to me not because I

10:07:22  1  am going to use it in connection with how I construe the

10:07:27  2  claim, but what is the -- like measuring, I understood why

10:07:31  3  you didn't want to say measuring.  Sensing versus

10:07:34  4  determining, I'm not sure I get what the problem is.

10:07:37  5          MR. CHERNY:  I anticipated that question and I

10:07:39  6  have got an answer.

10:07:40  7          So sensing as Ghost is using it talking about

10:07:44  8  the sensors picking something up.  As you can see there are

10:07:48  9  any number of examples throughout the patent --

10:07:50 10          THE COURT:  They use sensors as a reason why I

10:07:52 11  should say measuring, because they say it's measured by a

10:07:55 12  sensor.  Are they saying sensing isn't just I sense that

10:08:01 13  there is going to be an answer coming that it has to be done

10:08:05 14  by a sensor, is that the issue?

10:08:07 15          MR. CHERNY:  That's what they point to.  At that

10:08:09 16  point I don't think you are giving any more clarity.  I

10:08:12 17  understand there is always the inclination to change the

10:08:17 18  word to say it's been construed.  I don't think sensing adds

10:08:20 19  anything and I think it actually detracts here because many

10:08:24 20  times when detecting is being used, it's being used where at

10:08:27 21  data is being taken and then another order of operation is

10:08:31 22  occurring where, for example, the robot is saying I'm

10:08:35 23  comparing this data to this data and that result I'm

10:08:39 24  detecting an indication that I'm on a hill.  That's not

10:08:42 25  sensing.

10:08:42  1          You can argue and say at that point you're

10:08:45  2   sensing you are on the hill, but the truth is what you

10:08:48  3   really are determining the existence of, as you see in the

10:08:51  4   examples, when I put that foot out and I hit the ground

10:08:54  5   before I'm anticipating because it's in the middle of the

10:08:57  6   trajectory or the target swing trajectory.  The way the

10:08:59  7   patent talks about is detecting an indication that you're on

10:09:02  8   an incline and it does that not just by essentially an

10:09:06  9   sensor, it figures it out.

10:09:08 10          And so throughout the patent there are times

10:09:09 11   when there is a direct thing that's being sensed or

10:09:12 12   detected, but the other thing is sometimes the robot is

10:09:15 13   actually figuring out and that's also being described as

10:09:18 14   detecting the indication of or detecting the disturbance.

10:09:23 15          So I don't think sensing is enough scope or --

10:09:27 16   it's just different than the idea that here detecting also

10:09:31 17   can be mean figuring out.

10:09:35 18               THE COURT:  Okay.

10:09:36 19               MR. CHERNY:  I'm doing my best.

10:09:38 20               THE COURT:  You can go through quickly because I

10:09:40 21   have more questions as to why I should limit it than why I

10:09:44 22   shouldn't.

10:09:44 23               MR. CHERNY:  Okay.  Well, then, I think

10:09:47 24   basically -- I'll go through it fast.  I think the Court

10:09:51 25   understands.  There are plenty of things that are detected

10:09:55 1    like a slip of the foot.  Here is a perfect example of what

10:10:00 2    I was saying on slide 13.  Here it's detecting a slip of the

10:10:01 3    foot.  You're not measuring it.  You're not even sensing it.

10:10:04 4    You are taking data that you are getting and what happens is

10:10:07 5    the robot does this kinematic odometry and comparing --

10:10:11 6              THE COURT:  I like the way -- I looked through

10:10:13 7    your slide, you had that underlined as if I knew what

10:10:18 8    kinematic odometry is.  I can look up the words, but it was

10:10:21 9    kind of funny.  Is that something that's not measured?

10:10:23 10             MR. CHERNY:  Yeah, it's not measured.  Basically

10:10:25 11   it's using -- so for example, if you the estimate is differ

10:10:29 12   from an amount greater, I will say this is not highlighted

10:10:33 13   on your copy or the other side's copy, because as I was

10:10:35 14   going through it, I realized it didn't get highlighted.  "If

10:10:39 15   the estimates differ by an amount greater than a certain

10:10:42 16   threshold, it may indicate that the assumption is not true,

10:10:45 17   and that a significant slip of the robot's foot may have

10:10:45 18   occurred."

10:10:46 19             So this data coming in, this is all through the

10:10:48 20   patent, and one of the things that they actually -- I'll get

10:10:52 21   past all of this, here is the example I told you about how

10:10:55 22   you're detecting an indication that it's going up an

10:10:59 23   incline.  And that picture was very important as you can

10:11:01 24   see.

10:11:02 25             THE COURT:  I liked it.  I got it.

10:11:03  1              MR. CHERNY:  Okay.  So I'm going to go through

10:11:05  2   this fast, same thing with the decline.  Let's get to where

10:11:09  3   they go.  So first they say nothing in the intrinsic

10:11:12  4   evidence departs from the terms.

10:11:13  5              THE COURT:  I know, I'm not really sold that it

10:11:16  6   needs measuring.

10:11:17  7              MR. CHERNY:  I'm moving forward.  Here is a

10:11:21  8   plain meaning of detecting that the Federal Circuit had

10:11:23  9   adopted.  And they point you, the sensors may measure

10:11:26 10   activity as somehow the sensing and measuring, but the next

10:11:30 11   example really kind of points out the issue there, for

10:11:33 12   example, the robot may include sensors in its legs that may

10:11:37 13   detect the position of the legs with respect to the robot's

10:11:39 14   body, it then says this may allow the robot to determine

10:11:42 15   that a target swing trajectory of a swinging leg may

10:11:46 16   intersect or nearly intersect with the current position of

10:11:49 17   the stance leg.

10:11:50 18              In such cases detecting indication, two of the

10:11:53 19   claims say detecting indication, no one is viewing detecting

10:11:56 20   indication as different from disturbance in this regard.  A

10:11:59 21   possible leg collision may be a disturbance that causes a

10:12:03 22   reaction by the robot.  Here you see the robot is figuring

10:12:07 23   stuff out.  When it's detecting an indication of a possible

10:12:10 24   collision, it's taking data from the sensors, but then by

10:12:13 25   the time it detects the indication, it's another level of

1    thought.

2           So all the robot is doing is detecting

3    disturbance, detecting indication, it's figuring is there a

4    disturbance there, is there an indication there, and the

5    patent is replete with different examples of disturbances

6    and indications that sometimes are direct, but sometimes are

7    a result of something like kinematic odometry, whatever that

8    means, which basically is comparing data to come to a

9    conclusion.

10          And we're done.

11          THE COURT:  Okay.

12          MS. HORN:  Good morning, Your Honor.  So I heard

13   your concern is mostly why should I limit this claim as

14   opposed to why should I not adopt the broader clarification

15   that Boston Dynamics is proposing.  So I just want to start

16   by pointing out that there is a little bit of confusion

17   about what our construction is.  Primarily we're arguing

18   that this term should get the plain and ordinary meaning.

19   Detecting is a common English word --

20          THE COURT:  My problem with plain and ordinary

21   meaning is, it seems like you both say plain and ordinary

22   meaning of detecting, but I don't really agree what that is.

23   So if I were just to say oh, give it the plain and ordinary

24   meaning, I get a bunch of expert reports from you all that

25   says it doesn't detect because it's not measuring it and

10:13:47 1    they would come in and say hey, you have to deal with this

10:13:52 2    on *Daubert* and keep those opinions out.

10:13:55 3            I get it, I don't believe that measurement is

10:13:56 4    the plain and ordinary meaning, so if that's what you're

10:13:59 5    saying is the plain and ordinary meaning, you're going to

10:14:02 6    have to convince me.  I'm not going to give you plain and

10:14:05 7    ordinary meaning because it is just going to wind up being

10:14:09 8    problematic for me in the future.

10:14:11 9            MS. HORN:  Sure, we proposed sensing as a

10:14:13 10   potential compromise.

10:14:15 11           THE COURT:  What I don't understand is what's

10:14:16 12   the difference between sensing and determining?  Why do you

10:14:19 13   care about -- if you're like, okay, it doesn't have to

10:14:23 14   measure, it can just sense it.  What's the difference

10:14:25 15   between sensing and determining?

10:14:27 16           MS. HORN:  So I think the key difference --

10:14:29 17           THE COURT:  How does it matter?  Before you give

10:14:32 18   me something that I'm not going to understand, what is the

10:14:36 19   argument that makes this claim scope a dispute?  What is it,

10:14:43 20   is it infringement, is it validity, what is the issue that

10:14:46 21   this claim term, if I construe it for them versus you is

10:14:50 22   relevant to?

10:14:52 23           MS. HORN:  I believe it's relevant to issues of

10:14:54 24   infringement as well as validity.

10:14:55 25           THE COURT:  Okay.  How is it relevant to issues

10:14:57  1    of infringement?

10:14:58  2              MS. HORN:  Well, so it goes to the key question

10:15:02  3    of whether the claim is limited to some sort of lower --

10:15:07  4              THE COURT:  No, no, no, no, tell me what is the

10:15:09  5    argument that you are making.  Again, I just want everyone

10:15:14  6    to be clear, I am not construing this claim to make it

10:15:16  7    infringing or not infringing or valid or invalid, I just

10:15:20  8    want to understand, because I don't really understand what

10:15:23  9    the problem between sensing and determining is, and I have

10:15:28 10    found that the easiest way for me to understand is the

10:15:32 11    actual concrete example.  You say we don't infringe because

10:15:36 12    our robot dog doesn't detect.  Why does your robot dog not

10:15:42 13    detect?

10:15:43 14              MS. HORN:  Sure.  And this is getting into

10:15:44 15    confidential information so I would request --

10:15:47 16              THE COURT:  No.  Just tell me as much as you can

10:15:50 17    -- I cannot believe that you can't say, and we're not going

10:15:53 18    to have it, we're going to have a jury and we're going to

10:15:56 19    have a trial, that you can't say we don't measure because we

10:15:58 20    don't use a sensor or whatever.  So no, we're not closing

10:16:02 21    the courtroom.

10:16:03 22              MS. HORN:  Sure.  So the Ghost Robotics don't do

10:16:06 23    the type of lower level data acquisition process that's in

10:16:11 24    the claim.  They do something higher level.  They use some

10:16:15 25    sort --

10:16:15  1          THE COURT:  Do they detect at any level?

10:16:17  2          MS. HORN:  No, I would say that they -- that

10:16:19  3  they don't when detecting is given its proper meaning.

10:16:23  4          THE COURT:  No.  No.  Let's say do they

10:16:26  5  determine.  Let's say that I assume that detecting just

10:16:29  6  means determining whether it exist.

10:16:32  7          MS. HORN:  So if you adopt Boston Dynamics'

10:16:35  8  construction, the experts are in agreement that yes, there

10:16:39  9  is -- the robots do meet that particular claim limitation.

10:16:43 10          THE COURT:  And so then what is the difference

10:16:46 11  between sensing, why would it -- and you're going to say

10:16:49 12  that the experts don't agree if I were to say it means

10:16:53 13  sensing; right?

10:16:55 14          MS. HORN:  The experts have not opined on

10:16:57 15  sensing because that was not something that was originally

10:17:00 16  proposed.  They have opined on --

10:17:02 17          THE COURT:  Has there been expert discovery

10:17:05 18  already in this case?

10:17:06 19          MS. HORN:  Yes.

10:17:06 20          THE COURT:  So what are you going to do if I

10:17:09 21  adopt your construction of sensing?

10:17:11 22          MS. HORN:  Well, that was a proposed compromise

10:17:14 23  that we had proposed during the negotiation over the claim

10:17:18 24  construction briefing which again --

10:17:19 25          THE COURT:  So you no longer want me to adopt

10:17:22  1    that?

10:17:22  2            MS. HORN:  No, we would ask that, you know, if

10:17:24  3    you did adopt sensing as a particular construction in this

10:17:27  4    case that you would give us the opportunity for the experts

10:17:30  5    to weigh in on that construction.

10:17:32  6            THE COURT:  All right.  So then tell me why -- I

10:17:38  7    still don't have a clue why sensing is different than

10:17:42  8    determining the existence of.

10:17:44  9            MS. HORN:  Sure.  So sensing refers to --

10:17:47 10            THE COURT:  Sensing seems broader to me, I can

10:17:49 11    sense something without actually knowing it's there.

10:17:52 12            MS. HORN:  Well, so I think that's the question.

10:17:54 13    The question is, sensing refers to this lower level data

10:17:58 14    acquisition process --

10:17:59 15            THE COURT:  I don't know what that means.  There

10:18:01 16    is nothing in the claims that says lower level acquisition

10:18:05 17    process.  That's my problem.  Maybe that's true in looking

10:18:10 18    at source code or something, but the claim doesn't say lower

10:18:14 19    level acquisition process.

10:18:16 20            MS. HORN:  Sure.  So it doesn't.  But that is

10:18:19 21    the overall theme that comes out when you look at the claims

10:18:23 22    collectively as a whole.

10:18:24 23            THE COURT:  Yes.  But I'm construing this -- go

10:18:30 24    ahead.  Nevermind.  Go ahead.

10:18:32 25            MS. HORN:  So I'll just point out that

10:18:34 1    determining the existence of is a high level step that would

10:18:38 2    be performed by something like a processor, not a lower

10:18:42 3    level step that would be performed by something like a

10:18:45 4    sensor.  And both -- everywhere that the specification talks

10:18:48 5    about this type of detecting, it's talking about sensing.

10:18:52 6    It's talking about you use a sensor to acquire a particular

10:18:55 7    parameter.  It's not talking about first you use a sensor to

10:18:59 8    acquire a particular parameter, then we've claimed what the

10:19:02 9    processor does with that particular piece of information.

10:19:05 10           And if you take their broader interpretation of

10:19:10 11   determining the existence of and you try to plug it into

10:19:14 12   some of the claims, they don't make sense.  For example,

10:19:16 13   claim 7 says detecting the disturbance to the gait of the

10:19:20 14   robot comprises detecting that --

10:19:24 15           THE COURT:  Am I supposed to be looking at

10:19:25 16   something, because I can't read anything up there.

10:19:28 17           MS. HORN:  Sure.  I'm actually referring to

10:19:30 18   claim 7.

10:19:30 19           THE COURT:  But you're reading it so fast.  If

10:19:33 20   you want me to actually understand what you're saying, I got

10:19:36 21   to follow along with you.  So I'll try to pull it up.

10:19:53 22           Okay.  Got it.

10:19:54 23           MS. HORN:  Sure.  So claim 7 in the latter half

10:19:57 24   of claim 7, the wherein clause, the second wherein clause

10:20:02 25   begins with detecting the disturbance to the gait of the

10:20:04  1  robot further comprises, and then it says, detecting that

10:20:09  2  the second foot has lost contact with the ground surface.

10:20:13  3          And so if you take their construction of

10:20:16  4  determining the existence of and you put it in there, then

10:20:20  5  this disturbance detection comprises determining the

10:20:24  6  existence of that the second foot has lost contact with the

10:20:27  7  ground surface.  And so the detection --

10:20:31  8          THE COURT:  What that really means is

10:20:32  9  determining that the second foot has lost contact with the

10:20:38 10  ground surface.

10:20:39 11          MS. HORN:  Right.  And so that refers --

10:20:40 12          THE COURT:  Determining the existence of and

10:20:43 13  determining that really don't -- that one is not really a

10:20:47 14  stretch for me to understand what that means.

10:20:49 15          MS. HORN:  Sure, but it's referring again to

10:20:51 16  this processor level action.  But the claims themselves are

10:20:54 17  not limited to -- this is not a processor implemented

10:20:58 18  method, this is an overall method.  And what the methods are

10:21:01 19  talking about are the detection of the disturbance, not

10:21:06 20  necessarily the processing of the data to figure out that

10:21:08 21  you had a disturbance.  It's the actual detection of the

10:21:12 22  disturbance itself.

10:21:13 23          And when you look at what the specification says

10:21:16 24  about that, you know, it's always this sort of sensing

10:21:20 25  operation that's happening.  You would need something more

10:21:24  1    like a processor implemented method for this type of

10:21:28  2    determining.

10:21:29  3              And I'll also point out that the claims use the

10:21:33  4    term "determining" throughout and they also use the term

10:21:36  5    "detecting" which seems to suggest that these are two

10:21:38  6    separate and different types of operations.

10:21:41  7              THE COURT:  Okay.

10:21:56  8              MS. HORN:  And that's all we had on this term

10:21:59  9    unless Your Honor has any further questions.

10:22:01 10              THE COURT:  All right.  That's all.  Thank you.

10:22:03 11              All right.  The second and the third terms, are

10:22:10 12    you doing these separately or together?

10:22:12 13              MR. CHERNY:  It's up to you, Your Honor.

10:22:14 14              THE COURT:  So this one I need a little bit of

10:22:18 15    help with because I understand -- first of all, they say we

10:22:24 16    need to determine what state is.  A state just seems to be

10:22:28 17    the condition that the robot is in.  Is that right?

10:22:31 18              MR. CHERNY:  Correct.

10:22:32 19              THE COURT:  I'll ask them, too.  But you agree

10:22:34 20    that that's all it is.  Is it standing, waiting, is it in

10:22:38 21    the middle of walking, is it going up a hill, is it doing

10:22:42 22    whatever it's going to do?

10:22:43 23              MR. CHERNY:  In this regard it's the state of

10:22:46 24    the leg, the first leg being in a swing state, the second

10:22:49 25    state being the leg in a swing state.

10:22:51  1          THE COURT:  But generally a state for the robot

10:22:53  2    is the condition.  Here it's the swing state because the leg

10:22:56  3    is doing the swinging.

10:22:57  4          MR. CHERNY:  Correct.

10:22:57  5          THE COURT:  Okay.  So then we have the swing

10:23:05  6    state which seems to be when the robot -- I think this is

10:23:09  7    actually in your papers someplace, though it's not your

10:23:13  8    construction, the swing state is when the robot foot lifts

10:23:17  9    off the ground, swings forward and makes contact again with

10:23:20 10    the ground.

10:23:21 11          MR. CHERNY:  That is one time.  Swing state is

10:23:23 12    defined as ending, but the spec is two different criteria.

10:23:27 13    Either it gets to the end of the swing state trajectory in

10:23:30 14    which case it doesn't hit the ground, that's the, for

10:23:33 15    example, it goes to the downhill situation where it gets to

10:23:35 16    the end of the trajectory.  So if you look at -- and I have

10:23:38 17    a slide.  Swing state ends at that point where it's not

10:23:41 18    hitting the ground.  Whereas if it hits the ground, it has

10:23:46 19    -- swing state has ended.  In a normal flat surface with no

10:23:50 20    disturbances or indications of a hill or whatever, I think

10:23:53 21    though both coincide because --

10:23:56 22          THE COURT:  Do you have a picture?

10:23:57 23          MR. CHERNY:  Sure.  I want to help the Court

10:23:59 24    with one thing just to bring you up to speed in terms of

10:24:02 25    where we are in the case.  This is the case where you have

10:24:05  1    told everybody they should do expert reports early and have

10:24:08  2    the experts --

10:24:09  3              THE COURT:  Use both.

10:24:09  4              MR. CHERNY:  I want to make sure it's clear and

10:24:11  5    obviously changing it at this point would obviously change

10:24:15  6    -- I'll go through.  And if a slide is not being helpful,

10:24:18  7    I'm happy to push pass.

10:24:21  8              There is the swing state.  Basically the swing

10:24:23  9    state is when it's moving through the swing trajectory.  As

10:24:26 10    I said before, you're --

10:24:27 11              THE COURT:  That was the other thing is you guys

10:24:29 12    use swing trajectory in your construction.  Okay.  But then

10:24:36 13    the rest of the claim uses the target swing trajectory.  So

10:24:42 14    it gets a little confusing to me.  I don't know -- when

10:24:45 15    you're talking about a swing trajectory, that to me is no

10:24:49 16    more useful to a jury than swing state because I don't even

10:24:54 17    know what it means.

10:24:54 18              MR. CHERNY:  First of all, and we're going to

10:24:57 19    construe target swing trajectory later on as part of the

10:25:00 20    claim, but the answer is it can be target swing trajectory.

10:25:03 21              Maybe to help the Court in terms of getting some

10:25:05 22    context, the answer is that the swing state is when the leg

10:25:08 23    is going through the target swing trajectory.  Now there are

10:25:12 24    times when it ends exactly at the end of the target swing

10:25:16 25    trajectory.  There are times when it ends before when it

10:25:18  1   hits the hill.  Basically there is a trajectory that's part

10:25:21  2   of the gait --

10:25:22  3              THE COURT:  Can you go back to your slides that

10:25:24  4   have the bubbles and then the uphill or the downhill.

10:25:28  5              MR. CHERNY:  Yeah, do that.  It's early on.

10:25:36  6   It's early on.

10:25:37  7              THE COURT:  There.

10:25:37  8              MR. CHERNY:  So go to the next one.  Go

10:25:44  9   backward.  For example, here.  So here first time and second

10:25:49 10   time are the target swing trajectory.  When you look at

10:25:53 11   every one of the claims, target swing trajectory talks about

10:25:59 12   when you have a beginning time and an end time.  And the

10:25:59 13   reason for that is because the robot has a gait, so it's got

10:26:00 14   a pattern that it's walking along.  And so here --

10:26:04 15              THE COURT:  Is target swing trajectory for one

10:26:07 16   of the legs is that half circle?

10:26:12 17              MR. CHERNY:  Can I approach the screen for a

10:26:15 18   second?

10:26:15 19              THE COURT:  Sure.

10:26:16 20              MR. CHERNY:  So here every one of these

10:26:19 21   hemispheres, whatever, are the target swing trajectory

10:26:23 22   because that's the gait.  So what happens here with the

10:26:27 23   hill, the target swing trajectory -- and this is claim 12

10:26:30 24   specifically, is -- it's always the same target swing

10:26:34 25   trajectory, but here you're hitting the ground before the

10:26:36  1  end of the target swing trajectory.

10:26:37  2              THE COURT:  So the target swing trajectory is

10:26:39  3  the solid line and the dotted line?

10:26:43  4              MR. CHERNY:  Correct.

10:26:43  5              THE COURT:  But the leg doesn't follow the

10:26:46  6  entire target swing?

10:26:48  7              MR. CHERNY:  Depending what happens --

10:26:50  8              THE COURT:  In that one.

10:26:51  9              MR. CHERNY:  In that one.  If I'm walking

10:26:53 10  normally, when we get to the spec in a second, you'll see

10:26:56 11  there are two defined endpoints for target swing trajectory

10:27:00 12  -- for swing state.  Swing state either ends when you get to

10:27:03 13  the end of the target swing trajectory -- go to the decline

10:27:06 14  one.

10:27:07 15              So here, target swing trajectory has ended.  And

10:27:11 16  what the robot says is okay, I have gotten to the end of the

10:27:15 17  target swing trajectory, and now as a result I still haven't

10:27:18 18  hit ground, I'm at the end of swing state there and then I

10:27:22 19  have to do something else, because I realize that I'm now on

10:27:25 20  a decline.  And so the target swing trajectory is always

10:27:29 21  that begin time and end time and there is different things

10:27:33 22  that happen during that that give rise to different actions.

10:27:36 23              And so in this case, I haven't hit the ground,

10:27:40 24  but as you can see, if I have a normal walking on a flat

10:27:43 25  surface, I actually comply with both conditions.  I hit the

10:27:47   1  ground and I am at the end of the trajectory.

10:27:49   2           THE COURT:  So your swing trajectory that is

10:27:54   3  included in your construction basically includes the half

10:28:00   4  circle, it includes the circle that includes the target

10:28:06   5  trajectory plus because you're going downhill, that is

10:28:10   6  included, that whole 170 degree or whatever that is, that

10:28:16   7  one, your swing trajectory in that case is bigger than the

10:28:24   8  target trajectory?

10:28:25   9           MR. CHERNY:  No.

10:28:26  10           THE COURT:  So where is the swing trajectory?

10:28:27  11           MR. CHERNY:  It always ends in first time second

10:28:30  12  time, these things it's always the hump --

10:28:33  13           THE COURT:  Tell me where -- first time -- oh,

10:28:36  14  so what is that other stuff?

10:28:37  15           MR. CHERNY:  That's just to indicate that I

10:28:39  16  haven't hit ground, so that's not part of any of the terms.

10:28:43  17  It's just to show you graphically that this is the situation

10:28:46  18  where it says I have come to the end of my target swing

10:28:50  19  trajectory and I have not yet hit ground and as a result, I

10:28:53  20  have to do something else.  So the target swing trajectory

10:28:56  21  is --

10:28:57  22           THE COURT:  No, no, I'm asking what you -- I

10:29:02  23  want to know what the swing trajectory is because that's

10:29:05  24  what we're talking about.  You're talking target.  I just

10:29:09  25  care what is this -- you want me to say a swing state is

10:29:13  1    when it's in a swing trajectory.

10:29:15  2              MR. CHERNY:  I can help I think, Your Honor.

10:29:16  3    It's when it's moving through the target swing trajectory

10:29:18  4    and sometimes it goes through the entirety of the target

10:29:22  5    swing trajectory, so it's not the entirety of the target

10:29:24  6    swing trajectory, the foot is moving through that --

10:29:27  7              THE COURT:  But it's never more than the target

10:29:29  8    swing trajectory.

10:29:29  9              MR. CHERNY:  No, it's never more than the target

10:29:32 10    swing trajectory.

10:29:32 11              THE COURT:  So in the case where you're on flat,

10:29:35 12    your swing trajectory is the same as the target swing

10:29:41 13    trajectory?

10:29:41 14              MR. CHERNY:  Correct.

10:29:42 15              THE COURT:  In the case where he winds up going

10:29:45 16    downhill, your swing trajectory is the same as the target

10:29:50 17    swing trajectory?

10:29:51 18              MR. CHERNY:  Yes.

10:29:51 19              THE COURT:  In the case where he's going uphill

10:29:54 20    --

10:29:54 21              MR. CHERNY:  It's not.

10:29:55 22              THE COURT:  Where he can't complete -- go

10:29:58 23    uphill, there, when you get to the X.

10:30:01 24              MR. CHERNY:  Correct.

10:30:02 25              THE COURT:  That is the end of your swing

10:30:05 1  trajectory, but the target swing trajectory is still first

10:30:07 2  time to second time.

10:30:07 3          MR. CHERNY:  And I appreciate what the Court is

10:30:10 4  saying.  Basically, and maybe it's simpler to put this in

10:30:14 5  plain English, it's basically the foot is moving through the

10:30:17 6  swing trajectory, it's moving, because there are times when

10:30:21 7  the foot is not moving according to the trajectory like it's

10:30:23 8  stepping down or whatever, sometimes that means it's out of

10:30:27 9  the trajectory.  All we're trying to capture is, since it's

10:30:30 10 not co-extensive always with the target swing trajectory.

10:30:33 11 The point of it is is just that the leg is swinging through

10:30:36 12 the trajectory, the target swing trajectory, and sometimes

10:30:40 13 it ends up stopping before it gets through the entirety.  So

10:30:44 14 it could just be that it's swinging, basically that the foot

10:30:48 15 is swinging through the path there.  And --

10:30:52 16         THE COURT:  But then so what is this -- so they

10:31:01 17 say it's not in contact with the ground, it's swinging and

10:31:04 18 it hasn't yet begun to step down.  So what is that adding

10:31:09 19 here?

10:31:10 20         MR. CHERNY:  I think it's wrong.  If I can go

10:31:11 21 back to my presentation, I think I can explain it.

10:31:14 22         So go back to that first construction.  And I do

10:31:20 23 understand, Your Honor, there is a lot of overlap with words

10:31:23 24 like swing and all that.  So here our thing is, a state --

10:31:27 25 it can be where the foot of the robot is swinging within the

10:31:31   1   target swing trajectory, all of that is what we're trying to

10:31:35   2   say there.   The main part is they're saying it has not yet

10:31:39   3   begun to step down.   What they're really doing there is

10:31:43   4   focusing on one embodiment, which is claim 1, where the

10:31:47   5   swing state ends.   Okay?   The swing state ends and then

10:31:51   6   steps down without completing the trajectory.   That's when

10:31:53   7   it hits the disturbance in claim 1.   So I'll go through it

10:31:57   8   and I think it will become clearer.

10:31:59   9            So we can get past this.   Okay.   By the way,

10:32:02  10   this is just that there is -- sometimes the patent talks a

10:32:06  11   swing forward state, everyone agrees that's the same, I want

10:32:09  12   to make sure that's clear.

10:32:10  13            This is what I was talking about before, the

10:32:12  14   swing forward state or the swing state may end when one the

10:32:15  15   foot reaches the end of the trajectory, that's the target

10:32:18  16   swing trajectory, or makes contact with the ground surface.

10:32:22  17   So those are the two conditions that define the possible

10:32:25  18   ends of swing state.   Sometimes you get both.   So if you're

10:32:29  19   walking normally, the robot is on a flat surface, it reaches

10:32:32  20   the end of trajectory at the same time it makes contact with

10:32:35  21   the ground surface.   If I get to the hill, I have hit the

10:32:38  22   ground before.   If I get to a decline, I have gotten to the

10:32:41  23   end of the trajectory, but I haven't made contact with the

10:32:44  24   ground surface.   But swing state ends if either or both

10:32:48  25   conditions are met and then you might go into stance state

10:32:54 1  or you might go into a different motion to lower the robot

10:32:58 2  to the ground.

10:32:58 3        When it hits a decline and it realizes I'm at a

10:33:02 4  ledge, I'm going to fall over, claim 17 talks about

10:33:06 5  lowering, they use language lowering the gravitational, or

10:33:10 6  something like that.

10:33:10 7        Here we go.  And, again, the main issue here is

10:33:13 8  they keep insisting that swing state cannot include ground

10:33:17 9  contact.  And the answer is it's all through the patent and

10:33:20 10  actually through what I just showed you that one of the

10:33:22 11  defined endpoints for swing state is making contact with the

10:33:25 12  ground.

10:33:26 13        Now they're focusing on Figure 11, which I'll go

10:33:29 14  to in a second which is just a diagram, it's described as an

10:33:32 15  exemplary indication just to show all the different states

10:33:36 16  that are talked about.

10:33:37 17        But there is no requirement that swing state end

10:33:42 18  before the ground, in fact, is actually contemplated,

10:33:47 19  especially when you get to a hill, that swings state goes

10:33:50 20  right up to the point that you touch the ground and then you

10:33:53 21  might switch to a different state.  And as we see in the

10:33:56 22  spec here, a second foot that is in the swing state has made

10:33:59 23  ground contact.

10:33:59 24        Now here is their definition and this is

10:34:02 25  actually -- this one caught me by surprise a little bit.

10:34:06  1    I'm on slide 33, Your Honor.  So they say the portion of

10:34:12  2    Figure 11 is defined as a foot following a smooth trajectory

10:34:16  3    toward a determined stepdown location, i.e., swing state,

10:34:20  4    the foot swinging has not yet begun to step down.  I was

10:34:23  5    like wholly mollie, the spec says that.  The quote says

10:34:28  6    26:15 to 20, I looked at 26:15 to 20, that's not what the

10:34:32  7    spec says.  What they did was they put in their construction

10:34:34  8    in quotes, so again, that portion I just showed you is

10:34:40  9    describing Figure 11.  Okay?  And they say it says, i.e.,

10:34:46 10    there is no *i.e.*, in there, and that the foot is "swinging

10:34:49 11    and has not yet begun to step down in 26:15 to 20."

10:34:55 12         That is not in 26:15 to 20.  26:15 to 20

10:34:59 13    basically says during the swing forward state the foot may

10:35:02 14    follow a smooth trajectory, maybe it doesn't, to a

10:35:05 15    determined swing height and following the trajectory toward

10:35:08 16    a determined step down location.  The swing forward state

10:35:11 17    may end when the foot reaches the end of the trajectory or

10:35:13 18    makes contact with the ground surface.

10:35:16 19         Here is what they say.  It says that the foot is

10:35:20 20    "swinging has not yet begun to step down."  How is it that a

10:35:25 21    swing state can end when it hits the ground surface if it's

10:35:28 22    not begun to step down?  What's happened here is you have a

10:35:32 23    number of different situations where the states are

10:35:35 24    different and there are ones where they're focusing on this,

10:35:39 25    they say well, look, in this thing, step down state begins

10:35:42  1    over there at 1108.  Okay?

10:35:44  2              And so may I approach again, Your Honor?

10:35:47  3              So here, it may be at the end of the trajectory,

10:35:51  4    and this is step down state.  But, of course, if you get to

10:35:55  5    the second one, makes contact with the ground, that's a

10:35:58  6    different embodiment.  So Figure 11 wasn't meant to define

10:36:02  7    every possible situation like a hill, a decline, it's just

10:36:05  8    trying to show you with a graphic there are different types

10:36:08  9    of state.  And there is nothing that says that step down

10:36:12 10    state can't also be coextensive with bottom of swing state

10:36:17 11    when the swing state hits the ground to end.

10:36:18 12              THE COURT:  So I understand swing state a little

10:36:21 13    better now.

10:36:22 14              So step down state, you want to construe it as a

10:36:29 15    state in which the foot is approaching the ground surface.

10:36:32 16    So does every single swing state have a step down state?

10:36:41 17              MR. CHERNY:  No.

10:36:41 18              THE COURT:  But it seems to me if you go to your

10:36:47 19    slide with the --

10:36:48 20              MR. CHERNY:  I got some more of those.

10:36:50 21              THE COURT:  You have some more circles.  Is the

10:36:52 22    step down -- I mean, if we just say it means in which the

10:36:57 23    foot --

10:36:59 24              MR. CHERNY:  Is approaching.

10:37:00 25              THE COURT:  A state in which the foot is

10:37:01  1    approaching the ground surface, that would -- the foot

10:37:09  2    approaches the ground surface even in the normal if it's

10:37:12  3    following the target trajectory.  That's my problem.

10:37:16  4              MR. CHERNY:  I guess if it hit like before --

10:37:20  5              THE COURT:  No, no, go to your slide with all of

10:37:23  6    them.

10:37:23  7              MR. CHERNY:  I do have -- in this part.

10:37:26  8              THE COURT:  I want one that doesn't have -- yes.

10:37:28  9              So the half circles are his foot?

10:37:32 10              MR. CHERNY:  Yes.

10:37:32 11              THE COURT:  The path of his foot?

10:37:34 12              MR. CHERNY:  Yes.

10:37:34 13              THE COURT:  Now every single half circle, when

10:37:37 14    you get to the end of the half circle, his foot is

10:37:39 15    approaching the ground.

10:37:40 16              MR. CHERNY:  Yeah.

10:37:41 17              THE COURT:  That's my problem.  Is that a step

10:37:43 18    down state?

10:37:43 19              MR. CHERNY:  At that point, swing state and step

10:37:47 20    down state overlap.

10:37:47 21              THE COURT:  I'm not asking that.  I get it, you

10:37:50 22    say they can overlap.  I'm just trying to understand.  Is

10:37:54 23    every single time the dog takes a step and he's in the

10:37:57 24    target trajectory as his foot comes towards the ground, is

10:38:02 25    that step down state?

10:38:03  1                    MR. CHERNY:  Yes, as his foot comes to the

10:38:05  2      ground, yes.

10:38:05  3                    THE COURT:  It's always step down state?

10:38:07  4                    MR. CHERNY:  As it's approaching the ground,

10:38:10  5      obviously -- swing state is the entirety of the swing.  As

10:38:13  6      it's approaching the ground it's in step down state.

10:38:16  7      Sometimes the two overlap, sometimes they don't.  And

10:38:19  8      sometimes --

10:38:19  9                    THE COURT:  How could they not overlap?

10:38:21 10                    MR. CHERNY:  I am going to show you.  Can we go

10:38:24 11      back to where we were?

10:38:26 12                    THE COURT:  36.

10:38:27 13                    MR. CHERNY:  36, apparently.

10:38:28 14                    So the one claim that actually talks about step

10:38:31 15      down state specifically, claim 12 and claim 17 doesn't,

10:38:34 16      talking about the independent claims, actually corresponds

10:38:38 17      to this flow chart Figure 12, detect a disturbance to gait

10:38:42 18      of robot, that's claim 1, based on a detected disturbance,

10:38:46 19      caused foot of robot to enter step down state before foot

10:38:49 20      reaches end of target swing trajectory.

10:38:52 21                    What happened here is I've come to the

10:38:55 22      disturbance here, and in this case I get to the disturbance,

10:38:57 23      instead of completing it, what happens is I step down.  So

10:39:00 24      in the middle of swing state I detect disturbance and I

10:39:04 25      enter a step down state that is not the coextensive of the

10:39:09 1    end of the swing state.  We're no longer in the arc that you

10:39:12 2    see, Your Honor.  So here because I detect a disturbance and

10:39:15 3    my gait has been disturbed, I have to alter from my normal

10:39:19 4    gait.

10:39:20 5            And so here what happens is -- may I approach

10:39:21 6    again.  Right where it says disturbance here, it's not like

10:39:24 7    the foot is going through the block.  The foot then instead

10:39:27 8    of completing the trajectory which it would in a normal

10:39:29 9    thing, it steps down, and it --

10:39:31 10           THE COURT:  So the foot would just go straight

10:39:34 11   down from the X?

10:39:35 12           MR. CHERNY:  Correct.  Correct.

10:39:36 13           What happens there is that that's why claim 1

10:39:39 14   which is the one that refers to detecting a disturbance to

10:39:42 15   the gait is the one that specifies in that case that it

10:39:48 16   leaves step down state before foot reaches end of target

10:39:52 17   swing trajectory.  In a normal situation or a hill or a

10:39:55 18   decline which are more normally expected, there step down is

10:39:59 19   part of the target swing trajectory because it's the part of

10:40:02 20   the target swing trajectory where I am descending towards

10:40:07 21   the ground.

10:40:08 22           In this claim, in this claim, claim 1, which I

10:40:11 23   have excerpted the top there, in this case, I have a

10:40:14 24   specific situation where because the gait has been

10:40:17 25   disturbed, the foot leaves swing state trajectory, it leaves

10:40:21  1    the arc and steps down.  Okay?  And you can see the spec
10:40:26  2    talks about leaving target swing trajectory.  The claim
10:40:30  3    talks about it leaving swing state.  It's basically the same
10:40:33  4    thing.  It's going like this, it's going along the path,
10:40:37  5    both in swing state and it's also on that trajectory.  It
10:40:41  6    sees the rock or whatever the disturbance is and goes like
10:40:44  7    this.  Okay?  I can't keep going and puts it down.  So it
10:40:48  8    leaves that trajectory and puts its foot down.
10:40:51  9            If you go here, this is the part of the spec
10:40:56  10   that corresponds to claim 12.  The patent is actually very
10:40:59  11   well organized in terms of these three examples which I read
10:41:03  12   at the beginning.  It says "determine gait comprising swing
10:41:06  13   state and stance state."  That's the gait, basically I'm
10:41:09  14   just walking along, that's the pattern.  "Detect indication
10:41:13  15   that first foot of robot has contacted ground surface before
10:41:17  16   end of target swing trajectory."
10:41:18  17           Based on that detected indication, caused second
10:41:22  18   foot of robot to lift off of ground surface.  So then it
10:41:27  19   tells me to go to something we're not talking about, a
10:41:28  20   lifting state, and you can see here in the claim, detecting
10:41:31  21   an indication that the first foot of the robot has contacted
10:41:34  22   a ground surface, it's not talking about leaving swing state
10:41:38  23   to go into step down state.  Here step down state is part of
10:41:42  24   the trajectory.
10:41:43  25           THE COURT:  What is your best intrinsic evidence

| | |
|---|---|
| 10:41:45 1 | for saying that the step down state does not have to be |
| 10:41:49 2 | after or it cannot be continuous overlapping with swing |
| 10:41:57 3 | state? |
| 10:41:57 4 | MR. CHERNY:  I think it is contiguous with the |
| 10:42:00 5 | part of swing state where it is approaching the ground. |
| 10:42:03 6 | It's obviously -- so swing state, the trajectory is the |
| 10:42:06 7 | whole arc.  As the foot is moving through the whole arc, |
| 10:42:12 8 | that's swing state.  Okay?  Just a normal situation.  As |
| 10:42:14 9 | it's approaching the ground, that's step down state. |
| 10:42:17 10 | Now step down state can happen apart from that |
| 10:42:20 11 | in this situation.  Here it leaves the trajectory and steps |
| 10:42:24 12 | down.  That's -- they're clearly not overlapping.  You leave |
| 10:42:30 13 | swing state and you go into step down, that's what the claim |
| 10:42:33 14 | says and that's what the spec says.  This is a situation |
| 10:42:36 15 | where the gait has been disturbed and so as a result I step |
| 10:42:40 16 | down because I have now had my gait disrupted. |
| 10:42:44 17 | But in a situation like claim 12 and claim 17, |
| 10:42:47 18 | the gait hasn't been disturbed, I'm just walking along and |
| 10:42:51 19 | now I see something, an indication of something like a hill, |
| 10:42:54 20 | which is I hit the ground, I'm still on the same trajectory, |
| 10:42:57 21 | it hasn't been disturbed, I haven't had to like change my |
| 10:43:02 22 | gait, I'm still doing the half circles, but now I hit ground |
| 10:43:06 23 | a little earlier than I thought.  In this case I'm not |
| 10:43:09 24 | leaving step down state, leaving swing state to go into step |
| 10:43:13 25 | down state, step down state is the bottom of swing state in |

10:43:15  1    this case, that's why the claim doesn't talk about it.

10:43:18  2            And that's why in Figure 12 it says in this

10:43:22  3    situation, cause the robot to enter step down state before

10:43:26  4    foot reaches end of the target swing trajectory which is

10:43:30  5    understandable because in the normal situation it doesn't

10:43:32  6    have to leave the trajectory and swing state in order to go

10:43:37  7    into step down state.

10:43:39  8            And so I'll try to move this as fast as

10:43:43  9    possible, Your Honor.  Okay.  This is just basically the

10:43:48 10    same kind of example again where basically it's moving along

10:43:51 11    normally, and then it says that the target swing trajectory

10:43:57 12    of the first foot may approximate a relatively even ground

10:43:58 13    surface.  And then it gets to something, in this case it

10:43:59 14    gets to a step or a hill.  As a result I hit the ground or

10:44:03 15    the step before the end of the target swing trajectory, but

10:44:05 16    there is still a step down there.

10:44:08 17            Now, let's take a look at step down state for a

10:44:10 18    second.  Another requirement there is in step down state,

10:44:13 19    again, they have this whole thing, they say step down state,

10:44:17 20    we say it's state in which the foot is approaching the

10:44:22 21    ground surface.  That's in the patent.  They say a part of

10:44:22 22    the leg's motion in which the foot is not in contact with

10:44:25 23    the ground is finished swinging and is moving towards the

10:44:29 24    ground.  I don't know what that means, it's moving toward

10:44:32 25    the ground.

10:44:32  1          THE COURT:  But not swinging.

10:44:34  2          MR. CHERNY:  Whatever that means, but we've

10:44:35  3   already seen that swing state can end in little two, in that

10:44:40  4   part of the spec where it talks about the end of swing

10:44:43  5   state, one end of swing state is hitting the ground, that's

10:44:46  6   probably the normal end of swing state.

10:44:48  7          Here we go.  Here is step down state may

10:44:52  8   correspond to the foot approaching the ground.  I'm on slide

10:44:56  9   42.  Here step down state may end when the robot detects

10:44:59 10   that the foot has made contact with the ground surface.  In

10:45:03 11   that situation it's overlapping with the end of swing state.

10:45:06 12   In a normal situation when the robot is walking and the gait

10:45:09 13   is undisturbed, the swing state is the whole arc and step

10:45:14 14   down state is the part of the arc where it's approaching the

10:45:18 15   ground.  In that case they're both coextensive and they both

10:45:24 16   end at exactly the same time when they hit the ground.

10:45:27 17          In a situation like claim 1 where there is a

10:45:30 18   disturbance that disturbs the gait, then what happens is it

10:45:34 19   specifically tells me get out of swing state and go into

10:45:37 20   step down state.

10:45:38 21          THE COURT:  Further on 26, column 26 at lines 50

10:45:41 22   to 54.

10:45:42 23          MR. CHERNY:  Can I get my patent out?  Sure.

10:45:46 24          THE COURT:  There is this Figure 11 which they

10:45:49 25   rely on which is why I focused on it.  It says, "Further,

10:45:54 1  although the transitions between leg state shown in

10:45:58 2  Figure 11 might not be determined based on a timer" -- I

10:46:03 3  don't think that matters -- "the robot may nonetheless

10:46:05 4  determine an anticipated time" -- that's singular -- "an

10:46:10 5  anticipated time for the first foot to complete the swing

10:46:14 6  forward state and the step down state."

10:46:16 7              MR. CHERNY:  At the same time.

10:46:17 8              THE COURT:  So that's at the same time?

10:46:18 9              MR. CHERNY:  Yes.

10:46:18 10             THE COURT:  Even in the example, the figure

10:46:20 11  they're looking at, that's a suggestion they can be done at

10:46:24 12  the same time?

10:46:25 13             MR. CHERNY:  Yes.  The same thing happens also

10:46:27 14  when it talks about -- remember, you're talking about a

10:46:30 15  bunch of different situations here.  So it's using these

10:46:33 16  terms and what happens is sometimes they overlap and

10:46:36 17  sometimes they don't depending on the situation.  When there

10:46:38 18  is a disturbance per claim 1, it definitely is that swing

10:46:42 19  state comes to an end before it gets to the ground, and it

10:46:45 20  leaves it to go in step down state.  The other claims do not

10:46:48 21  specify that.  And those, of course, it's understandable

10:46:52 22  because you're still in the trajectory and at that point

10:46:54 23  you're approaching the ground and you're also coming to the

10:46:57 24  end of swing state.

10:46:59 25             I note that they focused a lot on 11, which is

10:47:02  1    fine, 11 is just there -- in fact, 11 is the one that

10:47:04  2    actually when the spec talks about it, talks about how swing

10:47:08  3    state can be at the end of the trajectory or when it hits

10:47:12  4    the ground.  If you take a look at column 2, all it says is

10:47:17  5    Figure 11 illustrates the leg states in a mechanically timed

10:47:21  6    gait of a robot according to an example implementation.

10:47:24  7         So what they've said here is somehow 11 means

10:47:27  8    that you always have that swing state end before the ground

10:47:31  9    because the way the arrows look, when all it's doing is just

10:47:34 10    trying to give you a graphical description that there is

10:47:37 11    four different states, but let's go back -- and I'll be done

10:47:41 12    in one second.

10:47:42 13         If we go back to this part which they kind of I

10:47:47 14    think represented in an odd way.  Here, here this is talking

10:47:51 15    about Figure 11 right here at column 26:15, this is talking

10:47:57 16    about column 11.  During swing state, the swing forward

10:48:02 17    state the robot may follow a smooth trajectory to a

10:48:06 18    determined swing height then follow trajectory toward a

10:48:08 19    determined step down location.  It's moving along toward a

10:48:12 20    step down location.  The swing state may end when the foot

10:48:15 21    reaches the end of the trajectory.  This is talking about

10:48:18 22    Figure 11, or makes contact with the ground surface.  I

10:48:20 23    don't know how you can argue that that section says that the

10:48:23 24    foot swinging has not yet begun to step down when that

10:48:28 25    section says it follows the trajectory towards the

10:48:30 1    determined step down location, and either end at the

10:48:34 2    trajectory or makes contact with the ground surface.

10:48:36 3            THE COURT:  And just so we're clear, the second

10:48:39 4    part is makes contact with the ground surface is 1118 which

10:48:42 5    is the words on the line.  And the 1108 which is the part

10:48:46 6    before it hits the ground surface, that is step down.

10:48:50 7            MR. CHERNY:  That's step down state.

10:48:51 8            So in different situations you end up with

10:48:55 9    either step down state being coextensive with swing state,

10:49:00 10    in some situations like one where the gait is disturbed and

10:49:04 11    claim 1 requires you actually to leave swing state in order

10:49:08 12    to get -- but you're out of the trajectory now which is

10:49:11 13    exactly what it says.

10:49:14 14            THE COURT:  All right.  Let me hear from the

10:49:16 15    other side on this one.

10:49:18 16            MR. CHERNY:  Thank you, Your Honor.

10:49:33 17            MS. HORN:  So I want to start at what I think is

10:49:40 18    one of the cores of the disputes and that is whether you can

10:49:43 19    have a step down state in a situation where there is no

10:49:48 20    disturbance.  And Figure 11 from the '588 patent makes clear

10:49:53 21    that you can.

10:49:54 22            I think you just heard Mr. Cherny say that

10:49:57 23    Figure 11 is just this nominal or mechanically timed gait.

10:50:02 24    And so if that is the nominal or mechanically timed gait,

10:50:06 25    then when the foot goes through that particular path of

10:50:08 1    motion, there is no disturbance.

10:50:10 2                THE COURT:  Let me ask you, though, you say in

10:50:12 3    here we need to define state.  A state is just the condition

10:50:18 4    that the robot is in.

10:50:19 5                MS. HORN:  It's a part of the leg's motion.

10:50:25 6    It's specific to the leg.  And I believe from what I heard

10:50:28 7    just a few moments ago, the parties are in agreement on that

10:50:31 8    point.

10:50:31 9                THE COURT:  So it's the state that the

10:50:33 10   particular leg of the robot is in?

10:50:36 11               MS. HORN:  A part of its motion.

10:50:37 12               THE COURT:  I don't know what that means.  A

10:50:39 13   state is not a part of its motion, a state is like I am in a

10:50:43 14   state of happiness.  Like, I don't know what a part of a

10:50:51 15   motion means.

10:50:53 16               MS. HORN:  Sure.

10:50:54 17               THE COURT:  You don't have to be moving to be in

10:50:56 18   a state, right?

10:50:57 19               MS. HORN:  Well, I think in the context of the

10:51:01 20   '588 patent, the different states are defined in

10:51:06 21   relationship to the way that they are moving.  So, for

10:51:11 22   example, in the swing state, the part of the motion that

10:51:15 23   you're in is the swinging part of the motion.  In the lift

10:51:19 24   up state, it's the lift up part of the motion.  Similarly in

10:51:22 25   the step down state, it's when you're stepping down.

10:51:26   1                       So the Figure 11, it says illustrates leg states

10:51:30   2      in a mechanically timed gait.  And I think what they mean by

10:51:33   3      that is just that this leg's motion has certain --

10:51:37   4                  THE COURT:  Is it moving in a stance state.

10:51:41   5                  MS. HORN:  It can be, yes.

10:51:42   6                  THE COURT:  Does it have to be?

10:51:43   7                  MS. HORN:  It doesn't have to be.

10:51:44   8                  THE COURT:  So then it doesn't have to have

10:51:46   9      motion, right?

10:51:47  10                  MS. HORN:  Well, I would still say --

10:51:50  11                  THE COURT:  You're like trying to throw motion

10:51:52  12      into state.  I don't know why.  I don't understand it.  I'm

10:51:55  13      just thinking the state is -- is it in the moving forward,

10:51:59  14      is it standing, is it stepping down?  So I don't understand

10:52:03  15      why you're throwing motion in there.

10:52:05  16                  MS. HORN:  Well, I think it's because each state

10:52:08  17      has -- it kind of moves through particular things.  So the

10:52:14  18      -- I mean, if you wanted to say something like a part of a

10:52:19  19      -- like a leg's condition or something like that.

10:52:21  20                  THE COURT:  That's what I said, and you didn't

10:52:23  21      agree with it.  But anyway, I'm just going to do what I am

10:52:27  22      going to do on that one.  Go ahead and tell me why I should

10:52:33  23      -- from the swing state, why I need to exclude contact with

10:52:39  24      the ground and stepping down?  It seems to me in your

10:52:44  25      definition of a swing state and your definition of a step

10:52:47 1   down state, you are excluding the two states from being at

10:52:52 2   the same time which doesn't seem to me to be compatible with

10:52:57 3   this figure.  So you're going to have to help me out.

10:53:02 4          And I would like you to also acknowledge or

10:53:05 5   explain to me the language that talks about Figure 11 that

10:53:08 6   Mr. Cherny had up there which had the two things.

10:53:12 7          MS. HORN:  Yes, so I would like to address those

10:53:14 8   as well.

10:53:14 9          THE COURT:  I would like to address those first,

10:53:16 10  actually.

10:53:17 11         MS. HORN:  Sure.

10:53:18 12         THE COURT:  Could you go to that first.

10:53:19 13         MS. HORN:  I don't believe that's on our slides.

10:53:21 14  But I believe the --

10:53:23 15         THE COURT:  Maybe Mr. Cherny can put it up for

10:53:26 16  us.

10:53:27 17         MR. CHERNY:  I can put it up.

10:53:28 18         MS. HORN:  Sure.

10:53:31 19         MR. CHERNY:  First we have to switch out.

10:53:32 20         MS. HORN:  I believe the first thing, the foot

10:53:36 21  reaches the end of the trajectory.  Right?  And so if you're

10:53:39 22  looking back at Figure 11, which we had up just a moment

10:53:42 23  ago, under our construction, 1106 is the -- well, the patent

10:53:48 24  describes it as the swing forward state.  Right?  And so

10:53:51 25  your foot could reach the very end of that swing forward

10:53:55 1    state which actually, could we pull up Figure 11.

10:54:03 2            MR. CHERNY:  We have to switch off.  Give us a

10:54:05 3    second to switch off.  There you go.

10:54:07 4            MS. HORN:  So if I may approach the slides.

10:54:09 5            THE COURT:  Please.  You can do that freely.

10:54:12 6            MS. HORN:  So the end of the trajectory is here

10:54:14 7    at this point here, the second time, and so it can reach the

10:54:18 8    end of the trajectory, so you could have that nominal gait

10:54:21 9    where the robot is just walking down, walking down, walking

10:54:25 10   down, it could reach the end of that particular trajectory

10:54:28 11   and then the swing is completed.

10:54:30 12           The other situation where it makes ground

10:54:33 13   contact, they're basically saying you could only look at

10:54:38 14   nominal ground contacts.

10:54:40 15           THE COURT:  No, no, it says where it makes

10:54:43 16   ground contact 1118.

10:54:46 17           MS. HORN:  Well, contact with the ground

10:54:48 18   surface.

10:54:48 19           THE COURT:  1118.

10:54:50 20           MS. HORN:  Yes, the ground surface is on 1118.

10:54:54 21   But see, what you have is this sort of situation here where

10:54:57 22   the leg is following along its trajectory --

10:54:59 23           THE COURT:  Not what you can have, but show me

10:55:04 24   Figure 11 out your changes.  Okay?  So then it says it can

10:55:12 25   end at one of two times.  It can end -- I hate that I don't

10:55:18  1     have -- Mr. Cherny, what slide number is it that has that?

10:55:23  2                 MR. CHERNY:  Give me one second, Your Honor.

10:55:25  3                 30.

10:55:26  4                 THE COURT:  If I can see the two.  Okay.  So the

10:55:30  5     swing forward state may end, so swing forward may end when

10:55:38  6     the foot reaches the end of its trajectory, which is what

10:55:42  7     you keep showing me is the arrow above the 1108.

10:55:49  8                 MS. HORN:  Yes.

10:55:50  9                 THE COURT:  Or makes contact with the ground

10:55:52 10     surface 1118.  So what they're saying for Figure 11 as drawn

10:56:00 11     is it can end when it hits 1118.

10:56:04 12                 MS. HORN:  Right.  But the one where it hits the

10:56:09 13     hill, it still is a ground surface 1118.  1118 is just

10:56:15 14     representing the ground surface, and so the ground surface

10:56:16 15     can be uneven.  In Figure 11, you're seeing just a schematic

10:56:21 16     view of the ground surface, but the ground surface could

10:56:23 17     have a hill.  It could go like the dotted line here like on

10:56:28 18     slide 16 and your leg could hit the hill before it reaches

10:56:32 19     the end of your trajectory shown by 1106.  And that is

10:56:36 20     exactly what's in claim 12 by the way, where it encounters

10:56:42 21     some sort of unexpected or uneven terrain and so that swing

10:56:46 22     trajectory, 1106 ends early.  And so the step down state

10:56:52 23     does not have to be coextensive with the swing state for

10:56:56 24     that particular part of the patent to be true.

10:56:59 25                 And, in fact, the plain language of the claims

10:57:02 1   doesn't support merging the swing state and the step down

10:57:07 2   state because claim 1 explicitly says that the gait

10:57:11 3   comprises both a swing state and a step down state.  They

10:57:16 4   are two distinct and separate states in the context of claim

10:57:20 5   1.

10:57:25 6             THE COURT:  But what is it that says they can't

10:57:28 7   overlap?

10:57:29 8             MS. HORN:  Well, I think one, the fact that the

10:57:31 9   claim has chosen two different -- two different terms and

10:57:36 10  used them both in the same claim --

10:57:38 11            THE COURT:  But lots of things have different

10:57:40 12  terms but they can happen at the same time.

10:57:42 13            MS. HORN:  Well, I don't think that there is

10:57:44 14  anything in the patent that supports this idea that they are

10:57:48 15  -- that the two states are coextensive, in fact --

10:57:52 16            THE COURT:  What about the language that I read

10:57:54 17  to Mr. Cherny and I asked him about for Figure 11 which says

10:57:58 18  "Although the transitions between leg state shown in

10:58:03 19  Figure 11 may not be determined based on a timer, the robot

10:58:06 20  may nonetheless determine an anticipated time for the first

10:58:12 21  foot to complete the swing forward state and the step down

10:58:16 22  state."

10:58:16 23            MS. HORN:  Right.  And so that's saying that

10:58:17 24  there could be a collective time when the two states are

10:58:21 25  completed, so the two states --

10:58:23  1          THE COURT:  Isn't that saying, though, that they

10:58:25  2   both end at that time, ergo they both were in existence at

10:58:31  3   some point?

10:58:32  4          MS. HORN:  I don't think that that particular

10:58:33  5   part says that they both end at that time.

10:58:36  6          THE COURT:  It says it may determine a time for

10:58:40  7   the foot to complete the swing forward state and the step

10:58:45  8   down state.

10:58:46  9          MS. HORN:  Right.  That's saying there is a time

10:58:48 10   when both states are completed.  It's not saying --

10:58:52 11          THE COURT:  Yeah, but why wouldn't you just say

10:58:55 12   would complete the latter state, the latter state or

10:58:59 13   complete the step down state because that according to you

10:59:03 14   always comes after the swing forward state.

10:59:06 15          MS. HORN:  Well, I think because this one is

10:59:08 16   just explaining that even though you're not using a specific

10:59:11 17   timer, you still might want to compute some sort of

10:59:17 18   anticipated time when you're going to have ground contact in

10:59:20 19   your nominal gait.  I don't think it means that the two

10:59:29 20   states can be one state because it specifically says there

10:59:33 21   is a swing forward state and a step down state there.

10:59:38 22          THE COURT:  All right.  And I'm not

10:59:40 23   understanding why you're saying -- you say because it list

10:59:45 24   them as two states they must be entirely different, one had

10:59:49 25   to start and finish before the other started and finished.

10:59:53 1    And you're basing that on the fact that there are two

10:59:57 2    states.  Is that my understanding?

10:59:59 3            MS. HORN:  Not just the fact that there are two

11:00:02 4    states, but the fact that the specification consistently

11:00:05 5    explains that these different types of motions are occurring

11:00:08 6    in different types of states.

11:00:09 7            Earlier in column 26 around line 21, it talks

11:00:13 8    specifically about the step down state and it says it may be

11:00:16 9    brief, but it really has to do with that portion of the

11:00:20 10   trajectory where the foot is approaching the ground at a

11:00:23 11   determined velocity with respect to the robot's body.

11:00:26 12           And so it's not that in the swing state you

11:00:30 13   can't be approaching the ground surface at some point.  I

11:00:33 14   think we see from Figure 11 that some portion of approaching

11:00:36 15   the ground surface can be part of that swing forward state,

11:00:39 16   but it's that this step down state is something very

11:00:42 17   different and specific, it's when you are approaching the

11:00:45 18   ground at that determined velocity with respect to the

11:00:50 19   robot's body.

11:00:51 20           And under Boston Dynamics' construction, they're

11:00:54 21   also reading out the lift out state.  They're basically

11:00:57 22   saying look, all these three different states that the

11:01:00 23   specification is talking about, they can all just be one

11:01:04 24   state.  And they're also taking the position that the step

11:01:22 25   down state can only occur when there is a disturbance.  That

11:01:25  1    the step down state only happens when there is a disturbance

11:01:28  2    under their particular interpretation.  But we see from

11:01:32  3    Figure 11 that that's not true because there is no

11:01:35  4    disturbance in Figure 11 and you still have a step down

11:01:37  5    state.

11:01:46  6            And again, the idea of it reaching the ground

11:01:50  7    and having ground contact, that's claim 12 where you're in

11:01:54  8    the middle of a particular trajectory or swing, something

11:01:57  9    unexpected happens like you hit a hill, so you have made

11:02:00 10    ground contact before the end of the trajectory and before

11:02:05 11    the step down state has begun.

11:02:36 12            THE COURT:  You can keep going.  Don't wait for

11:02:39 13    me.  I don't know what you're doing.

11:02:40 14            MS. HORN:  Sure.  I wasn't sure if you had any

11:02:42 15    follow-up questions on that.

11:02:43 16            THE COURT:  No.  I'll let you know if I have

11:02:45 17    questions.

11:02:45 18            MS. HORN:  Sure.  I'll just take a few steps

11:02:48 19    back and just walk through the different states and what the

11:02:53 20    specification says about the different states.

11:02:56 21            And so you do have this stance state where the

11:03:01 22    foot is in contact with the ground surface.  And then you

11:03:03 23    clearly have this lift up state which the patent says can be

11:03:07 24    brief but can correspond to the foot lifting up at a desired

11:03:11 25    velocity, that's sort of the opposite of the step down state

11:03:15  1   1108 where the foot is approaching the ground at the desired

11:03:21  2   velocity.

11:03:21  3           What Figure 11 and the '588 patent really are

11:03:25  4   directed to is this idea that the part that they're all

11:03:27  5   calling the swing has these three different and distinct

11:03:31  6   parts.  First there is this lift up part where you're moving

11:03:35  7   off the ground at a desired velocity, then you have what

11:03:37  8   they call the swing forward state, 1106, and the foot

11:03:41  9   follows a smooth trajectory to a determined swing height and

11:03:44 10   then follows that trajectory towards a determined step down

11:03:48 11   location.  Again, this is the text where it says the foot --

11:03:52 12   I'm sorry, the swing forward state can end when the foot

11:03:56 13   either reaches the end of the trajectory, reaches the end of

11:03:59 14   the green part of 1106 or makes contact with the ground

11:04:04 15   surface, which again, we looked at before with the hill

11:04:07 16   example.

11:04:07 17           And then we have the step down state, of course,

11:04:09 18   which the specification again says can be brief, but it

11:04:14 19   corresponds to the part of the foot's motion where it's

11:04:17 20   approaching the ground at a determined velocity with respect

11:04:19 21   to the robot's body.

11:04:21 22           Again, it talks about how these particular areas

11:04:24 23   where the robot is controlling the velocity of the foot

11:04:28 24   either to get it off the ground or bring it back down to the

11:04:31 25   ground are two separate and distinct parts of the nominal

11:04:36  1    gait for the particular robot's leg that is different than

11:04:40  2    1106 which is the swing forward state.

11:04:42  3            And again, even the step down state can end when

11:04:47  4    the robot detects that the foot has made ground contact, it

11:04:51  5    can end when the leg has reached a range of motion limit, or

11:04:54  6    it can end when the foot has not made ground contact within

11:04:58  7    some nominal time that was determined -- that it was

11:05:02  8    determined to have made contact.

11:05:04  9            And so Boston Dynamics' construction of swing

11:05:13 10    state is just a state in which the first foot of the robot

11:05:16 11    is in a swing trajectory.  And this idea that the foot of

11:05:19 12    the robot is in a swing trajectory and you're expecting the

11:05:23 13    jury to understand what that means, this construction just

11:05:25 14    doesn't provide any additional clarification.  It also

11:05:28 15    introduces ambiguity as to what the swing trajectory is and

11:05:33 16    I don't think that's something that the jury would be able

11:05:35 17    to understand the metes and bounds of without further

11:05:39 18    explanation.

11:05:39 19            Our proposal on the other hand both for swing

11:05:43 20    state, step down state, and target swing trajectory, which I

11:05:46 21    understand we haven't gotten to yet, harmonizes all of the

11:05:49 22    different states in the claims and all of the different

11:05:52 23    embodiments captured by the claims in a way that's

11:05:55 24    consistent with the specification.  It gives you a way to

11:05:58 25    see and understand when one state has begun and another

11:06:01 1   state has ended, and when you're transitioning between the

11:06:05 2   various states.

11:06:06 3           And again, this making contact with the ground

11:06:13 4   surface can occur because early ground contact has happened

11:06:16 5   even before step down has begun.

11:06:18 6           And finally, for step down state, I believe

11:06:25 7   we've discussed our construction before, but again, this is

11:06:27 8   part of the leg's motion.  The foot is not in contact with

11:06:30 9   the ground.  It finished swinging, it finished that

11:06:34 10  trajectory 1106 and it's moving towards the ground.  Here

11:06:38 11  again, Boston Dynamics' proposal doesn't provide any

11:06:41 12  additional clarification of what it means to be in a state

11:06:43 13  and it limits the step down state to occurring only when the

11:06:46 14  robot detects a disturbance, but we know from Figure 11 that

11:06:50 15  the nominal gait can include the step down state as well, so

11:06:53 16  that just can't be a correct way to limit the particular

11:06:56 17  term.

11:06:57 18          And with that, unless Your Honor has further

11:07:01 19  questions about these particular terms, I don't have

11:07:03 20  anything else.

11:07:03 21          THE COURT:  Okay.

11:07:05 22          MR. CHERNY:  Your Honor, may I say something for

11:07:07 23  one minute?

11:07:08 24          THE COURT:  Yes.

11:07:08 25          MR. CHERNY:  Put up slide 34.

11:07:16  1          Okay.  I'm going to make this brief, Your Honor,
11:07:20  2  and you're exactly right.  We're not saying that they're
11:07:23  3  coextensive terms, we're saying that a step down state can
11:07:27  4  be part of a swing state where it's approaching the ground.
11:07:30  5  This is the part they never seem to come through, the swing
11:07:32  6  state may end when the foot reaches the end of trajectory or
11:07:36  7  when it makes contact with the ground surface.
11:07:39  8          Now go to 43.
11:07:41  9          The step down state may end when the robot
11:07:44 10  detects the foot has made contact with the ground surface.
11:07:47 11  There you have -- what's weird is both their construction of
11:07:51 12  step down state and swing state, both of them preclude
11:07:54 13  touching the ground, so it's an oddity where the spec
11:07:58 14  actually specifies that step down state may end in swing
11:08:01 15  forward state, or swing state may end upon hitting the
11:08:04 16  ground surface, but their construction for both prohibits
11:08:07 17  either state from ever touching the ground.
11:08:10 18          So it's clear what's happened here.  Again, I
11:08:13 19  didn't say that 11 was a nominal thing, the patent talks
11:08:16 20  about it being an exemplary illustration of a situation and
11:08:21 21  the answer is is that -- can you go to 28.
11:08:26 22          When you look at claim 12, it doesn't even talk
11:08:29 23  about step down state specifically because here it just
11:08:32 24  says, a method comprising, determined by a robot having a
11:08:35 25  first and second foot, a gait comprising a swing state and a

11:08:39 1    stance state.  And then essentially this is the hill.  But

11:08:42 2    it's in one where the gait is disturbed.

11:08:46 3            Can you go to one with the rock?  I don't even

11:08:48 4    know what that one is.

11:08:49 5            Yeah -- no, no.  The one with the -- 12.  Go to

11:09:01 6    slide 36.

11:09:04 7            This is the last thing.  Here where the spec

11:09:10 8    says in this, this is claim 1, based on detecting

11:09:15 9    disturbance, now you're out of your gait, cause foot of

11:09:19 10   robot to enter step down state before foot reaches end of

11:09:20 11   target swing trajectory.  And then this is a different

11:09:21 12   situation where normally step down state would be part of a

11:09:29 13   target swing trajectory, but I hit a disturbance I enter

11:09:31 14   step down state and that's claim 1.

11:09:32 15           The other claim is claim 12 and claim 17 doesn't

11:09:35 16   say anything about step down state.  And I didn't say the

11:09:37 17   step down state is not -- is only in this one, all we said

11:09:40 18   about step down state is when the foot is approaching the

11:09:42 19   ground.  In many situations that is coextensive with the

11:09:47 20   bottom of swing state because the swing state is going to

11:09:52 21   touch the ground and the step down state.

11:09:54 22           In this situation, they're not both and so the

11:09:58 23   claim specifically points out because you get this

11:10:00 24   disturbance, get out of swing state and step down.

11:10:04 25           That's all, Your Honor.

11:10:06  1                    THE COURT:  All right.

11:10:07  2                    MS. HORN:  Your Honor, may I add one thing,

11:10:09  3      briefly?

11:10:10  4                    THE COURT:  Sure.

11:10:14  5                    MS. HORN:  So I wanted to correct one thing

11:10:16  6      because I believe opposing counsel just mentioned that

11:10:20  7      Figure 11 is not describing the nominal state of the robot,

11:10:24  8      it's describing -- it can also be describing something where

11:10:28  9      a disturbance happened.  That is not consistent with the

11:10:31 10      specification.  The specification beginning at column 25

11:10:34 11      provides this description of Figure 11 which, you know, it

11:10:37 12      describes as a mechanically timed gait of an example robot

11:10:41 13      and the example implementation for handling the gait

11:10:45 14      disturbances begin after that description under a new

11:10:51 15      subheading starting column 27, and that's where the

11:10:53 16      disturbances are talked about.  And so I think it's pretty

11:10:56 17      clear from the specification that Figure 11 is describing a

11:10:58 18      nominal or normal or undisturbed gait.

11:11:02 19                    THE COURT:  All right.  Thank you.

11:11:03 20                    MS. HORN:  Thank you.

11:11:13 21                    MR. NEWTON:  Can we go to target swing

11:11:17 22      trajectory.  Good morning again, Your Honor.  May I begin?

11:11:24 23                    THE COURT:  Yes.

11:11:25 24                    MR. NEWTON:  So target swing trajectory, I think

11:11:26 25      we have covered a lot of this with the past two terms, so

11:11:29  1   I'll try to be brief.  But the target swing trajectory

11:11:31  2   generally refers to the anticipated step of the robot.  And

11:11:37  3   the key here for understanding what the target swing

11:11:40  4   trajectory is referring to is the claim language itself

11:11:43  5   which describes the target swing trajectory in terms of

11:11:46  6   time.  It says that the target swing trajectory during the

11:11:49  7   step comprises a beginning at a first time and an end at a

11:11:53  8   second time.

11:11:53  9          So what that is saying is when I come up with my

11:11:56 10   target swing trajectory, I'm anticipating that the step

11:11:59 11   starts at time one and ends at time two.  That's the only

11:12:02 12   limitation that the claim imposes.

11:12:04 13          The problem that we see with Ghost's proposed

11:12:09 14   construction is it tries to read in a bunch of additional

11:12:11 15   limitations that go beyond just the time limitations that

11:12:15 16   are expressly in claims.  They try to add the concept of a

11:12:17 17   planned path, the concept of a forward swing, or a

11:12:21 18   directional component, and then also the concept of the

11:12:24 19   trajectory has to end before the first foot has begun to

11:12:27 20   step down.

11:12:28 21          The specification -- the plain language of the

11:12:31 22   claims before we even get to the specification doesn't

11:12:33 23   include any of those requirements.  The specification

11:12:35 24   contradicts or disagrees with reading of any of those

11:12:39 25   requirements --

11:12:40  1           THE COURT:  I mean, planned path, okay, but you

11:12:46  2   basically said -- I mean, you have just used the words

11:12:50  3   target trajectory.  I don't know what target means in there.

11:12:53  4   And it has a beginning and an end.  I don't need to say a

11:12:57  5   beginning and an end because the claim says a beginning and

11:13:01  6   end.  Your construction, target for what?  You're just -- I

11:13:05  7   truly -- your construction is nothing.  It means nothing.  A

11:13:12  8   target, a target swing trajectory is a target trajectory of

11:13:17  9   the foot swing.  But what's a target?  We don't like

11:13:21 10   planned, it's not planned, it's not what it's supposed to

11:13:24 11   do.  Define target for me.

11:13:27 12           MR. NEWTON:  Target is a destination.  I think

11:13:29 13   of the difference between target and plan, as the target is

11:13:32 14   here is when I want the step to start and here is when I

11:13:36 15   want it to end --

11:13:37 16           THE COURT:  Come on, the target trajectory is

11:13:40 17   not that the foot -- I mean, it's saying where you want the

11:13:43 18   foot to go.  It's not saying the foot starts here and it

11:13:47 19   ends here and in the middle, the foot kind of going like

11:13:50 20   this over the side and maybe like doing a little dance.  The

11:13:55 21   trajectory as I have it in my head and as I read in the

11:14:00 22   patent is more like what Mr. Cherny had on his slides where

11:14:05 23   it's what -- it's where it's supposed to be going.

11:14:10 24           Under your construction that the foot swing with

11:14:13 25   a beginning and end, really the target trajectory could be

11:14:17  1    doing all this stuff over here that has nothing to do with

11:14:21  2    where you want that foot to go.

11:14:24  3            MR. NEWTON:  So respectfully, I disagree.  The

11:14:28  4    between the beginning and the end of the step, the foot

11:14:30  5    can -- the robot is constantly taking in information about

11:14:33  6    the environment and it can change the spatial path that the

11:14:37  7    foot follows.  I agree with you --

11:14:38  8            THE COURT:  Then what's a target?  What is the

11:14:40  9    target?

11:14:41 10            MR. NEWTON:  The target is the time period where

11:14:44 11    I want the step to start and where I want the step to end.

11:14:46 12            THE COURT:  I don't care what that thing does as

11:14:49 13    long as in the next five minutes his foot goes from here to

11:14:52 14    here, I don't care what he does.  That's really what you're

11:14:56 15    say saying.  And it's trajectory, it's not a time?  It's a

11:15:00 16    target trajectory.  And you even say it's a trajectory of

11:15:04 17    the foot swing.  Now you seem to be saying, it has nothing

11:15:08 18    to do with where the foot goes, it just is did it do it in

11:15:14 19    the right time.

11:15:15 20            MR. NEWTON:  Well, that's what the invention is,

11:15:17 21    Your Honor --

11:15:18 22            THE COURT:  Your proposal, the target trajectory

11:15:22 23    of the foot swing with a beginning and an end does not sound

11:15:26 24    like the foot does whatever it feels like as long as it hits

11:15:29 25    the end time.

11:15:32  1                    MR. NEWTON:  Well, I respectfully disagree, Your

11:15:34  2     Honor.

11:15:34  3                    THE COURT:  Does anyone understand what I'm

11:15:36  4     saying?  It makes no sense to me.  You're saying as long as

11:15:40  5     my hand gets over here in the next five minutes, that's

11:15:46  6     fine.  What in the world does that have to do with the

11:15:51  7     target trajectory of a foot swing?  I can do this, right?  I

11:15:57  8     could run out into the hall.  That is not a target, a target

11:16:04  9     trajectory, it's not the target time that I hit my iPad,

11:16:09 10     it's the trajectory, the trajectory to me is the path.

11:16:14 11                    MR. NEWTON:  Right.

11:16:15 12                    THE COURT:  That's why I don't understand what

11:16:17 13     you're telling me.

11:16:18 14                    MR. NEWTON:  I'll try to explain, Your Honor.  I

11:16:21 15     did agree that trajectory is limited to a path.  You can

11:16:23 16     think about a trajectory as a cadence when the robot is

11:16:26 17     walking or as a progression of the step, but the point of

11:16:31 18     the invention --

11:16:32 19                    THE COURT:  Where does it ever use trajectory to

11:16:36 20     mean anything other than the path?

11:16:38 21                    MR. NEWTON:  Well, the plain claim language --

11:16:40 22                    THE COURT:  No, where does the patent use it?

11:16:42 23     We can look up trajectory.  I don't think it means cadence.

11:16:53 24     The path followed by something.  A curve of surface.

11:16:57 25                    MR. NEWTON:  Right, I agree those are meanings

11:16:59  1    of trajectory --

11:17:00  2                THE COURT:  A progression.

11:17:02  3                MR. NEWTON:  Progression.

11:17:03  4                THE COURT:  A line of development.  It's not a

11:17:06  5    cadence.  And if you're going to tell me it means something

11:17:09  6    like that, where in the patent does it give any support for

11:17:12  7    that?

11:17:13  8                MR. NEWTON:  So where it has support, Your

11:17:15  9    Honor, is here.  This is column 27, starting at line 21,

11:17:25 10    it's referring to the target swing trajectory.  It may have

11:17:29 11    a beginning and an end as well as other attributes that are

11:17:32 12    determined by the robot to do things like maintain a

11:17:36 13    velocity, avoid objections.  The highlighted portion says

11:17:39 14    the target swing trajectory may include a target swing

11:17:42 15    height, so yes, you can certainly program the trajectory so

11:17:45 16    that it hits certain points in space --

11:17:48 17                THE COURT:  But it's got to be a target.  That's

11:17:51 18    my problem, it's got to be a target.  It sounds to me like

11:17:55 19    this is something preplanned that this -- the target is that

11:18:00 20    it's going to do this unless it hits an obstacle.  Yours

11:18:05 21    seems to be like it there's no plan, it's just out there

11:18:10 22    wandering around, doing whatever it feels like doing, and as

11:18:14 23    long as it gets from point A to point B, that's fine.

11:18:18 24    That's not a target.  It's not a target trajectory.

11:18:23 25                MR. NEWTON:  So --

11:18:24 1          THE COURT:  And it's a target swing trajectory,

11:18:27 2    so it's got to be the swing, it has to be the target; right?

11:18:31 3          MR. NEWTON:  So it is the target trajectory for

11:18:32 4    the swing of the foot.  And what the invention talks about

11:18:35 5    is I expect my foot to swing to start at time one and end at

11:18:40 6    time two.  If something happens --

11:18:42 7          THE COURT:  And my target is I don't give a crap

11:18:45 8    what it does in the middle where it swings?

11:18:48 9          MR. NEWTON:  To put it differently, if something

11:18:51 10   happens when I'm between time one and time two --

11:18:54 11         THE COURT:  No, that's what I'm asking, what

11:18:56 12   happens if there is nothing there?  You're making it sound

11:18:59 13   like it can do whatever it feels like doing.  Mr. Cherny had

11:19:05 14   that picture with all the circles.  As I understand what

11:19:08 15   you're saying, that could look like this, a circle, then we

11:19:13 16   have a square in one place and we have a triangle in one

11:19:16 17   place, and maybe if that's what's planned, that could be the

11:19:23 18   target swing.  But you're basically saying there is no plan,

11:19:29 19   it does whatever it feels like as the target, and that makes

11:19:35 20   no sense to me.

11:19:36 21         MR. NEWTON:  The plan is to get from point one

11:19:39 22   to point two.  How the robot --

11:19:41 23         THE COURT:  It's not, though.  It's not, though,

11:19:44 24   because it knows when it's on the trajectory, when it's on

11:19:46 25   the target trajectory and something unexplained happens.  It

11:19:51  1   knows there is a problem because it knows there is a problem

11:19:56  2   because it --

11:20:00  3              MR. NEWTON:  Your Honor, if I may --

11:20:01  4              THE COURT:  You keep saying "if I may," but you

11:20:03  5   keep going back to, "I disagree with you, Your Honor."  And

11:20:07  6   let me tell you, that's a really bad argument, because if I

11:20:10  7   don't understand it, you're going to lose.  Okay?

11:20:13  8              I don't understand how defining target swing

11:20:18  9   trajectory and the only thing you do is move words around

11:20:23 10   does anything.  It does nothing.  The beginning and an end

11:20:27 11   is pointless because clearly that doesn't have to be part of

11:20:31 12   it because the claim requires it in a separate element.

11:20:35 13   Right?  So the target swing trajectory, if it's in a claim,

11:20:40 14   it doesn't have those, it doesn't have to have a beginning

11:20:43 15   and an end.  So you saying it just has to have a beginning

11:20:47 16   and an end doesn't really move me.  So then all I'm left

11:20:52 17   with is a target swing trajectory is the target trajectory

11:20:55 18   of a foot.  And you're saying but the only thing that's a

11:20:58 19   target is the beginning time and an end time, but I'm saying

11:21:01 20   I don't even read it as having to have a beginning time and

11:21:04 21   an end time.  So it makes no sense to me.

11:21:07 22              MR. NEWTON:  I'll try to explain it, Your Honor.

11:21:11 23   If we think of the trajectory as a progression which it

11:21:14 24   sounds like, which is in some cases how the word trajectory

11:21:21 25   is defined, we are thinking about the progression of the

11:21:23 1    foot.   The point I'm trying to make is that as the foot

11:21:27 2    progresses through its swing from time one to time two, we

11:21:31 3    don't have to preprogram or plan out the exact path, the

11:21:37 4    spatial path through space that the foot is going to follow.

11:21:39 5         The invention constrains the trajectory based on

11:21:42 6    first time and second time so that the robot can do things

11:21:45 7    like as it's progressing through the step if it identifies

11:21:49 8    an obstacle, it can make a decision --

11:21:52 9         THE COURT:  But the problem I'm having is the

11:21:54 10   target is what would be normal.  I mean, the target is

11:21:59 11   what's normal so that the robot knows that something

11:22:04 12   abnormal happened and it needs to do something different.

11:22:07 13   And you're saying the target of the swing has nothing to do

11:22:13 14   with where the foot -- the swing is going.  I just don't

11:22:18 15   read the patent as saying that.

11:22:33 16        MR. NEWTON:  So I think you can think of it as a

11:22:37 17   normal step as examples in the specification, if the

11:22:40 18   specification doesn't limit it to that because you might

11:22:42 19   want to speed up the velocity, for example, or have the

11:22:45 20   robot go in a certain direction.  But the point is those are

11:22:49 21   all things you can program into the trajectory, but they are

11:22:52 22   optional.  The claims don't require and the specification

11:22:54 23   says it's optional to have specific things like points in

11:22:57 24   space that the foot --

11:22:58 25        THE COURT:  What is it?  I don't know -- what is

11:23:01 1    the target?  And the target trajectory doesn't have to have

11:23:05 2    a time one and a time two.  That is a separate element of

11:23:08 3    the claim.  So it doesn't have to -- what is it?  I mean, a

11:23:14 4    target is usually something someone says here, this is what

11:23:18 5    you want, this is your target.  You're saying no, it doesn't

11:23:21 6    have to have anything.  I don't even know what that means.

11:23:25 7              MR. NEWTON:  I'm not saying it doesn't have to

11:23:27 8    have anything, I'm saying it doesn't have a specific spatial

11:23:30 9    path.

11:23:30 10             THE COURT:  You want me to say the target

11:23:33 11   trajectory of a foot swing.  So let's say I take the

11:23:36 12   beginning and the end out because -- they have a beginning

11:23:39 13   and an end so I guess they don't care if there is a

11:23:41 14   beginning and an end, but okay, the target trajectory of a

11:23:44 15   foot swing, based on -- I thought I understood what that

11:23:49 16   meant, it was like the half circles and that's our target,

11:23:53 17   that's what it normally does and it knows if it runs into a

11:23:57 18   problem that it's going to do something different.  But

11:23:59 19   you're like no, that's not what it says.  It doesn't have to

11:24:03 20   have anything like that, as long as it gets from point A to

11:24:06 21   point B, there is no target, it just goes wherever it wants

11:24:10 22   to go.

11:24:11 23             MR. NEWTON:  What if we were --

11:24:13 24             THE COURT:  I have no idea.  I don't even know

11:24:15 25   what your proposal is.

11:24:16  1          MR. NEWTON:  What if we were to interpret it as

11:24:20  2  the anticipated period of a step?

11:24:23  3          THE COURT:  I don't know what that means.  It's

11:24:25  4  not a trajectory.  A period is not a trajectory, it's a

11:24:27  5  time.  Tell me what the issue is here.  What is the

11:24:30  6  relevance of this term to infringement or validity?

11:24:33  7          MR. NEWTON:  The issue is that these robots that

11:24:36  8  are accused -- they make decisions based on time, so it says

11:24:40  9  I expect that my step is going to take three seconds, for

11:24:45 10  example, and if I encounter an obstacle, I hit an incline,

11:24:49 11  or three seconds has lapsed and I have not hit ground, then

11:24:53 12  I can make a decision based on that information.  The

11:24:55 13  dispute is that by reading in this concept of a planned

11:24:59 14  spatial path goes to saying --

11:25:02 15          THE COURT:  Maybe that's a problem with your

11:25:04 16  patent and not with their argument.

11:25:07 17          MR. NEWTON:  I --

11:25:08 18          THE COURT:  I mean, I don't understand.  Show me

11:25:13 19  the intrinsic evidence that says what you're talking about

11:25:16 20  is time, that a trajectory, target trajectory of a swing

11:25:26 21  means -- has nothing to do with the swing or even if it

11:25:31 22  swings at all, as long as you hit the time.

11:25:35 23          MR. NEWTON:  So that is in the discussion of the

11:25:37 24  specification where it's talking about how --

11:25:39 25          THE COURT:  Don't tell me what it says, show me.

| | |
|---|---|
| 11:25:42 | 1 |
| 11:25:44 | 2 |
| 11:25:48 | 3 |
| 11:25:51 | 4 |
| 11:25:54 | 5 |
| 11:25:57 | 6 |
| 11:26:00 | 7 |
| 11:26:05 | 8 |
| 11:26:08 | 9 |
| 11:26:11 | 10 |
| 11:26:14 | 11 |
| 11:26:18 | 12 |
| 11:26:25 | 13 |
| 11:26:27 | 14 |
| 11:26:36 | 15 |
| 11:26:40 | 16 |
| 11:26:44 | 17 |
| 11:26:48 | 18 |
| 11:26:55 | 19 |
| 11:26:58 | 20 |
| 11:27:03 | 21 |
| 11:27:07 | 22 |
| 11:27:11 | 23 |
| 11:27:15 | 24 |
| 11:27:19 | 25 |

MR. NEWTON:  Right.  So the specification
highlighted portion here says the target trajectory --

THE COURT:  That has nothing to do with time.

MR. NEWTON:  Right.  The point I'm making, Your
Honor, the specification says the target swing trajectory
starting at the first sentence here may have a beginning and
an end as well as other attributes.  Those attributes can
include a spatial path --

THE COURT:  I'm missing out when you use the
word trajectory and trajectory means a path or a
progression, and you say doesn't have to have a target path,
doesn't have to have a target progression, it's just time.
You want to talk about ordinary meaning of words, a
trajectory, a target trajectory of a swing is not -- I don't
see that as being time.  And so I don't -- so when you want
me to construe this as the target trajectory of a foot swing
with a beginning and an end, you're basically saying that
that means the target trajectory of a foot swing means that
whatever the foot does, it can do whatever it wants, but it
has to do it in a minute.  That's how you're reading that
claim term on to their product.

MR. NEWTON:  The step, the time period, you say
my trajectory has time one at zero and time two at one
minute, then I am saying yes, if the foot changes its
spatial path to get there, the invention is still being

11:27:22 1   fulfilled because if I hit an obstacle, the foot goes like

11:27:26 2   this and I happen to be in the way of an obstacle and I

11:27:29 3   identify that between time one and time two, I say okay,

11:27:32 4   there is an obstacle.  I'm now going to use --

11:27:34 5              THE COURT:  The target trajectory has nothing to

11:27:37 6   do -- the target trajectory is what happens if there is no

11:27:40 7   obstacle.  And yes, I get it, if you don't reach the target,

11:27:45 8   you assume there is an obstacle.  I get it.  You're talking

11:27:49 9   about the target trajectory only in terms of if there is a

11:27:51 10  obstacle.  What is the target trajectory if there is no

11:27:55 11  obstacle?  What does it mean?  It means three seconds?

11:27:57 12             MR. NEWTON:  I am fine with the word

11:27:59 13  progression, but it is the anticipated or the expected

11:28:01 14  progression of the step --

11:28:02 15             THE COURT:  Of the swing of the foot, of the

11:28:03 16  foot swing.

11:28:05 17             MR. NEWTON:  Exactly.

11:28:05 18             THE COURT:  It's the progression of the foot

11:28:07 19  swing.

11:28:08 20             MR. NEWTON:  Right.

11:28:08 21             THE COURT:  But it only means time.

11:28:16 22             MR. NEWTON:  I don't think --

11:28:17 23             THE COURT:  We're running out of time here.

11:28:19 24             Mr. Cherny, if you want to tell me what you want

11:28:21 25  to say it might make things go quicker because we're just

11:28:25 1    about out of time.  I'm not understanding.

11:28:28 2         MR. CHERNY:  I understand.  So we start off with

11:28:30 3    that the robot has a gait.  The gait is a pattern of a step,

11:28:35 4    it could be every two seconds it takes a step, every four

11:28:38 5    seconds it takes a step.  It could be a certain height, it

11:28:41 6    could be a different height.  I essentially say to the robot

11:28:44 7    okay, take the step every three seconds.  It can change

11:28:47 8    where I change the gait to every two seconds or whatever.

11:28:50 9    So the path or space isn't predetermined.  I'm sorry when I

11:28:55 10   was giving the graphical picture to emphasize where the

11:28:58 11   swing state occurs --

11:29:00 12        THE COURT:  But the word target makes it sound

11:29:02 13   preprogrammed, or whatever that word is you just used.

11:29:05 14        MR. CHERNY:  It's more once I determine the

11:29:08 15   gait, and for example, in horses a target gait is like lopes

11:29:12 16   or gallops, which I determine the gait which is the pattern

11:29:16 17   of steps.  I say okay, at that pattern, the target swing

11:29:21 18   trajectory begins at second zero and ends at second five.

11:29:24 19        At that point it's not like the robot has a path

11:29:28 20   preprogrammed where the foot is always going to go -- that

11:29:31 21   can change, you can have a gait change to every three

11:29:33 22   seconds, every two seconds, so the target swing trajectory

11:29:36 23   is the beginning and end of the step basically.

11:29:39 24        Now, it could be -- as Mr. Newton pointed out, I

11:29:43 25   think you can change the height of it if you want.  You can

11:29:46  1    change all sorts of variables, but basically all --

11:29:49  2             THE COURT:  Show me where the trajectory is the

11:29:51  3    time, where they use that word, our target trajectory -- all

11:29:58  4    I saw was you keep showing me it may have a beginning, it

11:30:01  5    may have an end, it may have a height, it may have a width,

11:30:05  6    it may have all this stuff.  What is it?

11:30:08  7             MR. CHERNY:  Okay.  So it talks about --

11:30:10  8             THE COURT:  It may include, may include

11:30:13  9    velocity, okay, may not, may include to avoid obstacle, may

11:30:18 10    not.

11:30:19 11             MR. CHERNY:  These are all things that could be

11:30:21 12    part --

11:30:21 13             THE COURT:  You're not telling me -- the word

11:30:23 14    trajectory to me is a path or progression and all you're

11:30:27 15    doing is you're saying yes, a path could have -- the path

11:30:30 16    that the leg takes could be a different height.  The path

11:30:33 17    that the leg takes could have different speed.  The path

11:30:39 18    that -- you know, it may have, you know, it may be made to

11:30:45 19    jump.

11:30:45 20             MR. CHERNY:  It depends --

11:30:47 21             THE COURT:  It's not -- a trajectory to me is

11:30:49 22    not time.

11:30:50 23             MR. CHERNY:  I understand that the trajectory is

11:30:51 24    the path of the step during the gait and the time determined

11:30:56 25    can determine that path.  And so what the patent is saying,

11:31:00  1    so if I'm walking like this, and I go like this and like

11:31:03  2    this, my gait is like that.  The trajectory going from here

11:31:06  3    to this to this, if I then change the gait so that I didn't

11:31:11  4    lift my leg up as far, my path has changed but it still may

11:31:16  5    be beginning at one second, end after five seconds.  The

11:31:20  6    path isn't preprogrammed in terms of the robot wouldn't be

11:31:23  7    very useful, essentially I have preprogrammed in a world

11:31:27  8    where the ground changes essentially to have to follow the

11:31:30  9    same path.  What I have done here is I have essentially said

11:31:33 10    look, if I use time and something happens within the time

11:31:36 11    period that I didn't anticipate --

11:31:38 12               THE COURT:  Yes, but what I'm not

11:31:40 13    understanding -- I understand your logic and it makes sense

11:31:43 14    to me.  What I'm not understanding is where does the patent

11:31:46 15    say it?  I got lawyer argument that makes sense to me.  Why

11:31:49 16    in the world would a person of skill in the art reading this

11:31:53 17    patent say trajectory, target swing trajectory means time?

11:31:56 18    And all you're showing me it could include lots of stuff,

11:32:00 19    but I don't see anywhere where it says it also may include

11:32:03 20    time.

11:32:03 21               MR. CHERNY:  So the reason why every one --

11:32:07 22    every one of the claims does have a target swing trajectory

11:32:10 23    in it, the reason why it's talking about detecting

11:32:15 24    indication the first foot of the robot has contact before

11:32:20 25    the second time, first and second times are part of the

11:32:21 1    target swing trajectory.  Earlier in the claim it says the

11:32:23 2    target swing trajectory has a first time and a second time.

11:32:25 3    And all it's saying is that if in that interval something

11:32:29 4    occurs --

11:32:29 5                THE COURT:  Which claim is this?

11:32:32 6                MR. CHERNY:  Claim 12.  So that's why it's a

11:32:42 7    time because that makes it so --

11:32:44 8                THE COURT:  Let me just read it.

11:33:02 9                MR. CHERNY:  It's up on the screen if you want,

11:33:07 10   Your Honor, as well.

11:33:15 11               THE COURT:  So in this case, the target swing

11:33:18 12   trajectory in claim 12, it has to -- the leg has to follow

11:33:26 13   whatever the trajectory is --

11:33:31 14               MR. CHERNY:  By the gait.  So what happens is

11:33:33 15   the first line is that you determine a gait.  The gait can

11:33:37 16   change.  The first, the title of the thing is having -- is

11:33:41 17   all about the gait, you have a gait, you have a pattern of

11:33:43 18   walking and lift your leg up high.

11:33:47 19               So the answer is, my gait here is different and

11:33:49 20   if I go like this, I have a different gait.  And so once I

11:33:54 21   have established my gait for that part of -- whatever the

11:33:57 22   gait is for that moment in time, I don't mean moment, for

11:34:00 23   that period, that gait has within it a swing state and a

11:34:05 24   stance state according to the claim.  The target swing

11:34:07 25   trajectory is defined as having a beginning and an end, and

11:34:10 1    obviously everything has a beginning and an end I assume in

11:34:13 2    the world.  I understand.  But the point that it's trying to

11:34:17 3    make is if something happens before the end of the

11:34:20 4    trajectory, before the time, not before anticipated path, if

11:34:25 5    before time B you end up --

11:34:28 6              THE COURT:  So we don't care if it hits a rock,

11:34:31 7    we don't care if it hits a hill, it just -- the only thing

11:34:35 8    that matters is it does it at the wrong time?

11:34:39 9              MR. CHERNY:  Exactly.  That's exactly what the

11:34:41 10   claim says right there, Your Honor, is that I'm walking

11:34:44 11   along, and this is my gait.  Okay?  It could be any gait.

11:34:48 12   It can change.  The answer is that if the robot can

11:34:51 13   determine whether it should be going like this or like this,

11:34:54 14   and as Mr. Newton pointed out, there is a lot of things you

11:34:58 15   can preprogram it, basically the main thing is I have a gait

11:35:01 16   which is a pattern of walking.  Okay?

11:35:03 17             And so I'm walking along, along with my gait, it

11:35:06 18   can have a different gait later on, and hopefully the robot

11:35:11 19   -- in this situation, because I don't know what's going to

11:35:14 20   happen in the world, I don't plan out the path of it, okay,

11:35:18 21   it's that I hit this before the second time.

11:35:21 22             THE COURT:  But we're not talking about the path

11:35:23 23   that the robot is moving, we're talking about the path that

11:35:27 24   its leg is taking?

11:35:29 25             MR. CHERNY:  It's not even the path of the leg

11:35:32  1    --

11:35:32  2                THE COURT:  Isn't that what you have said?  I

11:35:33  3    mean, your thinking is the target trajectory of a foot

11:35:38  4    swing.

11:35:38  5                MR. CHERNY:  Yes.  But it's all about -- Your

11:35:41  6    Honor, I understand what you're saying, I really do.  And

11:35:45  7    unlike Mr. Newton, I'm not going to disagree with you.  What

11:35:49  8    I'm saying is the operative issue here is once I have my

11:35:53  9    gait established and that can change, the only thing that

11:35:56 10    matters say for claim 12 is do I hit the ground surface

11:36:00 11    before time B.

11:36:01 12                THE COURT:  And none of this makes any sense to

11:36:03 13    me in terms of your proposal.  A target trajectory of a foot

11:36:10 14    swing.

11:36:12 15                MR. CHERNY:  Yes.

11:36:12 16                THE COURT:  With a beginning and an end.  That's

11:36:15 17    not even a beginning and an end time, it just has a

11:36:18 18    beginning, starts and it stops.

11:36:19 19                MR. CHERNY:  Whether we have artfully captured

11:36:22 20    --

11:36:22 21                THE COURT:  Yes, but you want me to construe it,

11:36:25 22    and your experts have used these terms, so I don't really --

11:36:29 23                MR. CHERNY:  The point of it being is that it's

11:36:32 24    not that different from what we're saying.  The claim is

11:36:34 25    pretty clear what it's trying to say.  I understand that

11:36:36 1    people want it construed, but this is one where we looked at

11:36:40 2    the claim.  The claim is making it absolutely clear that the

11:36:43 3    whole point here is I have determined a gait that has a

11:36:47 4    swing state and a stance state.  Those are required.  Okay?

11:36:50 5    I'm walking along pursuant to the gait that I have

11:36:54 6    established.  I'm walking.  That gait can be a different

11:36:57 7    gait.  There are different gaits, different types, different

11:37:00 8    step patterns.

11:37:01 9              THE COURT:  Yes, but where each gait has its own

11:37:05 10   target trajectory according to the claim; right?

11:37:06 11             MR. CHERNY:  Yeah, the gait has a target

11:37:08 12   trajectory.

11:37:08 13             THE COURT:  So why do we keep coming back to

11:37:11 14   gait.  Let's assume I am in one gait and I have a gait, one

11:37:15 15   gait, and it comprises a swing state and a stance state.

11:37:18 16   The swing state, I have a gait and now in that gait I have a

11:37:22 17   particular swing state which is the dog is moving along,

11:37:26 18   just walking like big steps.

11:37:28 19             MR. CHERNY:  Yeah.  Yeah.

11:37:29 20             THE COURT:  The swing state, that whatever,

11:37:31 21   comprises a target swing trajectory that means that the foot

11:37:38 22   has to go from here to there every three seconds.

11:37:45 23             MR. CHERNY:  Exactly.  Now the big issue here is

11:37:47 24   obviously like the -- it's not that the path was planned,

11:37:51 25   it's that I -- with that -- with each different gait, the

11:37:54  1    only thing that's important here is that it lifts up at one

11:37:58  2    point, it comes to the ground or, you know, takes three

11:38:01  3    seconds or whatever, that's your trajectory, and if I hit

11:38:04  4    something in between, it may be a hill, or I may not get to

11:38:09  5    anything, for example, when I get to the decline, I haven't

11:38:12  6    hit anything, no disturbance, I just haven't hit ground when

11:38:16  7    I expected.  The reason it's timed based is that the robot

11:38:20  8    --

11:38:20  9                THE COURT:  It's time based in claim 12.  I just

11:38:23 10    don't understand why you think -- clearly it's time based in

11:38:28 11    claim 12.  I don't understand why it has to be time based --

11:38:31 12                MR. CHERNY:  It's time based in 17 as well.  The

11:38:34 13    truth is claim 1, it is time based, but claim 1 it doesn't

11:38:37 14    rely upon it as much because you have to leave the

11:38:40 15    trajectory in claim 1 because you hit a disturbance.  So in

11:38:43 16    claim 1 you are going along with a trajectory, you're going

11:38:47 17    along with a gait where essentially, whatever period, you're

11:38:50 18    taking your steps pursuant to the gait, okay, in 12 and 17,

11:38:55 19    either I hit a hill or I don't hit any ground in which case

11:38:59 20    I know I'm on a decline.  It's purely based on the time

11:39:03 21    essentially --

11:39:04 22                THE COURT:  What I'm not understanding is you

11:39:06 23    keep telling me and you're pointing that -- maybe it's only

11:39:10 24    from the claim that you're relying on that, nothing else in

11:39:13 25    the patent seems to be talking about that.

11:39:15  1              MR. CHERNY:  Well, I mean, it's clear --

11:39:17  2              THE COURT:  Clear, point me to some words.

11:39:19  3              MR. CHERNY:  The only thing that we're

11:39:21  4    disagreeing with the other side about is when it's going

11:39:25  5    through that step there is no planned path.  So nobody is

11:39:29  6    disagreeing that this is time based between the beginning

11:39:31  7    and the end of the step --

11:39:33  8              THE COURT:  Plans have meaning.  The foot always

11:39:35  9    has to go like this.

11:39:36 10              MR. CHERNY:  What happens if the gait changes?

11:39:38 11              THE COURT:  If the gait changes, it doesn't

11:39:40 12    matter because all we need is one gait with a one swing

11:39:43 13    state and that one swing state has a target.  If the gait

11:39:47 14    changes because something happens presumably you have a

11:39:50 15    different swing state or a different target.

11:39:52 16              MR. CHERNY:  Or I'm using remote control and I

11:39:55 17    change the gait.  The point is when the robot is moving

11:39:58 18    along, it can have multiple gaits during the day, but the

11:40:01 19    thing is that there is no plan ahead of time of the foot's

11:40:05 20    path throughout the day.  There is a plan that will take --

11:40:07 21    essentially that it has a pattern of steps.  Now, it can

11:40:12 22    adapt and all that and it can change its gait.  The only

11:40:15 23    thing, you asked what this is about.  There is no plan for

11:40:19 24    --

11:40:19 25              THE COURT:  It's called a target, so that's what

11:40:22 1     I'm getting confused about.

11:40:23 2              MR. CHERNY:  That's the thing.  But the point

11:40:25 3     here is that it can change the path through space, but the

11:40:29 4     point here is does something happen in between the time from

11:40:32 5     the foot picking up and the foot going down?  That's exactly

11:40:37 6     --

11:40:37 7              THE COURT:  Let me hear from the other side.

11:40:48 8              MS. HORN:  So I would like to start just by --

11:40:53 9     with a clarification for Your Honor, because I think slide

11:40:57 10    46 that they had up from their presentation is misleading.

11:41:01 11             It misrepresents certainly --

11:41:04 12             THE COURT:  You just said misleading and

11:41:07 13    misrepresents.  Those are really strong words.  Why don't

11:41:10 14    you back off rather than accusing them of lying.  Okay?  I'm

11:41:14 15    like Judge Farnan on that.  Unless you want to get up here

11:41:18 16    and really show me that they intended to misrepresent to the

11:41:22 17    Court something, don't use those words.  Okay?

11:41:25 18             MS. HORN:  Sure, it may have been inadvertent,

11:41:28 19    but the claim term that has always been proposed for

11:41:30 20    construction is what you see at the very top of this slide.

11:41:33 21    It's the whole phrase including target swing trajectory.

11:41:37 22    And so their slide suggest that our construction is just the

11:41:40 23    target swing trajectory which it is not.

11:41:43 24             So we proposed a target swing trajectory for a

11:41:46 25    first foot of the robot during a step and inclusive of that

11:41:50  1    whole wherein clause where it talks about the step

11:41:53  2    comprising a beginning at a first time and an end at a

11:41:57  3    second time.  So Ghost's proposed construction is again for

11:42:00  4    that entire phrase that you see at the top of this slide

11:42:04  5    here.  And it applies -- it appears the same verbatim --

11:42:09  6              THE COURT:  What is the part that's really

11:42:11  7    confused?  What is the part that's in dispute?  What is it

11:42:16  8    that you agree on and what don't you?  It seems to me that

11:42:19  9    the part you don't agree on is the target swing trajectory.

11:42:23 10    Do you agree what a first foot is of the robot during a step

11:42:27 11    where the target swing trajectory during the step comprises

11:42:30 12    a beginning at a first time and an end -- I mean, okay, I

11:42:35 13    get it, you're right, this is a long, long term that they

11:42:40 14    want construed.  Tell me what the crux, put the dispute --

11:42:48 15    what is the dispute?  Not all these words.  What is it you

11:42:51 16    want in here that they don't want?  Is it path?

11:42:54 17              MS. HORN:  We always understood it to be two

11:42:58 18    things throughout expert discovery, but their position has

11:43:01 19    been shifting.

11:43:02 20              THE COURT:  I don't care, what are the two

11:43:04 21    things, just answer my question.

11:43:05 22              MS. HORN:  One is a planned path and I believe

11:43:08 23    that comes from the plain language of what it means to be a

11:43:11 24    target and a trajectory.

11:43:14 25              THE COURT:  Okay.  What's number two?

11:43:15  1          MS. HORN:  Number two has always been whether it

11:43:17  2  has to begin at a first time and end at a second time, that

11:43:20  3  is whether it has to be time based in the context of these

11:43:23  4  claims.  But I understand from what they said today that we

11:43:27  5  have agreement on that.

11:43:27  6          THE COURT:  I'm sorry, in the context of these

11:43:30  7  claims, you don't dispute that in the context of claim 12

11:43:34  8  it's time based.  Right?

11:43:35  9          MS. HORN:  No, we believe that in the context of

11:43:37 10  all of the claims it is time based.

11:43:42 11          THE COURT:  And they do, too, right?

11:43:44 12          MS. HORN:  Today they have said that.  But

11:43:47 13  during expert discovery --

11:43:48 14          THE COURT:  Well, you guys agree it's time based

11:43:51 15  in all the claims.

11:43:53 16          MR. CHERNY:  If the target swing trajectory has

11:43:55 17  a beginning and an end, it knows a beginning time and an end

11:43:59 18  time.

11:44:02 19          THE COURT:  The target trajectory of a foot

11:44:05 20  swing with a beginning and an end, I don't know, is

11:44:11 21  beginning and end the red that you --

11:44:15 22          MS. HORN:  So in this chart just to help you

11:44:17 23  understand it, they have proposed a construction for just

11:44:21 24  target swing trajectory, not for the whole phrase that was

11:44:23 25  proposed for construction.  And so on the left the red is

11:44:27  1     what they proposed for target swing trajectory and it shows

11:44:30  2     it in the context of the whole phrase that has been proposed

11:44:34  3     for construction.  And that's the difference.

11:44:37  4               THE COURT:  Let me ask Mr. Cherny.  For their

11:44:39  5     construction, what do you have a problem -- what words do

11:44:43  6     you have a problem with other than "planned path"?

11:44:46  7               MR. CHERNY:  Starting at a beginning time and

11:44:48  8     ending at a second time.

11:44:58  9               May I have one second, Your Honor?

11:45:00 10               THE COURT:  Of course.

11:45:10 11               MR. CHERNY:  So our issue is with planned path.

11:45:16 12     Okay?  As to forward swing, the answer is it's through the

11:45:21 13     whole swing.  And as I showed you before, the target swing

11:45:30 14     trajectory actually goes through -- it actually is defined

11:45:32 15     and that's actually -- I'll stand up.  That's probably the

11:45:36 16     right thing to do.

11:45:37 17               In claim 12 it actually says you hit the hill

11:45:40 18     before the end of the target swing trajectory so the whole

11:45:42 19     point of claim 12 --

11:45:43 20               THE COURT:  That's fine.  Go ahead.

11:45:45 21               MS. HORN:  So I'll just point out that this is

11:45:47 22     the target swing trajectory, it's not the actual trajectory

11:45:51 23     of the foot.  I believe there was a lot of discussion about

11:45:55 24     sort of the actual trajectory and these disturbances that

11:45:58 25     are happening, but target by itself, its plain meaning

11:46:02 1   suggest something that you aim for, it suggest a goal.  It

11:46:05 2   is what was planned, it was what I planned, what you hoped

11:46:08 3   to do.  I believe they used the word anticipated.  It was

11:46:11 4   the anticipated path.  Trajectory implies path.  I believe

11:46:16 5   we have some dictionary definitions in support of those

11:46:18 6   plain meanings and those are in Exhibit 14 if I remember

11:46:18 7   correctly.

11:46:21 8            And then you have swing in there, target swing

11:46:24 9   trajectory.  So it has to be the planned path for the swing

11:46:28 10  part of the foot which again you see in Figure 11 this

11:46:32 11  forward swing.  And then starting at a beginning time and

11:46:36 12  ending at a second time again comes from the full context of

11:46:40 13  the phrase that's being proposed for construction which is

11:46:42 14  part of the wherein clause which again appears verbatim in

11:46:46 15  claims 1 and 12, and then with just a slight variation in

11:46:50 16  claim 17.

11:46:50 17           And I believe Your Honor had some questions

11:46:53 18  about sort of where the first time and the second time were

11:46:55 19  occurring in the specification, so I wanted to provide some

11:46:58 20  clarification on that just for context.

11:47:01 21           So first time and second time don't appear

11:47:04 22  verbatim in the specification.  You won't find those terms.

11:47:07 23  And that's because of the prosecution history which I

11:47:10 24  believe is in Exhibit 16.

11:47:13 25           What happened was the claim originally just said

11:47:15  1    that this target trajectory has a beginning and an end,

11:47:19  2    which again, is what Boston Dynamics is proposing as part of

11:47:24  3    target swing trajectory.  But the applicant amended the

11:47:26  4    claim to change it to say that the target swing trajectory

11:47:29  5    comprises a beginning at a first time and an ending at a

11:47:32  6    second time during prosecution to get over the reference

11:47:35  7    that was in front of the examiner.

11:47:37  8              And so this idea of the first time and the

11:47:39  9    second time being part of the target swing trajectory really

11:47:42 10    finds its roots in the prosecution history.

11:47:46 11              THE COURT:  Just so we're clear here, this

11:47:49 12    language, I just looked at the brief, you guys have that

11:47:51 13    it's only in claim 1 of the '588 patent.  Is that right?  Is

11:47:58 14    it only in claim 1?

11:47:59 15              MS. HORN:  No.

11:48:00 16              THE COURT:  Why are we talking about claim 12?

11:48:02 17              MR. CHERNY:  It's in claim 12 and 17 as well.

11:48:04 18              MS. HORN:  Yes.

11:48:05 19              THE COURT:  It only says claim 1.

11:48:07 20              MS. HORN:  So I do apologize, I believe both of

11:48:10 21    the parties may have overlooked that it's in 12 and 17 as

11:48:14 22    well.  I believe it's verbatim in 1 and 12, and then 17 has

11:48:18 23    a slight variation on the wording.  I believe it says having

11:48:21 24    instead of comprising.

11:48:22 25              MR. CHERNY:  I think I can help.  As I said, you

11:48:24 1    asked me, Your Honor, what we were disputing here.  We're

11:48:28 2    not disputing a first time and a second time.  I don't know

11:48:31 3    why we're still talking about that.  In fact, that was part

11:48:35 4    of our discussion.  We are disputing the planned path.

11:48:39 5              THE COURT:  I thought you said planned path and

11:48:41 6    I thought you said a beginning time and an ending at a

11:48:44 7    second time.  Do you dispute that?

11:48:45 8              MR. CHERNY:  No, I do not dispute -- I said what

11:48:48 9    we were disputed was planned path, forward swing and before

11:48:52 10   step down.

11:48:53 11             THE COURT:  Is there something planned that

11:48:55 12   there is a target, something you're aiming at?

11:48:58 13             MR. CHERNY:  I think I can address that as well.

11:49:00 14             Where we're saying the issue is it's not

11:49:05 15   preplanned.  The robot has as it's moving along in it a

11:49:08 16   target that essentially generates the trajectory, but it's

11:49:11 17   not like it starts out with a preplanned path.

11:49:13 18             THE COURT:  I understand because you're saying

11:49:15 19   you -- the whole point is it doesn't know what it's going to

11:49:18 20   hit.

11:49:19 21             MR. CHERNY:  And the gait changes, it adjust.

11:49:22 22   As long as planned isn't preplanned, we don't have a problem

11:49:24 23   with planned.  I understand the Court's frustration, which

11:49:29 24   is obviously the foot when it's in the gait is going along a

11:49:33 25   path that has been predetermined --

11:49:34  1          THE COURT:  Right, because it's not doing what I

11:49:37  2   was suggesting, it's not like it's out there doing whatever.

11:49:40  3          MR. CHERNY:  My point is it's not a preplanned

11:49:42  4   path otherwise it doesn't adjust or you couldn't change the

11:49:46  5   gait such that the path changes even though the time might

11:49:50  6   change, it may have a beginning time and an end time.

11:49:53  7          Our main issue it's not a preplanned path, or

11:49:55  8   essentially the robot is loaded up with, here is the path

11:49:58  9   the leg is going to go through and swing every time.  Is it

11:50:01 10   guided by the robot and not random?  Yes.

11:50:05 11          Obviously it's clear from the other claims,

11:50:07 12   including claim 12, okay, that it is not before the first

11:50:14 13   step down because the claim 12 actually specified --

11:50:17 14          THE COURT:  I know that, but what about through

11:50:19 15   a forward swing?

11:50:20 16          MR. CHERNY:  Because it could be -- I don't know

11:50:22 17   what forward swing means.  It goes through the whole swing,

11:50:24 18   the trajectory is the entire swing, it's not just through

11:50:28 19   the forward swing.  The answer is the swing trajectory is

11:50:33 20   the entirety of the anticipated swing may be the right way

11:50:36 21   to put it.  It's going along pursuant to its gait.  Okay?

11:50:40 22   As part of the gait that it's going along with, which can

11:50:43 23   change, as part of the gait, what happens is there is a

11:50:45 24   swing state, okay, which is called a trajectory.

11:50:49 25          THE COURT:  All right.  You're totally taking up

11:50:51 1    her time and we're almost out of time, so go ahead.  Are you

11:50:56 2    saying planned means preplanned?

11:50:58 3         MS. HORN:  Well, I think in the sense that he's

11:51:00 4    using preplanned I think we are.

11:51:02 5         THE COURT:  No, he's using preplanned to mean

11:51:04 6    you send the dog out first thing in the morning and you say

11:51:07 7    keep walking at this gait.  And he's saying obviously when

11:51:15 8    it detects that there are differences, it's going to do

11:51:19 9    different things.  What does planned mean or preplanned.  I

11:51:22 10   don't know.  You guys should really know because you have

11:51:24 11   done your expert discovery, so what's the issue?

11:51:27 12        MS. HORN:  Sure.  So they have never suggested

11:51:30 13   preplanned before, but I will say that I do think that

11:51:33 14   planning means --

11:51:34 15        THE COURT:  That's because yours is the word

11:51:36 16   that says planned.  So they're not going to say she's saying

11:51:40 17   look, if it just means of course at this gait, when it's at

11:51:44 18   its loping gait, it's going to be doing a certain thing.

11:51:49 19   Everybody knows what it looks like when it's loping.

11:51:52 20   Everybody knows what it looks like when it's crawling.  If

11:51:55 21   that's what you mean by planned, I think that's planned,

11:51:59 22   right, the dog looks a certain way when it's doing a certain

11:52:02 23   thing.

11:52:03 24        What he's saying is are you saying -- that you

11:52:06 25   preplan ahead of time when this dog walks into that

11:52:09  1    building, it's going to keep loping regardless.

11:52:12  2                 MS. HORN:  I think once you have set the gait,

11:52:15  3    once you have chosen it's going to jog, it's going to walk,

11:52:19  4    it's going to trot, at that point you have planned the gait

11:52:21  5    for the robot.  It's going to keep following that trajectory

11:52:24  6    unless or until a disturbance happens.  And that's what it

11:52:28  7    means to be a target swing trajectory, it's the planned

11:52:30  8    path.  Everybody plans for the robot once it's placed in

11:52:35  9    walking gait to keep walking and walking and walking, then

11:52:39 10    if it hits a hill or something, then it departs from the

11:52:42 11    plan path or the target trajectory, that's fine, but that

11:52:46 12    doesn't mean that the target, what it plans on doing in

11:52:49 13    walking mode is not planned ahead of time, it is.  Everybody

11:52:52 14    knows if it's going to walk, if it's put in walking mode

11:52:55 15    it's going to keep walking in a particular way along a

11:52:58 16    particular path.

11:52:58 17                 That doesn't preclude disturbances from

11:53:02 18    happening and from departing from that target plan.

11:53:05 19                 THE COURT:  So under that construction of

11:53:07 20    planned, is that planned okay?

11:53:10 21                 MR. CHENEY:  Maybe an answer -- basically the

11:53:12 22    path within the gait, the gait can change, she agrees that

11:53:15 23    it can change.  So basically the first line of the claim

11:53:19 24    which we weren't here to construe is that you determine a

11:53:22 25    gait, at least in claim 12.  It has a gait.  Okay?

11:53:25  1          And so within the path of the leg, within the

11:53:28  2   gait, so if you want to say it's the path of the leg within

11:53:32  3   the gait, okay, that's the path -- or you know, that's what

11:53:36  4   it is.  Each gait has its own path.  It changes.  I mean,

11:53:41  5   they can change, they can adapt.  But the thing is a target

11:53:46  6   swing trajectory is essentially I'm walking along and if

11:53:48  7   something happens -- but again, the end -- the point is of

11:53:53  8   course timing in the sense that -- and they agree, it's that

11:53:57  9   if something happens within the time, not within the path.

11:54:00 10   It's not about whether something happens within the path of

11:54:03 11   my foot, it's whether something within that one to

11:54:07 12   five seconds I specified, that's what determines whether you

11:54:11 13   departed from --

11:54:11 14          THE COURT:  Let's move to the next term.

11:54:13 15          MR. CHERNY:  Okay.

11:54:13 16          THE COURT:  I'm going to have you guys come

11:54:15 17   back, and I might need some expert testimony or something

11:54:19 18   because what you've given me is not enough.

11:54:23 19          MR. CHERNY:  Okay.

11:54:24 20          THE COURT:  All right.  Next term.

11:54:27 21          MS. ACHARYA:  Your Honor, Deepa Acharya for

11:54:42 22   Boston Dynamics.

11:54:43 23          May I begin?

11:54:44 24          THE COURT:  Yes.

11:54:45 25          MS. ACHARYA:  The next term is detecting an

11:54:49  1    indication that the third leg of the robot contacted the

11:54:52  2    ground surface.  The issue here is really just an antecedent

11:54:57  3    basis issue.  If we look at the claim, go to the next slide,

11:55:02  4    57, you can see here there is a reference to the third leg.

11:55:06  5    The issue here is that dependent claim 13 and claim 12 from

11:55:11  6    which it depends on never introduces a third leg.  And once

11:55:18  7    that antecedent basis issue is fixed from The to A, there is

11:55:23  8    no ambiguity in terms of the claim scope.

11:55:27  9            Let me explain what this claim is about if I

11:55:30 10    may.  We're talking about a quadruped.  A quadruped has four

11:55:34 11    feet, four legs.  And what this claim is doing, and this one

11:55:39 12    depends from claim 12.  If you remember Mr. Cherny talked

11:55:42 13    about claim 12 being the situation where the first foot hits

11:55:45 14    the ground early or on an incline.  And in this situation,

11:55:49 15    because we have four feet, we have to coordinate the feet.

11:55:54 16    We have to coordinate when they're going to touch the

11:55:57 17    ground, when they're going to go up.

11:55:59 18            And in this coordination, the first and the

11:56:01 19    third feet, these are the contralateral feet.  They're

11:56:05 20    coordinated.  The second and fourth is also coordinated.

11:56:08 21    Now, if the first leg or the first foot hits the ground

11:56:12 22    early, you don't want to pick up the second foot or the

11:56:17 23    fourth foot, you want to make sure that the third foot or

11:56:20 24    the third leg has contacted the ground surface before you

11:56:24 25    then pick up the second and fourth.

11:56:27  1          And what this claim is saying is before you

11:56:30  2   cause the second foot to come down, let's just make sure

11:56:33  3   that that third leg has actually contacted the ground

11:56:37  4   surface.  And this is to ensure stability of the robot.  You

11:56:40  5   don't want a situation where first foot hits the ground,

11:56:44  6   third foot is up in the air and second foot kind of lifts up

11:56:48  7   from the ground, then you got two legs that are up from the

11:56:51  8   ground, robot can topple over.  We want to make sure that

11:56:54  9   the robot is stable.  That's what this claim is about.

11:56:58 10          When you replace The with A, it knows what the

11:57:02 11   claim scope is about.  It's ensuring the third leg hits the

11:57:06 12   ground so we have reached stability before we raise the

11:57:09 13   second leg.

11:57:10 14          If we go to slide --

11:57:12 15          THE COURT:  You got like six minutes so you

11:57:15 16   should -- you might want to save some time for your other

11:57:19 17   folks.

11:57:20 18          MS. ACHARYA:  I just want to show you here this

11:57:21 19   is showing that synchronization.  There is a lot of

11:57:25 20   discussion between the parties about how I think Ghost

11:57:28 21   Robotics makes the argument that, you know, you don't know

11:57:31 22   if the claim is talking about a hip or a knee or another

11:57:34 23   part of the leg.  How do you know that it has to be the foot

11:57:36 24   and that's the issue with the claim scope.  Here we're

11:57:39 25   always talking about the foot which is part of the leg, that

11:57:43  1    it's the foot that touches the ground.  The specification

11:57:47  2    never talks about the hip or a knee or another part of the

11:57:50  3    leg.

11:57:50  4            With respect to the claim scope we're always

11:57:52  5    understanding that it's the third foot.  That third foot is

11:57:55  6    part of the leg that steps down which is why I said if you

11:57:59  7    change T to A, there is no ambiguity in the claim scope.

11:58:04  8            And, Your Honor, that's it, unless you have

11:58:07  9    other questions.

11:58:08 10            THE COURT:  Okay.  Thank you.

11:58:18 11            MS. HORN:  Your Honor, I know we're tight on

11:58:20 12    time, so I'll address this term very briefly so we can move

11:58:24 13    on.

11:58:24 14            THE COURT:  You have the burden to prove by

11:58:26 15    clear and convincing evidence, so give me the clear and

11:58:29 16    convincing evidence.

11:58:30 17            MS. HORN:  Sure.  Claim 13, it's unclear how you

11:58:34 18    resolve this particular ambiguity.  They're saying just

11:58:39 19    change the third leg to a third leg.  The problem is there

11:58:44 20    are no prior introduced legs.  There are prior introduced

11:58:47 21    feet.  It's unclear which of the three feet the third leg

11:58:51 22    would be connected to, if any.  It's unclear whether the

11:58:55 23    third leg should read the third foot.  And so we're not

11:58:57 24    clear whether this is a foot, whether this is a leg, whether

11:59:01 25    and to what extent it might relate to prior introduced feet.

11:59:05  1  Even if you fix it to a third leg, it's unclear what its

11:59:09  2  relationship would be to the prior disclosed a third foot,

11:59:12  3  if any.

11:59:20  4          THE COURT:  Okay.

11:59:22  5          MS. HORN:  And so depending on how you fix this

11:59:25  6  particular ambiguity, you get different claim scopes because

11:59:29  7  you have different feet performing the different actions

11:59:33  8  and/or you have different legs performing them which may be

11:59:36  9  doing certain things that were prior recited in the earlier

11:59:40  10  claim or they may not, because we don't which leg --

11:59:43  11          THE COURT:  Tell me exactly how is it you get

11:59:46  12  different scope of the claim.

11:59:47  13          MS. HORN:  So if you have -- for example, if you

11:59:50  14  change it so that it's a third leg, if it's connected to the

11:59:56  15  prior disclosed a third foot, that is the third leg and the

12:00:00  16  third foot both are part of the same leg, then you get that

12:00:07  17  the third leg and the third foot are both in swing state.

12:00:13  18  You could also have it so that you have the first foot in

12:00:17  19  claim 12 and then if you have a third leg in claim 13, it's

12:00:23  20  unclear whether or to what extent that relates to the first

12:00:27  21  foot and whether that foot and leg have to be following the

12:00:30  22  gait that you have prescribed in claim 12.  And, you know,

12:00:35  23  kind of so on from there.

12:00:37  24          And then it's also unclear because it's a third

12:00:41  25  leg and there are no prior legs recited, it's unclear which

12:00:46  1    leg and which relationship to which foot you're even

12:00:50  2    claiming here.

12:00:56  3                THE COURT:  I'm just looking at what your expert

12:00:59  4    said.  Tell me, is the only expert opinion you have this

12:01:08  5    paragraph 66 through 68 of Exhibit 12?  I don't know what --

12:01:25  6    maybe I missed something.

12:01:26  7                MS. HORN:  I know we do have it in the

12:01:28  8    declaration.  Exhibit 12.  Yes, I believe it starts at

12:02:34  9    paragraph 66 and continues from there.

12:02:36 10                THE COURT:  Paragraph 66 is just quoting his

12:02:42 11    reply report.

12:02:48 12                MS. HORN:  Yes.  And then below it he explains

12:02:51 13    the difference between the leg and the foot and how they're

12:02:54 14    different, sort of different components.

12:02:56 15                THE COURT:  All right.  I heard enough on this

12:02:58 16    one.

12:02:59 17                Okay.  What's next?

12:03:09 18                MR. NEWTON:  Your Honor, I believe next we're

12:03:13 19    moving to the '842 patent, and the term identifying an

12:03:17 20    obstacle while traversing the staircase based on the

12:03:22 21    received sensor data.

12:03:23 22                Okay.  So I think there were two disputes

12:03:29 23    briefed, but I think it's now down to only one.  This phrase

12:03:33 24    while traversing the staircase, we had that in our

12:03:37 25    construction, Ghost did not, I understand from the briefing

12:03:40  1    and from our slide presentation, they're not disputing that

12:03:43  2    the construction should include that requirement of the

12:03:47  3    claim, or the claim, it should not be read out of the claim.

12:03:51  4                THE COURT:  Is that true?

12:03:53  5                MS. HORN:  That's correct, Your Honor.

12:03:57  6                MR. NEWTON:  The real dispute concerns the term

12:03:59  7    obstacle, and our proposal reflects that as the robot is

12:04:05  8    traversing the staircase, it should be recognizing any

12:04:09  9    obstacle that blocks its path.  Ghost's construction is

12:04:12 10    limiting the word obstacle to only objects that are on the

12:04:16 11    stairs, so it really comes down to should the claims be

12:04:19 12    limited to the robot identifying --

12:04:22 13                THE COURT:  If it gets to the top of the stairs

12:04:25 14    and he sees an obstacle, it can tell there is an obstacle,

12:04:28 15    but if the obstacle is not on the stairs, it's at the top of

12:04:31 16    it.

12:04:32 17                MR. NEWTON:  Exactly.

12:04:33 18                THE COURT:  That would be excluded.

12:04:34 19                MR. NEWTON:  That would be excluded from their

12:04:37 20    construction.  The same would be if there was a rope hanging

12:04:40 21    across the staircase or a railing, or a wall, or a

12:04:44 22    chandelier, wires hanging down, all of those are obstacles

12:04:47 23    that Ghost would argue are not on the stairs and therefore

12:04:50 24    would not fall within the scope of the claims.

12:04:53 25                Looking at the plain claim language, it doesn't

12:04:59  1    place any limitation --

12:05:00  2                 THE COURT:  What about that it blocks the path?

12:05:08  3                 MR. NEWTON:  Right, that's reflected in our

12:05:10  4    construction number one.  So that is covering the situation

12:05:14  5    like Your Honor mentioned where it gets to the top of the

12:05:16  6    stairs and something that's maybe not technically on the top

12:05:20  7    of the stairs but still blocking its path --

12:05:22  8                 THE COURT:  I'm sorry, do you have blocking the

12:05:24  9    path in yours?

12:05:25 10                 MR. NEWTON:  Yes, we both have that.

12:05:27 11                 THE COURT:  I don't have that in my notes.

12:05:44 12                 MR. NEWTON:  So I think it's helpful to take a

12:05:46 13    step back --

12:05:47 14                 THE COURT:  You have blocking the path in the

12:05:49 15    claim construction brief?

12:05:50 16                 MR. NEWTON:  I apologize, this is in our brief

12:05:53 17    at page 57 where we had a compromise proposal after seeing

12:05:58 18    their position.  This is in the joint brief at 57.

12:06:02 19                 THE COURT:  But you didn't go back and fix what

12:06:04 20    your proposed constructions were?

12:06:07 21                 MR. NEWTON:  It sounds like we did not go back

12:06:11 22    and put it in this chart.

12:06:13 23                 THE COURT:  It's at the very beginning of the

12:06:16 24    section of the brief.  We usually just -- I don't even know

12:06:22 25    what your positions are, so hold on.  No longer identifying,

12:06:43 1   now recognizing.  Okay.

12:07:31 2          MR. NEWTON:  So the real dispute boils down to

12:07:34 3   where the obstacle has to be on the stairs.  There is

12:07:38 4   nothing in the claim language that places a condition on the

12:07:41 5   obstacle that says it has to be on the stairs.  There is

12:07:44 6   nothing definitional or an express requirement in the

12:07:47 7   specification that says the obstacle has to be on the

12:07:50 8   stairs.

12:07:50 9          And if you take a step back and think about the

12:07:54 10   purpose of the invention, we want the robot to get from

12:07:56 11   point A to point B.  We want it to get from the bottom of

12:08:00 12   the stairs to the top of the stairs, or vice versa if it's

12:08:04 13   going downstairs.  We illustrated this with an example,

12:08:08 14   these graphics are from our technological tutorial.  But if

12:08:12 15   there is a railing in the robot's path, that is going to be

12:08:13 16   an obstacle that it needs to negotiate in order to get up to

12:08:15 17   the top of the staircase.

12:08:17 18          And so what the robot does when it encounters

12:08:20 19   obstacles like this according to the spec is it changes its

12:08:23 20   path lines, the path runs parallel to the obstacle and so in

12:08:27 21   this situation where it encounters that back railing, the

12:08:30 22   robot takes a 90-degree left turn so that its path is

12:08:34 23   parallel to the railing and then it can proceed up the

12:08:37 24   stairs.

12:08:37 25          The basic point of our construction is that the

12:08:40  1    claims should not be limited so that these types of

12:08:43  2    obstacles are not included.  And if you look at the

12:08:46  3    specification it even refers to something called wall

12:08:50  4    obstacles where it treats an obstacle like a wall so the

12:08:53  5    robot can change its path and turn parallel and proceed up

12:08:56  6    the staircase.

12:08:57  7            In our view there is no reason why the

12:08:59  8    specification would treat obstacles like a wall, but then

12:09:03  9    exclude walls themselves or railings or other features that

12:09:07 10    are not technically on the staircase from the scope of the

12:09:10 11    claims.

12:09:14 12            THE COURT:  All right.

12:09:14 13            MR. NEWTON:  Thank you.

12:09:18 14            MR. DECOSTA:  Your Honor, this is where I think

12:09:26 15    we are just to make sure that we're all on the same page.

12:09:30 16    We have a recently proposed compromise on the left and

12:09:35 17    Ghost's construction on the right.  And as I said, we wanted

12:09:40 18    to put in "while traversing the stairs" after the word

12:09:43 19    "recognizing," so it looks like their construction.  We

12:09:45 20    didn't have that in originally because where this phrase

12:09:48 21    appears in the claim, you're already in stair mode so you're

12:09:51 22    already traversing the stairs, so it's implicit in the

12:09:55 23    construction.  We have no problem with traversing the

12:09:55 24    staircase after recognizing.

12:09:59 25            But I think the final dispute we have is we have

12:10:01  1    an object on the stairs, they have an obstacle.  We think

12:10:04  2    obstacle needs to be construed because obstacles has a

12:10:07  3    specific meaning in the context of this patent.  Why?  For

12:10:16  4    example, look at what we cited here which is column 26 at 1

12:10:25  5    through 30.  What this is is a description of two things,

12:10:31  6    that there is a staircase model and there is an obstacle

12:10:37  7    map.  And explaining the contrast between those two things,

12:10:40  8    the passage that we cited here provides good detail as to

12:10:43  9    why an obstacle is different than -- has a specific

12:10:49 10    construction.

12:10:49 11             If you look at, for example, I'll give you time

12:10:52 12    to look at it, if you look at, for example, line 15, the

12:10:59 13    column says in this scenario the concerns that something is

12:11:03 14    on the staircase that is not part of the staircase model and

12:11:06 15    should be avoided during the navigation.  There are things

12:11:10 16    that are part of the staircase model that are negotiated,

12:11:12 17    but there are also things that are part of the obstacle map

12:11:16 18    that are obstacles.  So this distinguishes what features are

12:11:20 19    in the staircase model from features that are objects that

12:11:25 20    are on the stairs.

12:11:26 21             I think there is no longer a dispute as to

12:11:29 22    whether these things are still on the stairs because it says

12:11:32 23    on line 15, it says on the stairs at line 19, it says on the

12:11:36 24    stairs at line 25, it says the obstacles most likely exist

12:11:39 25    on the staircase.  So we have clarity as we're talking about

12:11:43  1    an object that's on the staircase.  But we also have the

12:11:47  2    statement that is starting at line 28 that tries to avoid

12:11:52  3    situations where the perception system is partially dealing

12:11:56  4    with stairs and classifying the stairs themselves

12:11:59  5    incorrectly as obstacles.

12:12:00  6            So this in short, the section we cited keeps a

12:12:04  7    distinction between things that the staircase model has on

12:12:07  8    it, features of the stairs and obstacles.  There is a

12:12:10  9    distinction between the two in the context of the patent.

12:12:13  10           Just to finish, I will address the last section

12:12:16  11   that counsel referred to, which is a description of wall

12:12:22  12   obstacles.

12:12:23  13           So wall obstacles are obstacles that the robot

12:12:27  14   sees that have characteristics of a wall.  It doesn't say

12:12:32  15   they are a wall, it says they're like a wall.  And what that

12:12:36  16   section addresses is that there is a default way of

12:12:39  17   navigating around obstacles and in the situation where the

12:12:43  18   obstacle has properties of a wall, it changes the way it

12:12:45  19   avoids those obstacles, it moves parallel to the wall as

12:12:50  20   opposed to just going around the boundary.  So what it's

12:12:53  21   saying is not that the walls are obstacles, it's saying that

12:12:56  22   some obstacles that I see have properties that are just like

12:12:59  23   a wall, therefore, I'm going to negotiate them differently

12:13:02  24   than I would generic obstacles.

12:13:05  25           That's what that section is referring to.  It

12:13:08  1   doesn't say that a wall is an obstacle, it's saying that

12:13:11  2   there are some obstacles that have properties that resemble

12:13:14  3   walls and you navigate them differently.

12:13:17  4           I have truncated the argument.  If the Court has

12:13:19  5   any questions, I'm happy to address them.

12:13:22  6           THE COURT:  Okay.  Thank you.

12:13:24  7           Next term.

12:13:34  8           MS. ACHARYA:  Your Honor, the next term at issue

12:13:46  9   is trip condition.  The issue here and the dispute between

12:13:49 10   the parties is whether the robot actually has to make an

12:13:54 11   impact when we're dealing with a trip condition, does it

12:13:57 12   have to make an impact with an object or is it more

12:14:00 13   anticipatory.

12:14:01 14           THE COURT:  Can you clarify for me, is the

12:14:07 15   object -- do you agree that the object cannot be another leg

12:14:11 16   of the robot?

12:14:13 17           MS. ACHARYA:  So there are -- correct.  Correct.

12:14:16 18   Because there are other claims that deal with that one.

12:14:18 19           THE COURT:  I'm just asking -- when you start

12:14:21 20   explaining, then I start to wonder if I'm missing something

12:14:24 21   or if you're saying something, I'm not perceiving some kind

12:14:28 22   of fine point.  You agree that the object cannot be another

12:14:32 23   leg of the robot?

12:14:34 24           MS. ACHARYA:  Correct.

12:14:40 25           If we could go to slide 80, please.  We believe

12:14:44 1    trip condition does have to include an impact and that's

12:14:47 2    based on the claim language.  If you look at the claim

12:14:50 3    language, this claim is talking about you detect a trip

12:14:53 4    condition for a swing leg of the robot that causes

12:14:56 5    instability of the robot.  So it's something that actually

12:15:01 6    causes the robot to be unstable.  And based on that trip

12:15:06 7    condition, what you do is you elevate the leg.  So the robot

12:15:11 8    is traversing up the stairs, it makes an impact, just say

12:15:15 9    with a ball or a bowling ball like it says in this patent,

12:15:18 10   it detects that, maybe it gets unstable.  Well, it has to be

12:15:22 11   unstable, but maybe it doesn't trip.  It's just unstable,

12:15:25 12   but it doesn't quite trip.  What does it do?  It lifts its

12:15:29 13   leg to overcome that object.  And the idea is that the trip

12:15:33 14   condition is a condition that the robot based on the impact

12:15:37 15   that puts it in an unstable position.

12:15:43 16              Now, the spec makes this really clear that we're

12:15:49 17   talking about an impact.  The spec shows, in this example,

12:15:55 18   Figure 3F and the corresponding portion of the spec that it

12:15:58 19   goes with is really talking about what claim 9 and 19 are

12:16:01 20   discussing.  It's talking about how you have a swinging leg.

12:16:05 21   It makes an impact with an object, here the bowling ball,

12:16:09 22   and because of that, that swinging leg has to overcome it so

12:16:13 23   it lifts its leg up to overcome that bowling ball.  And the

12:16:17 24   spec is clear, it says an impact that may trip the robot.

12:16:21 25   It doesn't say you have to trip the robot, but it is an

12:16:24  1    impact that then causes this instability that could cause a

12:16:28  2    trip.

12:16:28  3              THE COURT:  It also says may cause instability,

12:16:31  4    so an impact doesn't necessarily cause instability, right?

12:16:36  5              MS. ACHARYA:  But if you go back to the claim,

12:16:37  6    the claim doesn't use the may language, the claim says it

12:16:41  7    does cause instability.  And then if you go further into the

12:16:45  8    spec, it says the impact indicates a trip condition.  So it

12:16:51  9    is an impact, the swinging leg does make an impact.  But

12:16:56 10    we're not reading out, for example, the condition like Ghost

12:17:00 11    is saying.  They're saying we're creating trip condition

12:17:04 12    with just trip, and that's not the case.  We're not saying

12:17:07 13    the robot has to trip.  We're saying the robot does have to

12:17:11 14    make an impact with an object that puts it in an unstable

12:17:14 15    position where it could trip.  It may not, but we want to

12:17:18 16    avoid that situation where it trips so the robot proceeds by

12:17:23 17    bringing its swinging leg over the bowling ball in this case

12:17:26 18    to overcome that object so it can continue to traverse.

12:17:33 19              Next slide, please.

12:17:35 20              THE COURT:  You got to start moving.  We are way

12:17:37 21    over time and I'm going to cut you off in about five

12:17:37 22    minutes.

12:17:41 23              MS. ACHARYA:  Understood.  I'm just going to say

12:17:42 24    this is pretty consistent with the spec.  It's talking about

12:17:45 25    an impact detector.

12:17:47  1          THE COURT:  These are all examples?

12:17:49  2          MS. ACHARYA:  It is, but you cannot get to an

12:17:51  3  unstable position like the claim requires because it's

12:17:54  4  saying it's causing the robot to be unstable.  You're not

12:17:57  5  going to be unstable until you make an impact.

12:18:00  6          THE COURT:  I don't have the claim.  Can you

12:18:02  7  show me the claim.

12:18:04  8          MS. ACHARYA:  If you go back to slide 80,

12:18:07  9  please.  It's detecting a trip condition for a swing leg of

12:18:14 10  the robot that causes instability of that robot.

12:18:22 11          THE COURT:  So what if he just like sticks his

12:18:25 12  foot down a manhole, he's not impacting anything, he's just

12:18:34 13  unstable.

12:18:34 14          MS. ACHARYA:  He could be unstable, but this

12:18:36 15  claim is talking about a specific situation where you do

12:18:39 16  make impact with an object.

12:18:40 17          THE COURT:  Because you're asking me to read

12:18:43 18  impact in, so I'm trying to figure out why.

12:18:49 19          MS. ACHARYA:  Because it's saying that the trip

12:18:51 20  -- the spec is talking about a specific condition, a

12:18:54 21  condition --

12:18:55 22          THE COURT:  The spec is.  I'm asking why I read

12:18:57 23  it into the claim.  I said to you in the -- you were showing

12:19:03 24  me the specification, I said that's an example.  You said

12:19:05 25  well, the claim requires an impact.  I'm saying show me the

12:19:09 1   claim.  Now you're showing me the claim.  The claim says

12:19:12 2   trip condition which takes you back to the specification

12:19:15 3   which that says requires an impact.  So I don't understand.

12:19:18 4          MS. ACHARYA:  Sure.  Let me try to explain.  So

12:19:20 5   the next limitation, in your situation example where it goes

12:19:24 6   down, it's not going to need to lift its leg up to overcome

12:19:28 7   something.  We're talking about a situation where there is

12:19:31 8   an object that the robot has to actually overcome.  And that

12:19:35 9   next limitation is making that clear because it's saying

12:19:37 10  based on that trip condition, it's going to elevate the

12:19:42 11  distal end of the swinging leg, and that's because it wants

12:19:45 12  to overcome what that object is to continue traversing up

12:19:49 13  the stairs.

12:19:51 14          THE COURT:  Okay.  I don't know why that

12:19:54 15  requires an impact, but okay.

12:19:56 16          MS. ACHARYA:  It requires an impact --

12:19:58 17          THE COURT:  You know what.  Let me hear the

12:20:00 18  other side.

12:20:09 19          MR. FELICIELLO:  Good afternoon, Your Honor.

12:20:13 20  I'm going to briefly address why we're here and why our

12:20:16 21  construction works and the instability issue which I

12:20:18 22  understand is an important point of distinction.

12:20:20 23          So I think that Boston Dynamics has picked

12:20:25 24  something specific to accuse and they're trying to say

12:20:27 25  something specific and then ignore a broader definition in

12:20:31  1   the specification.

12:20:32  2          So this term, trip condition, traces back to the

12:20:37  3   specification to impact 310 which traces back to something

12:20:43  4   that is detected by an impact 300.   Impact detector 300

12:20:50  5   contemplates 310 which is both an actual impact and

12:20:55  6   something prospective.   For example, I can feel that my hand

12:20:59  7   has touched the podium, but I can also see that if my hand

12:21:02  8   continues moving forward, it will hit the podium.

12:21:06  9          So there is a chain of definitions going back to

12:21:11  10  the specification, and Ghost's construction comports with

12:21:15  11  the provided definition.   And Boston Dynamics' provided

12:21:21  12  construction is --

12:21:24  13         THE COURT:  So you agree that a trip condition

12:21:27  14  requires an impact?

12:21:28  15         MR. FELICIELLO:  No, because --

12:21:30  16         THE COURT:  You say the specification defines

12:21:33  17  trip condition as indicated by an impact.  That seems to me

12:21:38  18  that you're agreeing that a trip condition requires an

12:21:42  19  impact.

12:21:42  20         MR. FELICIELLO:  Now a point of distinction --

12:21:44  21         THE COURT:  That's what you say.  I'm just

12:21:46  22  reading your words.   Okay.

12:21:48  23         MR. FELICIELLO:  The answer is no, but I will

12:21:50  24  explain briefly.

12:21:51  25         THE COURT:  That's what you said on the screen.

12:21:53  1    You're showing me on the screen a statement that says the

12:21:59  2    specification defines trip condition as indicated by an

12:22:03  3    impact.

12:22:05  4            MR. FELICIELLO:  Impact or potential impact.

12:22:07  5    Because impact 310 is specifically defined in the

12:22:11  6    specification and it's not so much just impact as we would

12:22:15  7    use in a lay sense, impact 310 is defined in the

12:22:19  8    specification as potentially being detected as an impact or

12:22:24  9    a potential impact and that's the point of distinction.

12:22:27 10            So why does Ghost's construction work in

12:22:31 11    considering the stability issue?  So Ghost's construction

12:22:34 12    takes into account this prospective nature.  If you read our

12:22:39 13    construction, an obstruction that may cause the robot to

12:22:43 14    trip.

12:22:44 15            So the way that I read the claim, which was up

12:22:48 16    on the screen, was detecting a trip condition for a swing

12:22:52 17    leg of the robot that causes instability of the robot.  And

12:22:58 18    that causes instability of the robot modifies and defines

12:23:02 19    what the trip condition is such that that's what would

12:23:07 20    happen if we reached the trip condition, but we might not

12:23:11 21    necessarily reach the trip condition because it could be

12:23:14 22    detected as you feel it or it could be detected

12:23:18 23    prospectively.  So that's where Ghost's construction comes

12:23:23 24    into play and makes more sense to us than Boston Dynamics'

12:23:27 25    construction.

12:23:30  1              And I don't have anything further on that term,

12:23:32  2  unless you have specific questions.

12:23:35  3              THE COURT:  Can I see the claim.

12:23:38  4              MR. FELICIELLO:  I apologize, I don't have the

12:23:40  5  claim in my slides, but if Boston Dynamics could please pull

12:23:44  6  up slide 80.

12:23:58  7              THE COURT:  I mean, I guess where I'm confused

12:24:01  8  is it says the trip condition causes instability, not may

12:24:07  9  cause instability.  So your proposal seems somewhat

12:24:13 10  inconsistent with the actual language of both of the claims.

12:24:21 11              MR. FELICIELLO:  The may in Ghost's construction

12:24:26 12  works to show that that causes instability of the robot

12:24:33 13  defines what a trip condition is if you reach it, but you

12:24:36 14  may not reach it if it's something that's prospectively

12:24:40 15  detected.  And that's why Ghost's construction does comport

12:24:45 16  with the claim.

12:24:46 17              THE COURT:  I'm sorry, could you say that one

12:24:48 18  more time?

12:24:49 19              MR. FELICIELLO:  So the clause that says that

12:24:51 20  causes instability of the robot modifies and defines what a

12:24:55 21  trip condition is if you reach it, but you might not reach

12:24:59 22  it.  So Ghost's construction is taking into account that

12:25:04 23  prospective nature, that you could detect a trip condition

12:25:08 24  that will cause instability if you reach it, but you may not

12:25:13 25  reach it.

12:25:13  1          Yes, so that's why Ghost's construction makes

12:25:19  2   sense here.

12:25:20  3          THE COURT:  Okay.  All right.  Thank you.

12:25:22  4          Next term.

12:25:25  5          MR. NEWTON:  Your Honor, the next term is touch

12:25:31  6   down step location.  This is also the '869 patent, claims 8

12:25:37  7   and 18.

12:25:38  8          Boston Dynamics, our proposed construction is

12:25:40  9   location where the swing leg touches down.  Ghost's proposal

12:25:43 10   is target location where leg touch down is planned.  So the

12:25:48 11   real dispute here is whether the word target and planned

12:25:51 12   should be read into the claim limitation touch down step

12:25:55 13   location.

12:25:57 14          THE COURT:  They make you do these.

12:26:03 15          MR. NEWTON:  I think I may have a target on me

12:26:05 16   somewhere.

12:26:05 17          The claim language, this is the situation Your

12:26:08 18   Honor mentioned previously where the two legs come into

12:26:11 19   contact with each other.  That's in dependent claims 8 and

12:26:14 20   18.  And what the claim language says is that when you have

12:26:17 21   this type of impact between a swing leg and a stance leg,

12:26:21 22   what the robot does is it modifies a touch down step

12:26:25 23   location for the swing leg and it does that by shifting a

12:26:29 24   distal end of the swing leg away from the stance leg.  So

12:26:32 25   basically two legs collide and instead of going down in the

12:26:36 1    planned location, the leg shifts to a modified location.

12:26:41 2            The specification specifically distinguishes

12:26:45 3    this modified or adjusted location that the leg has shifted

12:26:49 4    to.  It distinguishes that from the idea that the robot

12:26:52 5    would calculate a brand-new target location and then put the

12:26:55 6    leg down there.  This is from column 14.  It says, "In some

12:26:59 7    examples, based on the detected impact, the impact detecter

12:27:02 8    300 generates a response to shift the swing leg or the

12:27:07 9    distal end of the swing leg away from the contralateral

12:27:12 10   stance leg."

12:27:12 11           In the next sentence it specifically

12:27:14 12   distinguishes that from a target step location.  In other

12:27:18 13   words, instead of the swing leg aiming for touch down of the

12:27:21 14   distal end in a target step location, the response shifts

12:27:25 15   the swing leg to an adjusted step location.  This is saying

12:27:29 16   when you're performing this shift functionality that's

12:27:32 17   recited in the claims, that's different than a target

12:27:35 18   location, that's different than coming up with a brand-new

12:27:38 19   target location for the leg.

12:27:39 20           And the specification makes that clear in the

12:27:42 21   next column where it says in some configurations, the

12:27:45 22   adjusted step location is an entirely new target step

12:27:49 23   location, but it doesn't say in all cases you are

12:27:52 24   determining the adjusted step location based on a new

12:27:56 25   target.

12:27:59  1            Unless there are any questions, that's all I

12:28:02  2    have.

12:28:02  3            THE COURT:  Thank you.

12:28:07  4            MR. FELICIELLO:  So again, Your Honor, I'll tell

12:28:10  5    you why we're here.  And Ghost's construction, the dispute

12:28:15  6    is over the planning, but Ghost's construction works because

12:28:18  7    it takes into account the prospective nature of what is

12:28:22  8    being done, and Boston Dynamics' construction doesn't do

12:28:26  9    that for us.

12:28:26 10            I think both parties agree here that what's

12:28:30 11    happening in the claim is it's modifying where the foot will

12:28:34 12    step down and not where it actually steps down.

12:28:38 13            THE COURT:  Can you show me the claim?

12:28:41 14            MR. FELICIELLO:  So this is claim 8.  And so the

12:28:46 15    nature of the claim --

12:28:47 16            THE COURT:  I'm sorry, just give me a second.

12:29:16 17            Okay.  Go ahead.

12:29:18 18            MR. FELICIELLO:  So Ghost's construction

12:29:20 19    includes the words "target" and "planned" because what's

12:29:23 20    happening in the claim is it's prospectively modifying where

12:29:27 21    the foot will touch down.  It's not modifying where the foot

12:29:31 22    is actually touching down.  And that wouldn't make a whole

12:29:34 23    lot of sense because, you know, you see, I want to step down

12:29:38 24    there, but then an impact happens and then you decide no, I

12:29:43 25    am going to shift away and modify where I am going to step

12:29:46  1    down prospectively.

12:29:48  2              Now for us, Boston Dynamics' construction

12:29:50  3    doesn't capture that because it talks about modifying the

12:29:54  4    location where the swing leg touches down.  And if we read

12:29:59  5    that into the claim, it would read modifying a location

12:30:06  6    where the swing leg touches down for the swing leg by

12:30:12  7    shifting the distal end of the swing leg away.

12:30:14  8              THE COURT:  Why doesn't that make sense?  You

12:30:17  9    modify where it will touch down by changing that distal leg.

12:30:24 10    I mean, you are modifying the location where it touches.

12:30:30 11              MR. FELICIELLO:  You're modifying where it will

12:30:32 12    touch down and that involves planning.  So if your foot

12:30:37 13    touches down, and then you drag it to the left, that is what

12:30:41 14    we understand to be modifying where the foot touches down.

12:30:46 15    But if you're modifying where you plan to step down, the

12:30:52 16    claim -- the surrounding language of the claim, the

12:30:58 17    modifying in Ghost's construction, but we do like having

12:31:04 18    planned in there to explain a little bit there is a

12:31:07 19    prospective modification.

12:31:08 20              And you can't just -- planning is happening here

12:31:14 21    because if it's not, then you risk just stepping down in the

12:31:17 22    same location both times.  There has to be something that

12:31:22 23    exist prospectively to modify it.

12:31:28 24              THE COURT:  Okay.

12:31:29 25              MR. FELICIELLO:  And that's all I have unless

12:31:31 1   the Court has questions.

12:31:32 2            THE COURT:  Let me ask plaintiffs, what's wrong

12:31:35 3   with -- I mean, it's not -- they're saying -- you're saying

12:31:39 4   you're modifying it, why isn't it modifying the location

12:31:42 5   where it will touch down as opposed to where it, in fact,

12:31:47 6   does touch down?

12:31:49 7            MR. NEWTON:  Well, the claim language covers

12:31:51 8   both scenarios, you can have --

12:31:53 9            THE COURT:  Let me see the claim language again.

12:31:55 10           MR. NEWTON:  Why don't we go to 86.  Modifying

12:32:00 11  --

12:32:00 12           THE COURT:  Hold on.

12:32:01 13           MR. NEWTON:  I'm sorry.

12:32:08 14           THE COURT:  Based on the impact, modifying a

12:32:11 15  touch down step location for the swing leg by shifting a

12:32:14 16  distal end.  So you're saying -- so really your construction

12:32:22 17  is where it either does touch down or where it will touch

12:32:25 18  down because it if adjust in air before the leg comes down,

12:32:29 19  that would be will, but if it kind of comes down and then it

12:32:33 20  catches itself, you're saying that also is included?

12:32:38 21           MR. NEWTON:  That's exactly right.  The claims

12:32:40 22  cover both scenarios and in both scenarios you're not

12:32:43 23  calculating a new target or planning a new target as to

12:32:47 24  where to put the foot, you're just doing this shift maneuver

12:32:51 25  that the claim talks about.  So I can program my robot to

12:32:55  1    say in this special case wherever you have contralateral

12:32:59  2    stance leg and swing leg impact, then shift the swing leg so

12:33:03  3    that you don't have that impact anymore.

12:33:05  4             It's just so -- it can be a preprogrammed shift

12:33:08  5    that doesn't require the robot to calculate a brand-new

12:33:12  6    target location.  That's exactly what the specification

12:33:14  7    says, it says yeah, as an option you can calculate a

12:33:18  8    brand-new target location, but you don't have to.  You can

12:33:21  9    have the robot shift its legs so that they're not in contact

12:33:24 10    anymore.

12:33:25 11             THE COURT:  I don't understand.  Are you saying

12:33:27 12    shift its leg when it's on the ground or are you saying

12:33:30 13    shift its leg so it's like whoa, and shift it over?

12:33:34 14             MR. NEWTON:  That's what I'm saying, it can be

12:33:36 15    either.  If you're on the ground and you contact, you just

12:33:39 16    shift it over, you slide it.  If you are in the air, you

12:33:42 17    contact, you do the same thing, you shift it a certain

12:33:46 18    distance so they're not in contact anymore, and then you

12:33:49 19    continue on.

12:33:50 20             But in both cases, the specification

12:33:52 21    distinguishes that shift from creating a new target location

12:33:56 22    for the step down.

12:34:00 23             THE COURT:  But if you did it after you -- so

12:34:03 24    you say you put -- it puts its foot down and then it shifts

12:34:08 25    its foot, how is that modifying the touch down step

12:34:13  1    location?  Instead it gave the touch down step location and

12:34:18  2    then did something else.

12:34:19  3            MR. NEWTON:  Well, that touch down step location

12:34:23  4    might be used for -- in further movement, but the foot has

12:34:27  5    touched down and on the ground and you're shifting it to a

12:34:30  6    modified touch down step location.

12:34:35  7            THE COURT:  But the specification says the swing

12:34:37  8    leg refers to a leg that is in motion swinging while not in

12:34:40  9    contact with the surface of the environment.  So if it's not

12:34:45 10    in contact with the surface of the environment, then the

12:34:50 11    touch down location, it can't be after it's already touched

12:34:55 12    down because then it's not a swing leg anymore.

12:34:58 13            MR. NEWTON:  I think that's where touch down

12:35:00 14    comes into play, a swing leg is to orient which leg we're

12:35:04 15    talking about, the stance leg and the swing leg.  It doesn't

12:35:07 16    say it's in a swinging motion, it says that swing leg that

12:35:11 17    has made contact and touched down, we are modifying that

12:35:14 18    touch down location to shift it.

12:35:17 19            THE COURT:  Okay.  Next term.

12:35:31 20            MR. DECOSTA:  If we can go to slide 94.

12:35:35 21            THE COURT:  You got three minutes.

12:35:36 22            MS. ACHARYA:  I think I can do this quick, Your

12:35:38 23    Honor.

12:35:38 24            THE COURT:  You got a minute-and-a-half if you

12:35:40 25    want anyone to do the next one.

12:35:42  1          MS. ACHARYA:  Ghost contends that the third

12:35:44  2  stance angle and the fourth stance angle in claims 4 and 14

12:35:47  3  are indefinite.  We say they are not.  The claims are very

12:35:51  4  specific and they actually define what the third stance

12:35:53  5  angle and fourth stance angle actually are.

12:35:56  6          The claim says third stance angle, it's the

12:35:58  7  angle between the body of the robot and the respective upper

12:36:03  8  leg portion of the upper rear leg.  The fourth stance angle

12:36:06  9  is when that third stance angle increases.  So the claims

12:36:09 10  are very specific.  This is not a situation where these

12:36:12 11  terms are not defined within the claims.

12:36:14 12          The issue that they take up is that claim 1 on

12:36:18 13  which claim 4 depends on, claim 1 has a first stance angle.

12:36:22 14  Claim 4 now talks about a third and fourth stance angle, but

12:36:27 15  there is no second stance angle, but that doesn't make that

12:36:32 16  claim indefinite, especially here when the third and fourth

12:36:36 17  stance angles are very clearly defined.  It's just a matter

12:36:36 18  of nomenclature.  This is labeled a third and fourth stance

12:36:40 19  angle, but it doesn't imply that there has to be a second

12:36:43 20  stance angle, especially here when it's set forth so

12:36:46 21  clearly.

12:36:46 22          On top of that, the specification if we go to

12:36:48 23  slide 96 --

12:36:49 24          THE COURT:  No, that's enough.  You're out of

12:36:51 25  time.

12:36:51 1        Go ahead.  Let me hear the response.

12:36:59 2        MR. FELICIELLO:  Your Honor, this situation

12:37:00 3  there are two claim scopes presented on the face of the

12:37:03 4  intrinsic record and there is no guidance as to which one is

12:37:06 5  right.  So the first one is a stance angle, third stance

12:37:11 6  angle and a fourth stance angle for claim 4 that omits the

12:37:15 7  second stance angle and leaves this ambiguity of what role

12:37:19 8  the second stance angle has because second logically

12:37:23 9  precedes third and fourth, and that position is set forth in

12:37:27 10 the --

12:37:31 11       THE COURT:  What are the two different claim

12:37:33 12 scopes?  Give me one, give me two, and just say them out as

12:37:37 13 clearly as you can, because what -- like when you just start

12:37:41 14 saying all this stuff, that slide is not helpful.  So what

12:37:45 15 are the two different claim scopes?

12:37:48 16       MR. FELICIELLO:  Claim scope number 1 is where

12:37:50 17 you leave claim 4 as it is, and it has a stance angle, a

12:37:54 18 third stance angle and a fourth stance angle.  The second

12:37:57 19 claim scope is taking Boston Dynamics' proposed

12:38:02 20 construction, Boston Dynamics proposes shifting the numbers

12:38:05 21 down because they think it's just ordering, however, it's

12:38:08 22 not just ordering, because if you accept Boston Dynamics'

12:38:11 23 proposed construction --

12:38:13 24       THE COURT:  Can you go back to the claim

12:38:15 25 language.  Okay.  I get it, you want -- one is you look at

12:38:22  1    it and you say the third stance angle, which is the angle

12:38:27  2    between the body of the robot and the respective upper leg

12:38:32  3    portion, that's defined, whatever, they now want to say

12:38:35  4    that's the second stance angle.  How does that change the

12:38:39  5    scope, if you change the word, second stance angle to third

12:38:46  6    stance angle to second, how does that change the scope?

12:38:48  7            MR. FELICIELLO:  This is important because

12:38:50  8    accepting Boston Dynamics' proposed construction, a second

12:38:53  9    stance angle would have two different meanings across the

12:38:55 10    claims.  In claims 2 and 3, it would refer to an angle for a

12:38:59 11    front leg, and in claim 4 it would now refer to an angle for

12:39:03 12    a rear leg.

12:39:06 13            THE COURT:  Okay.  Is that true?

12:39:09 14            MS. ACHARYA:  No, Your Honor, claims 2 and 3

12:39:11 15    depends on 1.  Claim 4 also depends from 1.  Each of these

12:39:16 16    can define what these angles are which 2 and 3 does, it

12:39:19 17    defines what the second stance angle is for those claims.

12:39:22 18    If we just change the name of third stance angle to second

12:39:26 19    stance angle in the fourth one, it can have a different

12:39:30 20    definition as long as the claim is clear as to what that is.

12:39:33 21    These are just names of the angles.  Ultimately we're bound

12:39:38 22    by how this claims actually define these angles.

12:39:41 23            THE COURT:  All right.  Let's go to the next

12:39:43 24    term.

12:39:48 25            MS. ACHARYA:  This is just our last term, Your

12:39:56   1   Honor.  This is again another issue of Ghost contending the

12:40:01   2   term is indefinite.  When we jump to the claim, if could go

12:40:06   3   to the next line.  The portion that they're taking issue

12:40:10   4   with is that -- is the highlighted portion and if you see

12:40:13   5   here, the claim is talking about when you're traversing the

12:40:17   6   stair, how do you move the legs to actually effectuate the

12:40:21   7   traversal of the stairs.  In claim 5 it talks about well,

12:40:25   8   you traverse the stairs when you move the end of the foot,

12:40:29   9   the end of the leg which is the foot, it lifts off from the

12:40:33 10   tread and to do that, the lower leg portion of the leg

12:40:36 11   rotates counterclockwise about the knee joint.

12:40:40 12           The issue here is that they're saying well, you

12:40:43 13   don't know how it's going to be counterclockwise.  If you

12:40:46 14   look at it from one direction, it could be clockwise, if you

12:40:49 15   look at that same movement from a different direction, it

12:40:52 16   could be counterclockwise.  What we're saying is you have to

12:40:56 17   look at it from the right-hand side.

12:40:57 18           If you go to the next slide.  The reason for

12:41:00 19   that, if you look at here, this is Figure 3B on the

12:41:03 20   highlighted portion which is the lower leg portion lifts up

12:41:07 21   off the ground, it's going to move that knee joint in a

12:41:10 22   counterclockwise position and that's to effectuate stair

12:41:13 23   traversal.  And you're looking at it from the right-hand

12:41:17 24   side.  A POSITA would understand if you're looking at it,

12:41:22 25   and we're talking about counterclockwise, we're talking

12:41:25 1   about it from the right-hand side.

12:41:27 2          THE COURT:  What's your basis for saying that?

12:41:29 3          MS. ACHARYA:  Because if you look at it from the

12:41:31 4   other side, it's going to be clockwise.  Here you can see --

12:41:34 5   here we're looking at a robot and we're looking at it from

12:41:38 6   the lower side.  We're looking at it from the left side, not

12:41:42 7   the right side.  If you do that counterclockwise motion it's

12:41:44 8   not going to effectuate stair reversal, because that leg is

12:41:48 9   going to go backwards and hit the treads of the stairs.  It

12:41:52 10  doesn't make sense for the robot to do that.  So for it to

12:41:55 11  make sense for the robot to actually move and traverse the

12:41:58 12  stairs you have to be looking at it from the right-hand side

12:42:01 13  and that's where the counterclockwise movement comes in.

12:42:05 14          This is always an issue when we're talking about

12:42:07 15  movement, whether you can forward, backward, left, right,

12:42:11 16  counterclockwise, clockwise, it's only in relation to --

12:42:14 17          THE COURT:  All right.  You got to move it.  You

12:42:17 18  got thirty seconds.

12:42:21 19          MR. FELICIELLO:  Yes, Your Honor.  So this is

12:42:24 20  another point of two different claim scopes and the

12:42:28 21  specification doesn't provide a resolution.  So the claim --

12:42:32 22          THE COURT:  But they're saying a person of skill

12:42:34 23  in the art is not a moron and can look at these pictures and

12:42:38 24  can understand what's happening when it's going up the

12:42:41 25  stairs versus down the stairs.

12:42:44  1          MR. FELICIELLO:  And the problem is they're not

12:42:45  2   always looking at how the lower leg portion rotates towards

12:42:49  3   the upper leg portion which is what the claim ask for.  So

12:42:52  4   the claim looks at how the lower leg portion rotates towards

12:42:56  5   the upper leg portion, not away.  And so for purposes of

12:43:00  6   determining infringement and what meets the claim, you have

12:43:04  7   two different ways of rotating the lower leg portion towards

12:43:08  8   the upper leg portion.  And the one side of the robot the

12:43:12  9   same leg is seen doing that in a counterclockwise manner and

12:43:15 10   from the other side of the robot the same leg is seen doing

12:43:19 11   that from a clockwise manner.  And this creates a problem

12:43:22 12   because looking at one leg from one side, the lower leg

12:43:26 13   portion rotates one way, and looking at the robot from the

12:43:31 14   other side, the lower leg portion rotates another way.

12:43:34 15          And the specification doesn't say that there is

12:43:36 16   only one way to analyze the robot.  And so that's why the

12:43:41 17   claim is indefinite because there is the two scopes and the

12:43:45 18   patent doesn't tell you which one to choose.

12:43:47 19          And Boston Dynamics' proposed construction

12:43:50 20   evaluates how the lower leg portion moves away from the

12:43:53 21   upper leg portion, not towards.  And that's all I have on

12:43:57 22   this term, unless the Court has any further questions.

12:44:00 23          THE COURT:  All right.  So what I am going to do

12:44:05 24   because I need more help with the target trajectory is have

12:44:17 25   you guys come back.  And I would like you to come back the

12:44:23 1   week of October 1st.  We might have to push your summary

12:44:30 2   judgment motions a week or so, but I would like you to come

12:44:33 3   back that week and then I will give you all of my

12:44:35 4   constructions.

12:44:37 5               And I'll let you guys talk with each other and

12:44:40 6   look at your schedules and figure out which days or times

12:44:43 7   that week work.

12:44:47 8               MR. CHERNY:  Your Honor, you mentioned what you

12:44:49 9   would like during that time period.  Did you need some type

12:44:53 10  of --

12:44:54 11              THE COURT:  I need something.

12:44:55 12              MR. CHERNY:  I understand that.  But you said

12:44:57 13  experts or not experts, what is it that you would like?

12:45:01 14              THE COURT:  Normally I don't think expert

12:45:03 15  testimony is all that helpful, but I need -- and maybe my

12:45:12 16  real problem here is you're not pointing me to anything

12:45:15 17  intrinsic in the patent, you're just saying well, it's gaits

12:45:21 18  and this, so I don't know what I need.  I need something

12:45:25 19  more than I have to understand the positions.  Your position

12:45:32 20  doesn't -- I don't even understand how it's consistent with

12:45:40 21  the argument that was being made, but yet I have some

12:45:44 22  concerns about defendant's position.

12:45:46 23              So you guys can -- you have up to five pages,

12:45:50 24  you can double space, you can submit anything you want, but

12:45:57 25  I need something that's making the argument a little bit

12:46:02 1   different because I'm just not understanding how it works.

12:46:07 2   And, you know, you're pointing me to claim 12.  Earlier I

12:46:12 3   was focused on claim 1, and I don't understand what's going

12:46:15 4   on.

12:46:15 5              MR. CHERNY:  So we'll talk with the other side.

12:46:18 6   Is it five pages total for our brief or did you want

12:46:22 7   responses or a single brief for each?

12:46:24 8              THE COURT:  Single from each.

12:46:26 9              MR. CHERNY:  We'll talk about the timing so

12:46:28 10  there is enough time before October 1st.

12:46:30 11             THE COURT:  I appreciate that.  Anything else

12:46:32 12  you guys need?

12:46:33 13             MR. DECOSTA:  No.  Thank you, Your Honor.

12:46:36 14             THE COURT:  I will try at that hearing, I think

12:46:38 15  some of these I could probably rule on.  I will try to rule

12:46:43 16  on anything I can so we don't have to kick off the case

12:46:46 17  dispositive motions too much.

12:46:55 18             MR. CHERNY:  Thank you, Your Honor.

12:46:58 19             COURTROOM DEPUTY:  All rise.  Court is

12:47:00 20  adjourned.

21             (Court adjourned at 12:47 p.m.)

22             I hereby certify the foregoing is a true and
    accurate transcript from my stenographic notes in the proceeding.

23

24                          /s/ Dale C. Hawkins
                         Official Court Reporter
25                          U.S. District Court

**'**

**'588** [5] - 3:16, 38:20, 39:20, 48:3, 80:13
**'842** [1] - 90:19
**'869** [1] - 105:6

**/**

**/s** [1] - 119:24

**1**

**1** [33] - 4:13, 4:16, 4:20, 4:21, 4:25, 25:4, 25:7, 30:18, 31:13, 31:22, 35:17, 36:18, 38:11, 44:2, 44:5, 52:8, 52:14, 73:13, 73:15, 73:16, 79:15, 80:13, 80:14, 80:19, 80:22, 95:4, 112:12, 112:13, 113:16, 114:15, 119:3
**10:40** [1] - 1:10
**11** [35] - 26:13, 27:2, 27:9, 28:6, 35:24, 36:2, 36:25, 37:1, 37:5, 37:7, 37:15, 37:16, 37:22, 38:20, 38:23, 40:1, 41:5, 41:22, 42:1, 42:24, 43:10, 43:15, 44:17, 44:19, 46:14, 47:3, 47:4, 48:3, 50:14, 51:19, 53:7, 53:11, 53:17, 79:10
**1106** [7] - 41:23, 43:19, 43:22, 48:8, 48:14, 49:2, 50:10
**1108** [4] - 28:1, 38:5, 43:7, 48:1
**1118** [8] - 38:4, 42:16, 42:19, 42:20, 43:10, 43:11, 43:13
**12** [38] - 1:9, 4:13, 20:23, 30:15, 30:17, 32:10, 33:17, 34:2, 43:20, 47:7, 51:22, 52:5, 52:15, 69:6, 69:12, 71:10, 73:9, 73:11, 73:18, 77:7, 78:17, 78:19, 79:15, 80:16, 80:17, 80:21, 80:22, 82:12, 82:13, 84:25, 86:5, 86:12, 86:13, 89:19, 89:22, 90:5, 90:8, 119:2
**12:47** [1] - 119:21

**13** [4] - 8:2, 86:5, 88:17, 89:19
**14** [3] - 79:6, 106:6, 112:2
**15** [2] - 95:12, 95:23
**16** [2] - 43:18, 79:24
**17** [12] - 4:13, 5:17, 26:4, 30:15, 33:17, 52:15, 73:12, 73:18, 79:16, 80:17, 80:21, 80:22
**170** [1] - 22:6
**18** [2] - 105:7, 105:20
**19** [2] - 95:23, 98:19
**1st** [2] - 118:1, 119:10

**2**

**2** [4] - 37:4, 114:10, 114:14, 114:16
**20** [5] - 27:6, 27:11, 27:12
**2024** [1] - 1:9
**21** [2] - 46:7, 58:9
**22-1483(MN** [1] - 1:5
**25** [2] - 53:10, 95:24
**26** [4] - 35:21, 46:7, 95:4
**26:15** [6] - 27:6, 27:11, 27:12, 37:15
**27** [2] - 53:15, 58:9
**28** [2] - 51:21, 96:2

**3**

**3** [3] - 114:10, 114:14, 114:16
**30** [2] - 43:3, 95:5
**300** [3] - 102:4, 106:8
**310** [4] - 102:3, 102:5, 103:5, 103:7
**33** [1] - 27:1
**34** [1] - 50:25
**36** [3] - 30:12, 30:13, 52:6
**3B** [1] - 115:19
**3F** [1] - 98:18

**4**

**4** [7] - 112:2, 112:13, 112:14, 113:6, 113:17, 114:11, 114:15
**42** [1] - 35:9
**43** [1] - 51:8
**46** [1] - 75:10

**5**

**5** [1] - 115:7
**50** [1] - 35:21
**54** [1] - 35:22
**57** [3] - 86:4, 92:17, 92:18

**6**

**66** [3] - 90:5, 90:9, 90:10
**68** [1] - 90:5

**7**

**7** [4] - 15:13, 15:18, 15:23, 15:24

**8**

**8** [3] - 105:6, 105:19, 107:14
**80** [3] - 97:25, 100:8, 104:6
**844** [1] - 1:12
**86** [1] - 109:10

**9**

**9** [1] - 98:19
**90-degree** [1] - 93:22
**94** [1] - 111:20
**96** [1] - 112:23

**A**

**a.m** [1] - 1:10
**able** [1] - 49:16
**abnormal** [1] - 61:12
**absolutely** [1] - 72:2
**accept** [1] - 113:22
**accepting** [1] - 114:8
**according** [6] - 24:7, 37:6, 45:13, 69:24, 72:10, 93:19
**account** [3] - 103:12, 104:22, 107:7
**accurate** [1] - 119:22
**accuse** [1] - 101:24
**accused** [1] - 63:8
**accusing** [1] - 75:14
**Acharya** [2] - 2:24, 85:21
**ACHARYA** [20] - 1:24, 85:21, 85:25, 87:18, 97:8, 97:17, 97:24, 99:5, 99:23, 100:2, 100:8, 100:14, 100:19, 101:4,

101:16, 111:22, 112:1, 114:14, 114:25, 116:3
**acknowledge** [1] - 41:4
**acquire** [2] - 15:6, 15:8
**acquisition** [4] - 12:23, 14:14, 14:16, 14:19
**action** [1] - 16:16
**actions** [2] - 21:22, 89:7
**activity** [1] - 9:10
**actual** [6] - 12:11, 16:21, 78:22, 78:24, 102:5, 104:10
**adapt** [2] - 74:22, 85:5
**add** [2] - 53:2, 54:16
**adding** [1] - 24:18
**additional** [3] - 49:14, 50:12, 54:14
**address** [7] - 41:7, 41:9, 81:13, 88:12, 96:10, 97:5, 101:20
**addresses** [1] - 96:16
**adds** [1] - 6:18
**adjourned** [2] - 119:20, 119:21
**adjust** [3] - 81:21, 82:4, 109:18
**adjusted** [4] - 106:3, 106:15, 106:22, 106:24
**adopt** [5] - 10:14, 13:7, 13:21, 13:25, 14:3
**adopted** [1] - 9:9
**affecting** [1] - 4:3
**afternoon** [1] - 101:19
**ago** [2] - 39:7, 41:23
**agree** [16] - 10:22, 13:12, 17:19, 40:21, 56:7, 57:15, 57:25, 76:8, 76:9, 76:10, 77:14, 85:8, 97:15, 97:22, 102:13, 107:10
**agreeing** [1] - 102:18
**agreement** [3] - 13:8, 39:7, 77:5
**agrees** [2] - 25:11, 84:22
**ahead** [10] - 14:24, 40:22, 74:19, 78:20, 83:1, 83:25, 84:13, 107:17, 113:1
**aim** [1] - 79:1
**aiming** [2] - 81:12, 106:13

**air** [3] - 87:6, 109:18, 110:16
**allow** [1] - 9:14
**almost** [1] - 83:1
**alter** [1] - 31:3
**ambiguity** [6] - 49:15, 86:8, 88:7, 88:18, 89:6, 113:7
**amended** [1] - 80:3
**amount** [2] - 8:12, 8:15
**analyze** [1] - 117:16
**angle** [32] - 112:2, 112:5, 112:6, 112:7, 112:8, 112:9, 112:13, 112:14, 112:15, 112:19, 112:20, 113:5, 113:6, 113:7, 113:8, 113:17, 113:18, 114:1, 114:4, 114:5, 114:6, 114:9, 114:10, 114:11, 114:17, 114:18, 114:19
**angles** [4] - 112:17, 114:16, 114:21, 114:22
**answer** [13] - 6:6, 6:13, 19:20, 19:22, 26:9, 51:21, 69:19, 70:12, 76:21, 78:12, 82:19, 84:21, 102:23
**antecedent** [2] - 86:2, 86:7
**anticipate** [1] - 68:11
**anticipated** [14] - 4:18, 5:15, 6:5, 36:4, 36:5, 44:20, 45:18, 54:2, 63:2, 65:13, 70:4, 79:3, 79:4, 82:20
**anticipating** [2] - 7:5, 54:10
**anticipatory** [1] - 97:13
**anyway** [1] - 40:21
**apart** [1] - 33:10
**apologize** [3] - 80:20, 92:16, 104:4
**appear** [1] - 79:21
**APPEARANCES** [2] - 1:18, 2:1
**applicant** [1] - 80:3
**applies** [1] - 76:5
**appreciate** [2] - 24:3, 119:11
**approach** [4] - 20:17, 28:2, 31:5, 42:4
**approaches** [1] - 29:2
**approaching** [20] -

28:15, 28:24, 29:1,
29:15, 30:4, 30:6,
33:5, 33:9, 34:20,
35:8, 35:14, 36:23,
46:10, 46:13, 46:14,
46:17, 48:1, 48:20,
51:4, 52:18
**approximate** [1] -
34:12
**arc** [6] - 31:1, 32:1,
33:7, 35:13, 35:14
**areas** [1] - 48:22
**argue** [3] - 7:1, 37:23,
91:23
**arguing** [1] - 10:17
**argument** [9] - 11:19,
12:5, 60:6, 63:16,
68:15, 87:21, 97:4,
118:21, 118:25
**arrow** [1] - 43:7
**arrows** [1] - 37:7
**ARSHT** [1] - 1:19
**art** [2] - 68:16, 116:23
**artfully** [1] - 71:19
**assume** [4] - 13:5,
65:8, 70:1, 72:14
**assumption** [1] - 8:16
**asynchronous** [1] -
3:17
**attributes** [3] - 58:11,
64:7
**avoid** [4] - 58:13, 67:9,
96:2, 99:16
**avoided** [1] - 95:15
**avoids** [1] - 96:19

# B

**backward** [2] - 20:9,
116:15
**backwards** [1] - 116:9
**bad** [1] - 60:6
**ball** [5] - 98:9, 98:21,
98:23, 99:17
**based** [29] - 30:18,
32:17, 36:2, 44:19,
52:8, 61:5, 62:15,
63:8, 63:12, 73:7,
73:9, 73:10, 73:11,
73:12, 73:13, 73:20,
74:6, 77:3, 77:8,
77:10, 77:14, 90:20,
98:2, 98:6, 98:14,
101:10, 106:7,
106:24, 109:14
**basic** [1] - 93:25
**basing** [1] - 46:1
**basis** [3] - 86:3, 86:7,
116:2
**become** [1] - 25:8

**BEFORE** [1] - 1:15
**begin** [5] - 21:21,
53:14, 53:22, 77:2,
85:23
**beginning** [45] - 4:5,
5:22, 20:12, 32:12,
53:10, 54:7, 55:4,
55:5, 55:25, 56:4,
56:23, 58:11, 60:10,
60:14, 60:15, 60:19,
60:20, 62:12, 62:14,
64:6, 64:17, 66:23,
67:4, 68:5, 69:25,
70:1, 71:16, 71:17,
71:18, 74:6, 76:2,
76:12, 77:17, 77:20,
77:21, 78:7, 79:11,
80:1, 80:5, 81:6,
82:6, 92:23
**begins** [3] - 15:25,
27:25, 66:18
**begun** [11] - 24:18,
25:3, 27:4, 27:11,
27:20, 27:22, 37:24,
47:11, 49:25, 50:5,
54:19
**behalf** [1] - 3:6
**behind** [1] - 2:24
**below** [1] - 90:12
**best** [2] - 7:19, 32:25
**better** [1] - 28:13
**between** [23] - 11:12,
11:15, 12:9, 13:11,
36:1, 44:18, 50:1,
55:13, 56:4, 59:10,
65:3, 73:4, 74:6,
75:4, 87:20, 90:13,
95:7, 96:7, 96:9,
97:9, 105:21, 112:7,
114:2
**beyond** [1] - 54:15
**big** [2] - 72:18, 72:23
**bigger** [1] - 22:7
**bit** [5] - 10:16, 17:14,
26:25, 108:18,
118:25
**block** [1] - 31:7
**blocking** [3] - 92:7,
92:8, 92:14
**blocks** [2] - 91:9, 92:2
**Blumenfeld** [2] - 2:20,
2:22
**BLUMENFELD** [3] -
1:20, 2:21, 3:4
**body** [6] - 9:14, 46:11,
46:19, 48:21, 112:7,
114:2
**boils** [1] - 93:2
**Boston** [21] - 2:22,
3:1, 10:15, 13:7,

46:20, 49:9, 50:11,
80:2, 85:22, 101:23,
102:11, 103:24,
104:5, 105:8, 107:8,
108:2, 113:19,
113:20, 113:22,
114:8, 117:19
**BOSTON** [1] - 1:3
**bottom** [4] - 28:10,
33:25, 52:20, 93:11
**bound** [1] - 114:21
**boundary** [1] - 96:20
**bounds** [1] - 49:17
**bowling** [4] - 98:9,
98:21, 98:23, 99:17
**Bowman** [1] - 3:1
**brand** [4] - 106:5,
106:18, 110:5, 110:8
**brand-new** [4] - 106:5,
106:18, 110:5, 110:8
**BRIAN** [1] - 1:20
**Brian** [1] - 2:25
**brief** [13] - 5:22, 46:9,
47:24, 48:18, 51:1,
54:1, 80:12, 92:15,
92:16, 92:18, 92:24,
119:6, 119:7
**briefed** [2] - 3:12,
90:23
**briefing** [2] - 13:24,
90:25
**briefly** [4] - 53:3,
88:12, 101:20,
102:24
**bring** [2] - 18:24,
48:24
**bringing** [1] - 99:17
**broad** [1] - 3:18
**broader** [4] - 10:14,
14:10, 15:10, 101:25
**bubbles** [1] - 20:4
**building** [1] - 84:1
**bunch** [3] - 10:24,
36:15, 54:14
**burden** [1] - 88:14
**BY** [9] - 1:20, 1:20,
1:23, 1:23, 1:24, 2:4,
2:6, 2:7, 2:7

# C

**C.A** [1] - 1:5
**cadence** [3] - 57:16,
57:23, 58:5
**calculate** [3] - 106:5,
110:5, 110:7
**calculating** [1] -
109:23
**cannot** [6] - 12:17,
26:8, 33:2, 97:15,

97:22, 100:2
**capture** [2] - 24:9,
108:3
**captured** [2] - 49:23,
71:19
**captures** [1] - 5:23
**care** [8] - 11:13, 22:25,
56:12, 56:14, 62:13,
70:6, 70:7, 76:20
**case** [23] - 13:18, 14:4,
18:14, 18:25, 21:23,
22:7, 23:11, 23:15,
23:19, 30:22, 31:15,
31:23, 33:23, 34:1,
34:13, 35:15, 69:11,
73:19, 99:12, 99:17,
110:1, 119:16
**cases** [4] - 9:18,
60:24, 106:23,
110:20
**catches** [1] - 109:20
**caught** [1] - 26:25
**caused** [2] - 30:19,
32:17
**causes** [10] - 9:21,
98:4, 98:6, 99:1,
100:10, 103:17,
103:18, 104:8,
104:12, 104:20
**causing** [1] - 100:4
**certain** [10] - 8:15,
40:3, 58:16, 61:20,
66:5, 83:18, 83:22,
89:9, 110:17
**certainly** [2] - 58:15,
75:11
**certify** [1] - 119:22
**chain** [1] - 102:9
**chandelier** [1] - 91:22
**change** [32] - 6:17,
19:5, 33:21, 56:6,
66:7, 66:8, 66:21,
66:25, 67:1, 68:3,
69:16, 70:12, 71:9,
74:17, 74:22, 75:3,
80:4, 82:4, 82:6,
82:23, 84:22, 84:23,
85:5, 88:7, 88:19,
89:14, 94:5, 114:4,
114:5, 114:6, 114:18
**changed** [1] - 68:4
**changes** [11] - 42:24,
64:24, 68:8, 74:10,
74:11, 74:14, 81:21,
82:5, 85:4, 93:19,
96:18
**changing** [3] - 5:22,
19:5, 108:9
**characteristics** [1] -
96:14

**chart** [3] - 30:17,
77:22, 92:22
**CHENEY** [1] - 84:21
**CHERNY** [106] - 1:23,
3:15, 3:22, 6:5, 6:15,
7:19, 7:23, 8:10, 9:1,
9:7, 17:13, 17:18,
17:23, 18:4, 18:11,
18:23, 19:4, 19:18,
20:5, 20:8, 20:17,
20:20, 21:4, 21:7,
21:9, 22:9, 22:11,
22:15, 23:2, 23:9,
23:14, 23:18, 23:21,
23:24, 24:3, 24:20,
28:17, 28:20, 28:24,
29:4, 29:7, 29:10,
29:12, 29:16, 29:19,
30:1, 30:4, 30:10,
30:13, 31:12, 33:4,
35:2, 35:23, 36:7,
36:9, 36:13, 38:7,
38:16, 41:17, 41:19,
42:2, 43:2, 50:22,
50:25, 66:2, 66:14,
67:7, 67:11, 67:20,
67:23, 68:21, 69:6,
69:9, 69:14, 70:9,
70:25, 71:5, 71:15,
71:19, 71:23, 72:11,
72:19, 72:23, 73:12,
74:1, 74:3, 74:10,
74:16, 75:2, 77:16,
78:7, 78:11, 80:17,
80:25, 81:8, 81:13,
81:21, 82:3, 82:16,
85:15, 85:19, 118:8,
118:12, 119:5,
119:9, 119:18
**Cherny** [12] - 2:23,
3:14, 38:22, 41:6,
41:15, 43:1, 44:17,
55:22, 59:13, 65:24,
78:4, 86:12
**choose** [1] - 117:18
**chosen** [2] - 44:9,
84:3
**circle** [6] - 20:16, 22:4,
29:13, 29:14, 59:15
**circles** [5] - 28:21,
29:9, 33:22, 59:14,
62:16
**Circuit** [1] - 9:8
**circumstance** [2] -
4:15, 4:16
**cited** [3] - 95:4, 95:8,
96:6
**Claim** [1] - 1:10
**claim** [189] - 4:16,
4:20, 4:21, 4:25,

5:17, 6:2, 10:13, 11:19, 11:21, 12:3, 12:6, 12:24, 13:9, 13:23, 14:18, 15:13, 15:18, 15:23, 15:24, 19:13, 19:20, 20:23, 25:4, 25:7, 26:4, 30:14, 30:15, 30:18, 31:13, 31:22, 32:2, 32:10, 32:20, 33:13, 33:17, 34:1, 35:17, 36:18, 38:11, 43:20, 44:2, 44:4, 44:9, 44:10, 47:7, 51:22, 52:8, 52:14, 52:15, 52:23, 54:4, 54:12, 55:5, 57:21, 60:12, 60:13, 62:3, 64:21, 69:1, 69:5, 69:6, 69:12, 69:24, 70:10, 71:10, 71:24, 72:2, 72:10, 73:9, 73:11, 73:13, 73:15, 73:16, 73:24, 75:19, 77:7, 78:17, 78:19, 79:16, 79:25, 80:4, 80:13, 80:14, 80:16, 80:17, 80:19, 82:12, 82:13, 84:23, 84:25, 86:3, 86:5, 86:8, 86:9, 86:11, 86:12, 86:13, 87:1, 87:9, 87:11, 87:22, 87:24, 88:4, 88:7, 88:17, 89:6, 89:10, 89:12, 89:19, 89:22, 91:3, 91:25, 92:15, 93:4, 94:21, 98:2, 98:3, 98:19, 99:5, 99:6, 100:3, 100:6, 100:7, 100:15, 100:23, 100:25, 101:1, 103:15, 104:3, 104:5, 104:16, 105:12, 105:17, 105:20, 107:11, 107:13, 107:14, 107:15, 107:20, 108:5, 108:16, 109:7, 109:9, 109:25, 112:6, 112:12, 112:13, 112:14, 112:16, 113:3, 113:6, 113:11, 113:15, 113:16, 113:17, 113:19, 113:24, 114:11, 114:15, 114:20, 115:2, 115:5, 115:7, 116:20, 116:21,

117:3, 117:4, 117:6, 117:17, 119:2, 119:3
**claimed** [1] - 15:8
**claiming** [1] - 90:2
**claims** [45] - 4:12, 4:13, 4:14, 5:18, 9:19, 14:16, 14:21, 15:12, 16:16, 17:3, 20:11, 30:16, 36:20, 43:25, 49:22, 49:23, 54:16, 54:22, 61:22, 68:22, 77:4, 77:7, 77:10, 77:15, 79:15, 82:11, 91:11, 91:24, 94:1, 94:11, 97:18, 104:10, 105:6, 105:19, 106:17, 109:21, 112:2, 112:3, 112:9, 112:11, 114:10, 114:14, 114:17, 114:22
**clarification** [5] - 10:14, 49:14, 50:12, 75:9, 79:20
**clarify** [1] - 97:14
**clarity** [2] - 6:16, 95:25
**classifying** [1] - 96:4
**clause** [5] - 15:24, 76:1, 79:14, 104:19
**clear** [21] - 12:6, 19:4, 25:12, 38:3, 38:20, 51:18, 53:17, 71:25, 72:2, 74:1, 74:2, 80:11, 82:11, 88:15, 88:24, 98:16, 98:24, 101:9, 106:20, 114:20
**clearer** [1] - 25:8
**clearly** [7] - 33:12, 47:23, 60:11, 73:10, 112:17, 112:21, 113:13
**clockwise** [4] - 115:14, 116:4, 116:16, 117:11
**closing** [1] - 12:20
**clue** [1] - 14:7
**co** [1] - 24:10
**co-extensive** [1] - 24:10
**code** [1] - 14:18
**coextensive** [8] - 28:10, 30:25, 35:15, 38:9, 43:23, 44:15, 51:3, 52:19
**coincide** [1] - 18:21
**collective** [1] - 44:24
**collectively** [1] - 14:22
**collide** [1] - 105:25

**collision** [2] - 9:21, 9:24
**column** [12] - 35:21, 37:4, 37:15, 37:16, 46:7, 53:10, 53:15, 58:9, 95:4, 95:13, 106:6, 106:21
**coming** [7] - 4:11, 4:22, 6:13, 8:19, 36:23, 72:13, 106:18
**common** [1] - 10:19
**comparing** [3] - 6:23, 8:5, 10:8
**compatible** [1] - 41:2
**complete** [6] - 23:22, 36:5, 44:21, 45:7, 45:12, 45:13
**completed** [3] - 42:11, 44:25, 45:10
**completing** [3] - 25:6, 30:23, 31:8
**comply** [1] - 21:25
**component** [1] - 54:18
**components** [1] - 90:14
**comport** [2] - 104:15
**comports** [1] - 102:10
**comprises** [9] - 15:14, 16:1, 16:5, 44:3, 54:7, 72:15, 72:21, 76:11, 80:5
**comprising** [5] - 32:12, 51:24, 51:25, 76:2, 80:24
**compromise** [4] - 11:10, 13:22, 92:17, 94:16
**compute** [1] - 45:17
**concept** [4] - 54:16, 54:17, 54:18, 63:13
**concern** [1] - 10:13
**concerns** [3] - 91:6, 95:13, 118:22
**conclusion** [1] - 10:9
**concrete** [1] - 12:11
**condition** [33] - 17:17, 18:2, 39:3, 40:19, 93:4, 97:9, 97:11, 98:1, 98:4, 98:7, 98:14, 99:8, 99:10, 99:11, 100:9, 100:20, 100:21, 101:2, 101:10, 102:2, 102:13, 102:17, 102:18, 103:2, 103:16, 103:19, 103:20, 103:21, 104:8, 104:13, 104:21, 104:23

**conditions** [3] - 21:25, 25:17, 25:25
**confident** [1] - 3:22
**confidential** [1] - 12:15
**configurations** [1] - 106:21
**confused** [3] - 75:1, 76:7, 104:7
**confusing** [1] - 19:14
**confusion** [1] - 10:16
**connected** [2] - 88:22, 89:14
**connection** [1] - 6:1
**considering** [1] - 103:11
**consistent** [4] - 49:24, 53:9, 99:24, 118:20
**consistently** [1] - 46:4
**constantly** [1] - 56:5
**constrains** [1] - 61:5
**Construction** [1] - 1:10
**construction** [67] - 10:17, 13:8, 13:21, 13:24, 14:3, 14:5, 16:3, 18:8, 19:12, 22:3, 24:22, 27:7, 41:23, 46:20, 49:9, 49:13, 50:7, 51:11, 51:16, 54:14, 55:6, 55:7, 55:24, 55:20, 75:22, 76:3, 77:23, 77:25, 78:3, 78:5, 79:13, 84:19, 90:25, 91:2, 91:9, 91:20, 92:4, 92:15, 93:25, 94:17, 94:19, 94:23, 95:10, 101:21, 102:10, 102:12, 103:10, 103:11, 103:13, 103:23, 103:25, 104:11, 104:15, 104:22, 105:1, 105:8, 107:5, 107:6, 107:8, 107:18, 108:2, 108:17, 109:16, 113:20, 113:23, 114:8, 117:19
**constructions** [2] - 92:20, 118:4
**construe** [8] - 4:2, 6:1, 11:21, 19:19, 28:14, 64:16, 71:21, 84:24
**construed** [4] - 6:18, 72:1, 76:14, 95:2
**construing** [2] - 12:6, 14:23
**contact** [45] - 16:2,

16:6, 16:9, 18:9, 24:17, 25:16, 25:20, 25:23, 26:9, 26:11, 26:23, 27:18, 28:5, 34:22, 35:10, 37:22, 38:2, 38:4, 40:23, 42:13, 42:16, 42:17, 43:9, 45:18, 47:7, 47:10, 47:22, 48:14, 49:4, 49:6, 49:8, 50:3, 50:4, 50:8, 51:7, 51:10, 68:24, 105:19, 110:9, 110:15, 110:17, 110:18, 111:9, 111:10, 111:17
**contacted** [6] - 5:3, 32:15, 32:21, 86:1, 86:24, 87:3
**contacts** [1] - 42:14
**contemplated** [1] - 26:18
**contemplates** [1] - 102:5
**contending** [1] - 115:1
**contends** [1] - 112:1
**context** [13] - 3:19, 19:22, 39:19, 44:4, 77:3, 77:6, 77:7, 77:9, 78:2, 79:12, 79:20, 95:3, 96:9
**contiguous** [1] - 33:4
**continue** [3] - 99:18, 101:12, 110:19
**CONTINUED** [1] - 2:1
**continues** [2] - 90:9, 102:8
**continuous** [1] - 33:2
**contradicts** [1] - 54:24
**contralateral** [3] - 86:19, 106:9, 110:1
**contrast** [1] - 95:7
**control** [1] - 74:16
**controlling** [1] - 48:23
**convince** [1] - 11:6
**convincing** [2] - 88:15, 88:16
**coordinate** [2] - 86:15, 86:16
**coordinated** [1] - 86:20
**coordination** [1] - 86:18
**copy** [2] - 8:13
**cores** [1] - 38:18
**CORPORATION** [1] - 1:6
**correct** [13] - 17:18, 18:4, 21:4, 23:14, 23:24, 31:12, 50:16,

53:5, 91:5, 97:17,
97:24
**correctly** [1] - 79:7
**correspond** [2] - 35:8,
47:24
**corresponding** [1] -
98:18
**corresponds** [4] -
4:20, 30:16, 32:10,
48:19
**Counsel** [2] - 1:25, 2:9
**counsel** [3] - 2:23,
53:6, 96:11
**counterclockwise** [9]
- 115:11, 115:13,
115:16, 115:22,
115:25, 116:7,
116:13, 116:16,
117:9
**course** [6] - 28:4,
36:21, 48:17, 78:10,
83:17, 85:8
**COURT** [267] - 1:1,
2:18, 3:3, 3:9, 3:20,
5:25, 6:10, 7:18,
7:20, 8:6, 8:25, 9:5,
10:11, 10:20, 11:11,
11:17, 11:25, 12:4,
12:16, 13:1, 13:4,
13:10, 13:17, 13:20,
13:25, 14:6, 14:10,
14:15, 14:23, 15:15,
15:19, 16:8, 16:12,
17:7, 17:10, 17:14,
17:19, 18:1, 18:5,
18:22, 19:3, 19:11,
20:3, 20:7, 20:15,
20:19, 21:2, 21:5,
21:8, 22:2, 22:10,
22:13, 22:22, 23:7,
23:11, 23:15, 23:19,
23:22, 23:25, 24:16,
28:12, 28:18, 28:21,
28:25, 29:5, 29:8,
29:11, 29:13, 29:17,
29:21, 30:3, 30:9,
30:12, 31:10, 32:25,
35:1, 35:21, 35:24,
36:8, 36:10, 38:3,
38:14, 39:2, 39:9,
39:12, 39:17, 40:4,
40:6, 40:8, 40:11,
40:20, 41:9, 41:12,
41:15, 42:5, 42:15,
42:19, 42:23, 43:4,
43:9, 44:6, 44:11,
44:16, 45:1, 45:6,
45:11, 45:22, 47:12,
47:16, 50:21, 50:24,
53:1, 53:4, 53:19,

53:23, 55:1, 55:16,
56:8, 56:12, 56:22,
57:3, 57:12, 57:19,
57:22, 58:2, 58:4,
58:17, 59:1, 59:7,
59:11, 59:23, 60:4,
61:9, 61:25, 62:10,
62:24, 63:3, 63:15,
63:18, 63:25, 64:3,
64:9, 65:5, 65:15,
65:18, 65:21, 65:23,
66:12, 67:2, 67:8,
67:13, 67:21, 68:12,
69:5, 69:8, 69:11,
70:6, 70:22, 71:2,
71:12, 71:16, 71:21,
72:9, 72:13, 72:20,
73:9, 73:22, 74:2,
74:8, 74:11, 74:25,
75:7, 75:12, 76:6,
76:20, 76:25, 77:6,
77:11, 77:14, 77:19,
77:4, 78:10, 78:20,
80:11, 80:16, 80:19,
81:5, 81:11, 81:18,
82:1, 82:14, 82:25,
83:5, 83:15, 84:19,
85:14, 85:16, 85:20,
85:24, 87:15, 88:10,
88:14, 89:4, 89:11,
90:3, 90:10, 90:15,
91:4, 91:13, 91:18,
92:2, 92:8, 92:11,
92:14, 92:19, 92:23,
94:12, 97:6, 97:14,
97:19, 99:3, 99:20,
100:1, 100:6,
100:11, 100:17,
100:22, 101:14,
101:17, 102:13,
102:16, 102:21,
102:25, 104:3,
104:7, 104:17,
105:3, 105:14,
107:3, 107:13,
107:16, 108:8,
108:24, 109:2,
109:9, 109:12,
109:14, 110:11,
110:23, 111:7,
111:19, 111:21,
111:24, 112:24,
113:11, 113:24,
114:13, 114:23,
116:2, 116:17,
116:22, 117:23,
118:11, 118:14,
119:8, 119:11,
119:14
**court** [1] - 119:19
**Court** [14] - 1:15, 2:16,

3:15, 7:24, 18:23,
19:21, 24:3, 75:17,
97:4, 109:1, 117:22,
119:21, 119:24,
119:25
**Court's** [1] - 81:23
**courtroom** [1] - 12:21
**COURTROOM** [2] -
2:15, 119:19
**cover** [1] - 109:22
**covered** [1] - 53:25
**covering** [1] - 92:4
**covers** [1] - 109:7
**crap** [1] - 59:7
**crawling** [1] - 83:20
**creates** [1] - 117:11
**creating** [2] - 99:11,
110:21
**criteria** [1] - 18:12
**crux** [1] - 76:14
**current** [1] - 9:16
**curve** [1] - 57:24
**cut** [1] - 99:21
**cycle** [1] - 5:9

# D

**Dale** [1] - 119:24
**dance** [1] - 55:20
**data** [11] - 6:21, 6:23,
8:4, 8:19, 9:24, 10:8,
12:23, 14:13, 16:20,
90:21
**Daubert** [1] - 11:2
**days** [1] - 118:6
**deal** [5] - 4:8, 4:12,
4:14, 11:1, 97:18
**dealing** [4] - 3:24, 4:7,
96:3, 97:11
**deals** [1] - 4:16
**decide** [1] - 107:24
**decision** [2] - 61:8,
63:12
**decisions** [1] - 63:8
**declaration** [1] - 90:8
**decline** [10] - 5:16,
9:2, 21:13, 21:20,
25:22, 26:3, 28:7,
31:18, 73:5, 73:20
**DECOSTA** [4] - 2:6,
94:14, 111:20,
119:13
**DeCosta** [1] - 3:7
**DEEPA** [1] - 1:24
**Deepa** [2] - 2:24,
85:21
**default** [1] - 96:16
**Defendant** [2] - 1:7,
2:9
**defendant** [1] - 3:6

**defendant's** [1] -
118:22
**define** [7] - 25:17,
28:6, 39:3, 55:11,
112:4, 114:16,
114:22
**defined** [13] - 18:12,
21:11, 26:11, 27:2,
39:20, 60:25, 69:25,
78:14, 103:5, 103:7,
112:11, 112:17,
114:3
**defines** [6] - 102:16,
103:2, 103:18,
104:13, 104:20,
114:17
**defining** [1] - 60:8
**definitely** [1] - 36:18
**definition** [6] - 26:24,
40:25, 101:25,
102:11, 114:20
**definitional** [1] - 93:6
**definitions** [2] - 79:5,
102:9
**degree** [1] - 22:6
**DELAWARE** [1] - 1:1
**Delaware** [2] - 1:12,
2:16
**departed** [1] - 85:13
**departing** [1] - 84:18
**departs** [2] - 9:4,
84:10
**dependent** [2] - 86:5,
105:19
**DEPUTY** [2] - 2:15,
119:19
**descending** [1] -
31:20
**described** [2] - 7:13,
26:14
**describes** [3] - 41:24,
53:12, 54:5
**describing** [5] - 27:9,
53:7, 53:8, 53:17
**description** [5] -
37:10, 53:11, 53:14,
95:5, 96:11
**desired** [3] - 47:24,
48:1, 48:7
**destination** [1] - 55:12
**detail** [1] - 95:8
**detect** [11] - 9:13,
10:25, 12:12, 12:13,
13:1, 30:17, 30:24,
31:2, 32:14, 98:3,
104:23
**detected** [10] - 7:12,
7:25, 30:18, 32:17,
102:4, 103:8,
103:22, 104:15,

106:7
**detecter** [1] - 106:7
**detecting** [33] - 5:20,
6:20, 6:24, 7:7, 7:14,
7:16, 8:2, 8:22, 9:8,
9:18, 9:19, 9:23,
10:2, 10:3, 10:19,
10:22, 13:3, 13:5,
15:5, 15:13, 15:14,
15:25, 16:1, 17:5,
31:14, 32:20, 52:8,
68:23, 85:25, 100:9,
103:16
**detection** [4] - 16:5,
16:7, 16:19, 16:21
**detector** [2] - 99:25,
102:4
**detects** [8] - 5:2, 9:25,
35:9, 49:4, 50:14,
51:10, 83:8, 98:10
**determine** [13] - 9:14,
13:5, 17:16, 32:12,
36:4, 44:20, 45:6,
66:14, 66:16, 67:25,
69:15, 70:13, 84:24
**determined** [19] -
27:3, 27:15, 27:16,
36:2, 37:18, 37:19,
38:1, 44:19, 46:11,
46:18, 48:9, 48:10,
48:20, 49:7, 49:8,
51:24, 58:12, 67:24,
72:3
**determines** [1] - 85:12
**determining** [20] -
5:20, 5:21, 6:4, 7:3,
11:12, 11:15, 12:9,
13:6, 14:8, 15:1,
15:11, 16:4, 16:5,
16:9, 16:12, 16:13,
17:2, 17:4, 106:24,
117:6
**detracts** [1] - 6:19
**development** [1] -
58:4
**diagram** [1] - 26:14
**dictionary** [1] - 79:5
**differ** [2] - 8:11, 8:15
**difference** [7] - 11:12,
11:14, 11:16, 13:10,
55:13, 78:3, 90:13
**differences** [1] - 83:8
**different** [69] - 7:16,
9:20, 10:5, 14:7,
17:6, 18:12, 21:21,
21:22, 26:1, 26:15,
26:21, 27:23, 27:24,
28:6, 28:8, 36:15,
37:11, 38:8, 39:20,
44:9, 44:11, 45:24,

46:5, 46:6, 46:17,
46:22, 47:19, 47:20,
48:5, 49:1, 49:22,
52:11, 61:12, 62:18,
66:6, 67:16, 67:17,
69:19, 69:20, 70:18,
71:24, 72:6, 72:7,
72:25, 74:15, 83:9,
89:6, 89:7, 89:8,
89:12, 90:14, 95:9,
106:17, 106:18,
113:11, 113:15,
114:9, 114:19,
115:15, 116:20,
117:7, 119:1

**differently** [3] - 59:9,
96:23, 97:3
**direct** [2] - 7:11, 10:6
**directed** [1] - 48:4
**direction** [3] - 61:20,
115:14, 115:15
**directional** [1] - 54:18
**disagree** [4] - 56:3,
57:1, 60:5, 71:7
**disagreeing** [2] - 74:4,
74:6
**disagrees** [1] - 54:24
**disclosed** [2] - 89:2,
89:15
**discovery** [4] - 13:17,
76:18, 77:13, 83:11
**discussed** [1] - 50:7
**discussing** [1] - 98:20
**discussion** [4] -
63:23, 78:23, 81:4,
87:20
**dispositive** [1] -
119:17
**dispute** [15] - 11:19,
63:13, 76:7, 76:14,
76:15, 77:7, 81:7,
81:8, 91:6, 93:2,
94:25, 95:21, 97:9,
105:11, 107:5
**disputed** [1] - 81:9
**disputes** [2] - 38:18,
90:22
**disputing** [4] - 81:1,
81:2, 81:4, 91:1
**disrupted** [1] - 33:16
**distal** [7] - 101:11,
105:24, 106:9,
106:14, 108:7,
108:9, 109:16
**distance** [1] - 110:18
**distinct** [3] - 44:4,
48:5, 48:25
**distinction** [5] - 96:7,
96:9, 101:22,
102:20, 103:9

**distinguishes** [5] -
95:18, 106:2, 106:4,
106:12, 110:21
**DISTRICT** [2] - 1:1, 1:1
**District** [4] - 1:15,
2:15, 2:16, 119:25
**disturb** [1] - 4:19
**disturbance** [40] -
4:17, 4:18, 4:22,
4:25, 7:14, 9:20,
9:21, 10:3, 10:4,
15:13, 15:25, 16:5,
16:19, 16:21, 16:22,
25:7, 30:17, 30:18,
30:22, 30:24, 31:2,
31:6, 31:14, 32:6,
35:18, 36:18, 38:20,
39:1, 46:25, 47:1,
47:4, 50:14, 52:9,
52:13, 52:24, 53:9,
73:6, 73:15, 84:6
**disturbances** [8] -
3:17, 4:9, 10:5,
18:20, 53:14, 53:16,
78:24, 84:17
**disturbed** [7] - 31:3,
31:25, 33:15, 33:18,
33:21, 38:10, 52:2
**disturbing** [1] - 4:3
**disturbs** [1] - 35:18
**dog** [7] - 12:12, 29:23,
72:17, 83:6, 83:22,
83:25
**done** [7] - 6:13, 10:10,
36:11, 37:11, 68:9,
83:11, 107:8
**dotted** [2] - 21:3,
43:17
**double** [1] - 118:24
**down** [163] - 4:6, 4:25,
24:8, 24:18, 25:3,
25:6, 27:4, 27:11,
27:16, 27:20, 27:22,
27:25, 28:4, 28:9,
28:14, 28:16, 28:22,
29:18, 29:20, 29:25,
30:3, 30:6, 30:15,
30:19, 30:23, 30:25,
31:9, 31:11, 31:16,
31:18, 32:1, 32:7,
32:8, 32:23, 33:1,
33:9, 33:10, 33:12,
33:13, 33:16, 33:24,
33:25, 34:3, 34:7,
34:16, 34:17, 34:18,
34:19, 35:7, 35:9,
35:14, 35:20, 36:6,
36:20, 37:19, 37:20,
37:24, 38:1, 38:6,
38:7, 38:9, 38:19,

39:25, 40:14, 40:24,
41:1, 42:9, 42:10,
43:22, 44:1, 44:3,
44:21, 45:8, 45:13,
45:21, 46:8, 46:16,
46:25, 47:1, 47:4,
47:11, 47:25, 48:10,
48:17, 48:24, 49:3,
49:20, 50:5, 50:6,
50:13, 50:15, 51:3,
51:9, 51:12, 51:14,
51:23, 52:10, 52:12,
52:14, 52:16, 52:17,
52:18, 52:21, 52:24,
54:20, 75:5, 81:10,
82:13, 87:2, 88:6,
90:23, 91:11, 91:22,
93:2, 100:12, 101:6,
105:6, 105:9,
105:10, 105:12,
105:22, 105:25,
106:6, 106:13,
107:12, 107:21,
107:22, 107:23,
108:1, 108:4, 108:6,
108:9, 108:12,
108:13, 108:14,
108:15, 108:21,
109:5, 109:6,
109:15, 109:17,
109:18, 109:19,
110:22, 110:24,
110:25, 111:1,
111:3, 111:5, 111:6,
111:11, 111:12,
111:13, 111:17,
111:18, 113:21,
116:25
**downhill** [4] - 18:15,
20:4, 22:5, 23:16
**downstairs** [1] - 93:13
**drag** [1] - 108:13
**drawn** [1] - 43:10
**DUNNER** [1] - 2:6
**during** [4] - 13:23,
21:22, 27:13, 37:16,
54:6, 67:24, 74:18,
75:25, 76:10, 76:11,
77:13, 80:6, 95:15,
118:9
**DYNAMICS** [1] - 1:3
**Dynamics** [9] - 2:23,
3:2, 10:15, 80:2,
85:22, 101:23,
104:5, 105:8, 113:20
**Dynamics'** [12] - 13:7,
46:20, 49:9, 50:11,
102:11, 103:24,
107:8, 108:2,
113:19, 113:22,

114:8, 117:19

# E

**early** [7] - 19:1, 20:5,
20:6, 43:22, 50:4,
86:14, 86:22
**easiest** [1] - 12:10
**effectuate** [3] - 115:6,
115:22, 116:8
**Egan** [1] - 2:25
**EGAN** [1] - 1:20
**either** [11] - 18:13,
21:12, 25:24, 38:1,
38:9, 48:13, 48:24,
51:17, 73:19,
109:17, 110:15
**element** [2] - 60:12,
62:2
**elevate** [2] - 98:7,
101:10
**Emanuel** [2] - 2:24,
2:25
**EMANUEL** [1] - 1:22
**embodiment** [2] -
25:4, 28:6
**embodiments** [1] -
49:23
**emphasize** [1] - 66:10
**encounter** [1] - 63:10
**encounters** [3] -
43:20, 93:18, 93:21
**end** [125] - 5:4, 5:9,
18:13, 18:16, 19:24,
20:12, 21:1, 21:13,
21:16, 21:18, 21:21,
22:1, 22:18, 23:25,
25:14, 25:15, 25:20,
25:23, 26:17, 27:17,
27:21, 28:3, 28:11,
29:14, 30:20, 31:1,
31:16, 32:16, 34:4,
34:15, 35:3, 35:4,
35:5, 35:6, 35:9,
35:11, 35:16, 36:19,
36:24, 37:3, 37:8,
37:20, 37:21, 38:1,
38:8, 41:21, 41:25,
42:6, 42:8, 42:10,
42:25, 43:5, 43:6,
43:11, 43:19, 45:2,
45:5, 47:10, 48:12,
48:13, 49:3, 49:5,
49:6, 51:6, 51:9,
51:14, 51:15, 52:10,
54:7, 54:19, 55:4,
55:5, 55:6, 55:15,
55:25, 56:4, 56:11,
56:23, 56:25, 58:11,
59:5, 60:10, 60:15,

60:16, 60:19, 60:21,
62:12, 62:13, 62:14,
64:7, 64:17, 66:23,
67:5, 68:5, 69:25,
70:1, 70:3, 70:5,
71:16, 71:17, 74:7,
76:2, 76:12, 77:2,
77:17, 77:20, 77:21,
78:18, 80:1, 82:6,
85:7, 101:11,
105:24, 106:9,
106:14, 108:7,
109:16, 115:8, 115:9
**ended** [3] - 18:19,
21:15, 50:1
**ending** [5] - 18:12,
78:8, 79:12, 80:5,
81:6
**endpoints** [2] - 21:11,
26:11
**ends** [14] - 18:17,
19:24, 19:25, 21:12,
22:11, 24:13, 25:5,
25:18, 25:24, 43:22,
54:11, 55:19, 66:18
**English** [2] - 10:19,
24:5
**ensure** [1] - 87:4
**ensuring** [1] - 87:11
**enter** [5] - 30:19,
30:25, 34:3, 52:10,
52:13
**entire** [3] - 21:6, 76:4,
82:18
**entirely** [1] - 45:24,
106:22
**entirety** [5] - 23:4,
23:5, 24:13, 30:5,
82:20
**environment** [3] -
56:6, 111:9, 111:10
**ergo** [1] - 45:2
**especially** [3] - 26:19,
112:16, 112:20
**ESQ** [9] - 1:20, 1:20,
1:23, 1:23, 1:24, 2:4,
2:6, 2:7, 2:7
**essentially** [14] - 4:10,
5:15, 7:8, 52:1, 66:6,
68:7, 68:8, 68:9,
73:17, 73:21, 74:21,
81:16, 82:8, 85:6
**established** [3] -
69:21, 71:9, 72:6
**estimate** [1] - 8:11
**estimates** [1] - 8:15
**evaluates** [1] - 117:20
**everywhere** [1] - 15:4
**evidence** [5] - 9:4,
32:25, 63:19, 88:15,

88:16
**exact** [1] - 61:3
**exactly** [14] - 19:24,
35:16, 38:13, 43:20,
51:2, 65:17, 70:9,
72:23, 75:5, 89:11,
91:17, 109:21, 110:6
**examiner** [1] - 80:7
**example** [35] - 4:4,
5:10, 5:14, 6:22, 8:1,
8:11, 8:21, 9:11,
9:12, 12:11, 15:12,
18:15, 20:9, 34:10,
36:10, 37:6, 39:22,
48:16, 53:12, 53:13,
61:19, 63:10, 66:15,
73:5, 89:13, 93:13,
95:4, 95:11, 95:12,
98:17, 99:10,
100:24, 101:5, 102:6
**examples** [10] - 4:12,
5:1, 5:17, 6:9, 7:4,
10:5, 32:11, 61:17,
100:1, 106:7
**excerpted** [1] - 31:23
**exclude** [2] - 40:23,
94:9
**excluded** [2] - 91:18,
91:19
**excluding** [1] - 41:1
**exemplary** [2] - 26:15,
51:20
**Exhibit** [4] - 79:6,
79:24, 90:5, 90:8
**exist** [3] - 13:6, 95:24,
108:23
**existence** [9] - 5:21,
7:3, 14:8, 15:1,
15:11, 16:4, 16:6,
16:12, 45:2
**exits** [1] - 4:24
**expect** [2] - 59:5, 63:9
**expected** [4] - 4:11,
31:18, 65:13, 73:7
**expecting** [1] - 49:12
**expert** [10] - 10:24,
13:17, 19:1, 76:18,
77:13, 83:11, 85:17,
90:3, 90:4, 118:14
**experts** [8] - 13:8,
13:12, 13:14, 14:4,
19:2, 71:22, 118:13
**explain** [9] - 5:25,
24:21, 41:5, 57:14,
60:22, 86:9, 101:4,
102:24, 108:18
**explaining** [3] - 45:16,
95:7, 97:20
**explains** [2] - 46:5,
90:12

**explanation** [1] -
49:18
**explicitly** [1] - 44:2
**express** [1] - 93:6
**expressly** [1] - 54:16
**extensive** [1] - 24:10
**extent** [2] - 88:25,
89:20

## F

**face** [1] - 113:3
**fact** [10] - 26:18, 37:1,
43:25, 44:8, 44:15,
46:1, 46:3, 46:4,
81:3, 109:5
**fall** [2] - 26:4, 91:24
**far** [1] - 68:4
**FARABOW** [1] - 2:6
**Farnan** [1] - 75:15
**fast** [4] - 7:24, 9:2,
15:19, 34:8
**features** [4] - 94:9,
95:18, 95:19, 96:8
**Federal** [1] - 9:8
**feet** [9] - 86:11, 86:15,
86:19, 88:21, 88:25,
89:7
**Feliciello** [1] - 3:8
**FELICIELLO** [19] -
2:7, 101:19, 102:15,
102:20, 102:23,
103:4, 104:4,
104:11, 104:19,
107:4, 107:14,
107:18, 108:11,
108:25, 113:2,
113:16, 114:7,
116:19, 117:1
**few** [3] - 3:18, 39:7,
47:18
**figure** [5] - 16:20,
36:10, 41:3, 100:18,
118:6
**Figure** [33] - 26:13,
27:2, 27:9, 28:6,
30:17, 34:2, 35:24,
36:2, 37:5, 37:15,
37:22, 38:20, 38:23,
40:1, 41:5, 41:22,
42:1, 42:24, 43:10,
43:15, 44:17, 44:19,
46:14, 47:3, 47:4,
48:3, 50:14, 53:7,
53:11, 53:17, 79:10,
98:18, 115:19
**figures** [1] - 7:9
**figuring** [4] - 7:13,
7:17, 9:22, 10:3
**final** [1] - 94:25

**finally** [1] - 50:6
**fine** [7] - 37:1, 57:6,
58:23, 65:12, 78:20,
84:11, 97:22
**finish** [2] - 45:25,
96:10
**finished** [4] - 34:23,
45:25, 50:9
**FINNEGAN** [1] - 2:6
**Fiorillo** [1] - 3:1
**first** [56] - 3:1, 5:3,
5:20, 9:3, 15:7,
17:15, 17:24, 19:18,
20:9, 22:11, 22:13,
24:1, 24:22, 32:15,
32:21, 34:12, 36:5,
41:9, 41:12, 41:19,
41:20, 44:20, 48:6,
49:10, 51:25, 54:7,
54:19, 61:6, 64:6,
68:24, 68:25, 69:2,
69:15, 69:16, 75:25,
76:2, 76:10, 76:12,
77:2, 79:18, 79:21,
80:5, 80:8, 81:2,
82:12, 83:6, 84:23,
86:13, 86:18, 86:21,
87:5, 89:18, 89:20,
112:13, 113:5
**five** [11] - 4:5, 5:10,
5:11, 56:13, 57:5,
66:18, 68:5, 85:12,
99:21, 118:23, 119:6
**fix** [3] - 89:1, 89:5,
92:19
**fixed** [1] - 86:7
**flat** [5] - 3:25, 18:19,
21:24, 23:11, 25:19
**flow** [1] - 30:17
**focused** [3] - 35:25,
36:25, 119:3
**focusing** [3] - 25:4,
26:13, 27:24
**folks** [1] - 87:17
**follow** [9] - 15:21,
21:5, 27:14, 37:17,
37:18, 47:15, 61:4,
68:8, 69:12
**follow-up** [1] - 47:15
**followed** [1] - 57:24
**following** [6] - 27:2,
27:15, 29:3, 42:22,
84:5, 89:21
**follows** [4] - 37:25,
48:9, 48:10, 56:7
**foot** [163] - 5:3, 7:4,
8:1, 8:3, 8:17, 16:2,
16:6, 16:9, 18:8,
23:6, 24:5, 24:7,
24:14, 24:25, 25:15,

26:22, 27:2, 27:4,
27:10, 27:13, 27:17,
27:19, 28:15, 28:23,
28:25, 29:1, 29:9,
29:11, 29:14, 29:24,
30:1, 30:19, 31:7,
31:10, 31:16, 31:25,
32:8, 32:15, 32:18,
32:21, 33:7, 34:4,
34:12, 34:20, 34:22,
35:8, 35:10, 36:5,
37:20, 37:24, 38:25,
41:20, 41:25, 43:6,
44:21, 45:7, 46:10,
47:22, 47:24, 48:1,
48:8, 48:11, 48:12,
48:23, 49:4, 49:6,
49:10, 49:11, 50:8,
51:6, 51:10, 51:25,
52:9, 52:10, 52:18,
54:19, 55:9, 55:17,
55:18, 55:19, 55:24,
56:2, 56:4, 56:7,
56:13, 56:17, 56:18,
56:23, 56:24, 57:7,
59:4, 59:5, 60:18,
61:1, 61:4, 61:14,
61:24, 62:11, 62:15,
64:16, 64:18, 64:19,
64:24, 65:1, 65:15,
65:16, 65:18, 66:20,
68:24, 71:3, 71:13,
72:21, 74:8, 75:5,
75:25, 76:10, 77:19,
78:23, 79:10, 81:24,
85:11, 86:13, 86:21,
86:22, 86:23, 87:2,
87:5, 87:6, 87:23,
87:25, 88:1, 88:5,
88:23, 88:24, 89:2,
89:15, 89:16, 89:17,
89:18, 89:21, 90:1,
90:13, 100:12,
107:11, 107:21,
108:12, 108:14,
109:24, 110:24,
110:25, 111:4,
115:8, 115:9
**foot's** [2] - 48:19,
74:19
**FOR** [1] - 1:1
**foregoing** [1] - 119:22
**forth** [2] - 112:20,
113:9
**forward** [32] - 5:8, 9:7,
18:9, 25:11, 25:14,
27:13, 27:16, 36:6,
37:16, 40:13, 41:24,
41:25, 43:5, 44:21,
45:7, 45:14, 45:21,

46:15, 48:8, 48:12,
49:2, 51:15, 54:17,
78:12, 79:11, 81:9,
82:15, 82:17, 82:19,
102:8, 116:15
**four** [5] - 37:11, 66:4,
86:10, 86:11, 86:15
**fourth** [13] - 86:20,
86:23, 86:25, 112:2,
112:5, 112:8,
112:14, 112:16,
112:18, 113:6,
113:9, 113:18,
114:19
**Frank** [1] - 3:7
**FRANK** [1] - 2:6
**freely** [1] - 42:5
**front** [4] - 4:12, 5:1,
80:7, 114:11
**frustration** [1] - 81:23
**fulfilled** [1] - 65:1
**full** [1] - 79:12
**functionality** [1] -
106:16
**funny** [1] - 8:9
**future** [1] - 11:8

## G

**gait** [111] - 3:17, 3:25,
4:1, 4:2, 4:3, 4:19,
5:8, 15:13, 15:25,
20:2, 20:13, 20:22,
30:17, 31:3, 31:4,
31:15, 31:24, 32:12,
32:13, 33:15, 33:16,
33:18, 33:22, 35:12,
35:18, 37:6, 38:10,
38:23, 38:24, 40:2,
42:8, 44:2, 45:19,
49:1, 50:15, 51:25,
52:2, 52:9, 53:12,
53:13, 53:18, 66:3,
66:8, 66:15, 66:16,
66:21, 67:24, 68:2,
68:3, 69:14, 69:15,
69:17, 69:19, 69:20,
69:21, 69:22, 69:23,
70:11, 70:15, 70:17,
70:18, 71:9, 72:3,
72:5, 72:6, 72:7,
72:9, 72:11, 72:14,
72:15, 72:16, 72:25,
73:17, 73:18, 74:10,
74:11, 74:12, 74:13,
74:17, 74:22, 81:21,
81:24, 82:5, 82:21,
82:22, 82:23, 83:7,
83:17, 83:18, 84:2,
84:4, 84:9, 84:22,

84:25, 85:2, 85:3, 85:4, 89:22
**gaits** [3] - 72:7, 74:18, 118:17
**gallops** [1] - 66:16
**GARRETT** [1] - 2:6
**generally** [3] - 3:13, 18:1, 54:2
**generates** [2] - 81:16, 106:8
**generic** [1] - 96:24
**GHOST** [1] - 1:6
**Ghost** [10] - 3:6, 5:21, 6:7, 12:22, 87:20, 90:25, 91:23, 99:10, 112:1, 115:1
**Ghost's** [17] - 54:13, 76:3, 91:9, 94:17, 102:10, 103:10, 103:11, 103:23, 104:11, 104:15, 104:22, 105:1, 105:9, 107:5, 107:6, 107:18, 108:17
**given** [2] - 13:3, 85:18
**goal** [1] - 79:1
**graphic** [1] - 28:8
**graphical** [2] - 37:10, 66:10
**graphically** [1] - 22:17
**graphics** [1] - 93:14
**gravitational** [1] - 26:5
**greater** [2] - 8:12, 8:15
**green** [1] - 48:14
**ground** [131] - 5:4, 5:8, 5:12, 5:16, 7:4, 16:2, 16:7, 16:10, 18:9, 18:10, 18:14, 18:18, 20:25, 21:18, 21:23, 22:1, 22:16, 22:19, 24:17, 25:16, 25:21, 25:22, 25:24, 26:2, 26:8, 26:12, 26:18, 26:20, 26:23, 27:18, 27:21, 28:5, 28:11, 28:15, 29:1, 29:2, 29:15, 29:24, 30:2, 30:4, 30:6, 31:21, 32:15, 32:18, 32:22, 33:5, 33:9, 33:20, 33:22, 34:12, 34:14, 34:21, 34:23, 34:24, 34:25, 35:5, 35:8, 35:10, 35:15, 35:16, 36:19, 36:23, 37:4, 37:8, 37:22, 38:2, 38:4, 38:6, 40:24, 42:12, 42:14, 42:16, 42:17, 42:20, 43:9, 43:13, 43:14, 43:16,

45:18, 46:10, 46:13, 46:15, 46:18, 47:6, 47:7, 47:10, 47:22, 48:1, 48:7, 48:14, 48:20, 48:24, 48:25, 49:4, 49:6, 50:3, 50:4, 50:9, 50:10, 51:4, 51:7, 51:10, 51:13, 51:16, 51:17, 52:19, 52:21, 63:11, 68:8, 71:10, 73:2, 73:6, 73:19, 86:2, 86:14, 86:17, 86:21, 86:24, 87:3, 87:5, 87:7, 87:8, 87:12, 88:1, 110:12, 110:15, 111:5, 115:21
**guess** [3] - 29:4, 62:13, 104:7
**guidance** [1] - 113:4
**guided** [1] - 82:10
**guys** [9] - 19:11, 77:14, 80:12, 83:10, 85:16, 117:25, 118:5, 118:23, 119:12

---
### H
---

**half** [9] - 15:23, 20:16, 22:3, 29:9, 29:13, 29:14, 33:22, 62:16, 111:24
**hall** [1] - 57:8
**hand** [8] - 49:19, 57:5, 102:6, 102:7, 115:17, 115:23, 116:1, 116:12
**handling** [2] - 3:17, 53:13
**hanging** [2] - 91:20, 91:22
**happiness** [1] - 39:14
**happy** [3] - 3:20, 19:7, 97:5
**harmonizes** [1] - 49:21
**hate** [1] - 42:25
**Hawkins** [1] - 119:24
**head** [1] - 55:21
**hear** [4] - 38:14, 75:7, 101:17, 113:1
**heard** [4] - 10:12, 38:22, 39:6, 90:15
**hearing** [1] - 119:14
**Hearing** [1] - 1:10
**height** [9] - 27:15, 37:18, 48:9, 58:15, 66:5, 66:6, 66:25,

67:5, 67:16
**help** [8] - 17:15, 18:23, 19:21, 23:2, 41:3, 77:22, 80:25, 117:24
**helpful** [4] - 19:6, 92:12, 113:14, 118:15
**hemispheres** [1] - 20:21
**HENDERSON** [1] - 2:6
**hereby** [1] - 119:22
**high** [2] - 15:1, 69:18
**higher** [1] - 12:24
**highlighted** [6] - 8:12, 8:14, 58:13, 64:2, 115:4, 115:20
**hill** [26] - 5:2, 5:10, 5:13, 6:24, 7:2, 17:21, 18:20, 20:1, 20:23, 25:21, 26:19, 28:7, 31:17, 33:19, 34:14, 43:13, 43:17, 43:18, 47:9, 48:15, 52:1, 70:7, 73:4, 73:19, 78:17, 84:10
**hip** [2] - 87:22, 88:2
**history** [2] - 79:23, 80:10
**hit** [34] - 5:15, 7:4, 18:14, 21:18, 21:23, 21:25, 22:16, 22:19, 25:21, 29:4, 33:20, 33:22, 34:14, 35:16, 43:18, 47:9, 52:13, 57:9, 63:10, 63:11, 63:22, 65:1, 70:21, 71:10, 73:3, 73:6, 73:15, 73:19, 78:17, 81:20, 102:8, 116:9
**hits** [22] - 5:8, 5:12, 18:18, 20:1, 25:7, 26:3, 27:21, 28:11, 37:3, 38:6, 43:11, 43:12, 56:24, 58:16, 58:20, 70:6, 70:7, 84:10, 86:13, 86:21, 87:5, 87:11
**hitting** [5] - 5:12, 18:18, 20:25, 35:5, 51:15
**hold** [2] - 92:25, 109:12
**Honor** [55] - 2:21, 3:5, 3:16, 10:12, 17:9, 17:13, 23:2, 24:23, 27:1, 28:2, 31:2, 34:9, 38:16, 43:2, 50:18, 50:22, 51:1, 52:25, 53:2, 53:22, 56:21, 57:2, 57:14,

58:9, 60:3, 60:5, 60:22, 64:5, 69:10, 70:10, 71:6, 75:9, 78:9, 79:17, 81:1, 85:21, 88:8, 88:11, 90:18, 91:5, 92:5, 94:14, 97:8, 101:19, 105:5, 105:18, 107:4, 111:23, 113:2, 114:14, 115:1, 116:19, 118:8, 119:13, 119:18
**HONORABLE** [1] - 1:15
**Honorable** [1] - 2:17
**hoped** [1] - 79:2
**hopefully** [1] - 70:18
**Horn** [1] - 3:7
**HORN** [77] - 2:7, 10:12, 11:9, 11:16, 11:23, 12:2, 12:14, 12:22, 13:2, 13:7, 13:14, 13:19, 13:22, 14:2, 14:9, 14:12, 14:20, 14:25, 15:17, 15:23, 16:11, 16:15, 17:8, 38:17, 39:5, 39:11, 39:16, 39:19, 40:5, 40:7, 40:10, 40:16, 41:7, 41:11, 41:13, 41:18, 41:20, 42:4, 42:6, 42:17, 42:20, 43:8, 43:12, 44:8, 44:13, 44:23, 45:4, 45:9, 45:15, 46:3, 47:14, 47:18, 53:2, 53:5, 53:20, 55:8, 75:18, 76:17, 76:22, 77:1, 77:9, 77:12, 77:22, 78:21, 80:15, 80:18, 80:20, 83:3, 83:12, 84:2, 88:11, 88:17, 89:5, 89:13, 90:7, 90:12, 91:5
**horses** [1] - 66:15
**hump** [1] - 22:12

---
### I
---

**i.e** [3] - 27:3, 27:9, 27:10
**idea** [9] - 7:16, 44:14, 47:6, 48:4, 49:11, 62:24, 80:8, 98:13, 106:4
**identifies** [1] - 61:7
**identify** [1] - 65:3
**identifying** [3] - 90:19,

91:12, 92:25
**ignore** [1] - 101:25
**illustrated** [1] - 93:13
**illustrates** [2] - 37:5, 40:1
**illustration** [1] - 51:20
**impact** [44] - 97:11, 97:12, 98:1, 98:8, 98:14, 98:17, 98:21, 98:24, 99:1, 99:4, 99:8, 99:9, 99:14, 99:25, 100:5, 100:16, 100:18, 100:25, 101:3, 101:15, 101:16, 102:3, 102:4, 102:5, 102:14, 102:17, 102:19, 103:3, 103:4, 103:5, 103:6, 103:7, 103:8, 103:9, 105:21, 106:7, 107:24, 109:14, 110:2, 110:3
**impacting** [1] - 100:12
**implementation** [2] - 37:6, 53:13
**implemented** [2] - 16:17, 17:1
**implicit** [1] - 94:22
**implies** [1] - 79:4
**imply** [1] - 112:19
**important** [4] - 8:23, 73:1, 101:22, 114:7
**imposes** [1] - 54:12
**IN** [1] - 1:1
**inadvertent** [1] - 75:18
**INC** [1] - 1:3
**inclination** [1] - 6:17
**incline** [4] - 7:8, 8:23, 63:10, 86:14
**include** [13] - 9:12, 26:8, 50:15, 54:23, 58:14, 64:8, 67:8, 67:9, 68:18, 68:19, 91:2, 98:1
**included** [4] - 22:3, 22:6, 94:2, 109:20
**includes** [4] - 22:3, 22:4, 107:19
**including** [2] - 75:21, 82:12
**inclusive** [1] - 75:25
**inconsistent** [1] - 104:10
**incorrectly** [1] - 96:5
**increases** [1] - 112:9
**indefinite** [4] - 112:3, 112:16, 115:2, 117:17
**independent** [3] -

4:14, 5:18, 30:16
**indicate** [2] - 8:16, 22:15
**indicated** [2] - 102:17, 103:2
**indicates** [1] - 99:8
**indication** [19] - 5:3, 6:24, 7:7, 7:14, 8:22, 9:18, 9:19, 9:20, 9:23, 9:25, 10:3, 10:4, 26:15, 32:14, 32:17, 32:21, 33:19, 68:24, 86:1
**indications** [2] - 10:6, 18:20
**information** [4] - 12:15, 15:9, 56:5, 63:12
**infringe** [1] - 12:11
**infringement** [5] - 11:20, 11:24, 12:1, 63:6, 117:6
**infringing** [2] - 12:7
**insisting** [1] - 26:8
**instability** [14] - 98:5, 99:1, 99:3, 99:4, 99:7, 100:10, 101:21, 103:17, 103:18, 104:8, 104:9, 104:12, 104:20, 104:24
**instead** [6] - 30:23, 31:7, 80:24, 105:25, 106:13, 111:1
**intended** [1] - 75:16
**interpret** [1] - 63:1
**interpretation** [2] - 15:10, 47:2
**intersect** [2] - 9:16
**interval** [1] - 69:3
**intrinsic** [5] - 9:3, 32:25, 63:19, 113:4, 118:17
**introduced** [3] - 88:20, 88:25
**introduces** [2] - 49:15, 86:6
**invalid** [1] - 12:7
**invention** [6] - 56:20, 57:18, 59:4, 61:5, 64:25, 93:10
**involves** [1] - 108:12
**iPad** [1] - 57:9
**issue** [27] - 4:13, 6:14, 9:11, 11:20, 26:7, 63:5, 63:7, 71:8, 72:23, 78:11, 81:14, 82:7, 83:11, 86:2, 86:3, 86:5, 86:7, 87:24, 97:8, 97:9,

101:21, 103:11, 112:12, 115:1, 115:3, 115:12, 116:14
**issues** [2] - 11:23, 11:25
**itself** [4] - 16:22, 54:4, 78:25, 109:20

### J

**JACK** [1] - 1:20
**jack** [1] - 2:21
**James** [1] - 3:1
**JARED** [1] - 1:23
**Jared** [1] - 2:24
**Jason** [1] - 3:1
**jog** [1] - 84:3
**joint** [3] - 92:18, 115:11, 115:21
**Judge** [2] - 1:15, 75:15
**judgment** [1] - 118:2
**jump** [2] - 67:19, 115:2
**jury** [4] - 12:18, 19:16, 49:13, 49:16

### K

**KAREN** [1] - 2:4
**Karen** [1] - 3:5
**keep** [15] - 11:2, 26:8, 32:7, 43:7, 47:12, 60:4, 60:5, 67:4, 72:13, 73:23, 83:7, 84:1, 84:5, 84:9, 84:15
**keeps** [1] - 96:6
**KELLER** [3] - 2:3, 2:4, 3:5
**Keller** [2] - 3:6
**Kelly** [1] - 3:7
**KELLY** [3] - 2:7
**key** [3] - 11:16, 12:2, 54:3
**kick** [1] - 119:16
**kind** [10] - 8:9, 9:11, 34:10, 37:13, 40:17, 55:19, 87:6, 89:23, 97:21, 109:19
**kinematic** [3] - 8:5, 8:8, 10:7
**King** [1] - 1:12
**knee** [4] - 87:22, 88:2, 115:11, 115:21
**knowing** [1] - 14:11
**knows** [10] - 59:24, 60:1, 61:11, 62:17, 77:17, 83:19, 83:20,

84:14, 87:10

### L

**labeled** [1] - 112:18
**language** [21] - 26:5, 41:5, 43:25, 44:16, 54:4, 54:21, 57:21, 76:23, 80:12, 91:25, 93:4, 98:2, 98:3, 99:6, 104:10, 105:17, 105:20, 108:16, 109:7, 109:9, 113:25
**lapsed** [1] - 63:11
**last** [3] - 52:7, 96:10, 114:25
**latter** [3] - 15:23, 45:12
**lawyer** [1] - 68:15
**lay** [1] - 103:7
**least** [1] - 84:25
**leave** [5] - 33:12, 34:6, 38:11, 73:14, 113:17
**leaves** [7] - 31:16, 31:25, 32:8, 33:11, 36:20, 113:7
**leaving** [5] - 32:2, 32:3, 32:22, 33:24
**ledge** [1] - 26:4
**left** [7] - 60:16, 77:25, 93:22, 94:16, 108:13, 116:6, 116:15
**leg** [132] - 4:5, 9:15, 9:17, 9:21, 17:24, 17:25, 18:2, 19:22, 21:5, 24:11, 36:1, 37:5, 39:6, 39:10, 40:1, 42:22, 43:18, 44:18, 49:1, 49:5, 67:16, 67:17, 68:4, 69:12, 69:18, 70:24, 70:25, 82:9, 85:1, 85:2, 86:1, 86:4, 86:6, 86:21, 86:24, 87:3, 87:11, 87:13, 87:23, 87:25, 88:3, 88:6, 88:19, 88:21, 88:23, 88:24, 89:1, 89:10, 89:14, 89:15, 89:16, 89:17, 89:19, 89:21, 89:25, 90:1, 90:13, 97:15, 97:23, 98:4, 98:7, 98:13, 98:20, 98:22, 98:23, 99:9, 99:17, 100:9, 101:6, 101:11, 103:17, 105:9, 105:10, 105:21,

105:23, 105:24, 106:1, 106:3, 106:6, 106:8, 106:9, 106:10, 106:13, 106:15, 106:19, 108:4, 108:6, 108:7, 108:9, 109:15, 109:18, 110:2, 110:12, 110:13, 111:8, 111:12, 111:14, 111:15, 111:16, 112:8, 114:2, 114:11, 114:12, 115:9, 115:10, 115:20, 116:8, 117:2, 117:3, 117:4, 117:5, 117:7, 117:8, 117:9, 117:10, 117:12, 117:14, 117:20, 117:21
**leg's** [5] - 34:22, 39:5, 40:3, 40:19, 50:8
**legs** [12] - 9:12, 9:13, 20:16, 86:11, 87:7, 88:20, 89:8, 89:25, 105:18, 105:25, 110:9, 115:6
**level** [10] - 9:25, 12:23, 12:24, 13:1, 14:13, 14:16, 14:19, 15:1, 15:3, 16:16
**lift** [9] - 32:18, 39:23, 39:24, 46:21, 47:23, 48:6, 68:4, 69:18, 101:6
**lifting** [2] - 32:20, 47:24
**lifts** [8] - 4:4, 18:8, 73:1, 87:6, 98:12, 98:23, 115:9, 115:20
**likely** [1] - 95:24
**limit** [5] - 7:21, 10:13, 49:5, 50:16, 61:18
**limitation** [6] - 13:9, 54:12, 92:1, 101:5, 101:9, 105:12
**limitations** [2] - 54:15
**limited** [5] - 12:3, 16:17, 57:15, 91:12, 94:1
**limiting** [1] - 91:10
**limits** [1] - 50:13
**line** [15] - 21:3, 38:5, 43:17, 46:7, 58:4, 58:9, 69:15, 84:23, 95:12, 95:23, 95:24, 96:2, 115:3
**lines** [2] - 35:21, 93:20
**list** [1] - 45:23

**LLP** [3] - 1:19, 2:3, 2:6
**loaded** [1] - 82:8
**location** [38] - 27:3, 27:16, 37:19, 37:20, 38:1, 48:11, 105:6, 105:9, 105:10, 105:13, 105:23, 106:1, 106:3, 106:5, 106:12, 106:14, 106:15, 106:18, 106:19, 106:22, 106:23, 106:24, 108:4, 108:5, 108:10, 108:22, 109:4, 109:15, 110:6, 110:8, 110:21, 111:1, 111:3, 111:6, 111:11, 111:18
**logic** [1] - 68:13
**logically** [1] - 113:8
**look** [32] - 4:21, 8:8, 14:21, 16:23, 18:16, 20:10, 27:25, 34:17, 37:4, 37:9, 42:13, 46:22, 51:22, 57:23, 59:15, 68:10, 83:17, 86:3, 94:2, 95:4, 95:11, 95:12, 98:2, 113:25, 115:14, 115:15, 115:17, 115:19, 116:3, 116:23, 118:6
**looked** [5] - 8:6, 27:6, 48:15, 72:1, 80:12
**looking** [16] - 4:2, 14:17, 15:15, 36:11, 41:22, 90:3, 91:25, 115:23, 115:24, 116:5, 116:6, 116:12, 117:2, 117:12, 117:13
**looks** [5] - 83:19, 83:20, 83:22, 94:19, 117:4
**lopes** [1] - 66:15
**loping** [3] - 83:18, 83:19, 84:1
**lose** [1] - 60:7
**lost** [3] - 16:2, 16:6, 16:9
**lower** [16] - 12:3, 12:23, 14:13, 14:16, 14:18, 15:2, 26:1, 115:10, 115:20, 116:6, 117:2, 117:4, 117:7, 117:12, 117:14, 117:20
**lowering** [2] - 26:5
**lying** [1] - 75:14

## M

**main** [4] - 25:2, 26:7, 70:15, 82:7
**maintain** [1] - 58:12
**maneuver** [1] - 109:24
**manhole** [1] - 100:12
**manner** [2] - 117:9, 117:11
**map** [2] - 95:7, 95:17
**Markman** [1] - 3:10
**Maryellen** [1] - 2:17
**MARYELLEN** [1] - 1:15
**matter** [3] - 11:17, 74:12, 112:17
**matters** [3] - 36:3, 70:8, 71:10
**mean** [24] - 7:17, 28:22, 40:2, 40:18, 55:1, 55:2, 55:17, 57:20, 61:10, 62:3, 63:18, 65:11, 69:22, 71:3, 74:1, 76:12, 83:5, 83:9, 83:21, 84:12, 85:4, 104:7, 108:10, 109:3
**meaning** [13] - 9:8, 10:18, 10:21, 10:22, 10:24, 11:4, 11:5, 11:7, 13:3, 64:13, 74:8, 78:25, 95:3
**meanings** [3] - 57:25, 79:6, 114:9
**means** [37] - 10:8, 13:6, 13:12, 14:15, 16:8, 16:14, 19:17, 24:8, 28:22, 34:24, 35:2, 37:7, 39:12, 39:15, 45:19, 49:13, 50:12, 55:3, 55:7, 57:23, 58:5, 62:6, 63:3, 63:21, 64:10, 64:18, 65:11, 65:21, 68:17, 72:21, 76:23, 82:17, 83:2, 83:14, 83:17, 84:7
**meant** [2] - 28:6, 62:16
**measure** [4] - 5:23, 9:9, 11:14, 12:19
**measured** [3] - 6:11, 8:9, 8:10
**measurement** [1] - 11:3
**measuring** [8] - 5:22, 6:2, 6:3, 6:11, 8:3, 9:6, 9:10, 10:25
**mechanically** [5] - 37:5, 38:23, 38:24,

40:2, 53:12
**meet** [1] - 13:9
**meets** [1] - 117:6
**mentioned** [4] - 53:6, 92:5, 105:18, 118:8
**merging** [1] - 44:1
**met** [1] - 25:25
**metes** [1] - 49:17
**method** [4] - 16:18, 17:1, 51:24
**methods** [1] - 16:18
**middle** [6] - 7:5, 17:21, 30:24, 47:8, 55:19, 59:8
**might** [15] - 25:25, 26:1, 26:21, 36:2, 45:17, 61:18, 65:25, 82:5, 85:17, 87:16, 88:25, 103:20, 104:21, 111:4, 118:1
**Milan** [1] - 3:8
**MILAN** [1] - 2:7
**minute** [4] - 50:23, 64:20, 64:24, 111:24
**minute-and-a-half** [1] - 111:24
**minutes** [6] - 3:18, 56:13, 57:5, 87:15, 99:22, 111:21
**misleading** [2] - 75:10, 75:12
**misrepresent** [1] - 75:16
**misrepresents** [2] - 75:11, 75:13
**missed** [1] - 90:6
**missing** [2] - 64:9, 97:20
**mode** [3] - 84:13, 84:14, 94:21
**model** [5] - 95:6, 95:14, 95:16, 95:19, 96:7
**modification** [1] - 108:19
**modified** [3] - 106:1, 106:3, 111:6
**modifies** [3] - 103:18, 104:20, 105:22
**modify** [3] - 107:25, 108:9, 108:23
**modifying** [16] - 107:11, 107:20, 107:21, 108:3, 108:5, 108:10, 108:11, 108:14, 108:15, 108:17, 109:4, 109:10, 109:14, 110:25, 111:17

**mollie** [1] - 27:5
**moment** [3] - 41:22, 69:22
**moments** [1] - 39:7
**morning** [7] - 2:18, 3:3, 3:5, 3:9, 10:12, 53:22, 83:6
**moron** [1] - 116:23
**MORRIS** [1] - 1:19
**Morris** [1] - 2:22
**most** [1] - 95:24
**mostly** [1] - 10:13
**motion** [20] - 26:1, 34:22, 39:1, 39:5, 39:11, 39:13, 39:15, 39:22, 39:23, 39:24, 40:3, 40:9, 40:11, 40:15, 48:19, 49:5, 50:8, 111:8, 111:16, 116:7
**motions** [3] - 46:5, 118:2, 119:17
**move** [10] - 34:8, 60:9, 60:16, 85:14, 88:12, 115:6, 115:8, 115:21, 116:11, 116:17
**movement** [4] - 111:4, 115:15, 116:13, 116:15
**moves** [3] - 40:17, 96:19, 117:20
**moving** [25] - 9:7, 19:9, 23:3, 23:6, 24:5, 24:6, 24:7, 33:7, 34:10, 34:23, 34:24, 37:19, 39:17, 39:21, 40:4, 40:13, 48:6, 50:10, 70:23, 72:17, 74:17, 81:15, 90:19, 99:20, 102:8
**MR** [182] - 2:21, 3:4, 3:15, 3:22, 6:5, 6:15, 7:19, 7:23, 8:10, 9:1, 9:7, 17:13, 17:18, 17:23, 18:4, 18:11, 18:23, 19:4, 19:18, 20:5, 20:8, 20:17, 20:20, 21:4, 21:7, 21:9, 22:9, 22:11, 22:15, 23:2, 23:9, 23:14, 23:18, 23:21, 23:24, 24:3, 24:20, 28:17, 28:20, 28:24, 29:4, 29:7, 29:10, 29:12, 29:16, 29:19, 30:1, 30:4, 30:10, 30:13, 31:12, 33:4, 35:2, 35:23, 36:7, 36:9, 36:13, 38:7,

38:16, 41:17, 41:19, 42:2, 43:2, 50:22, 50:25, 53:21, 53:24, 55:12, 56:3, 56:10, 56:20, 57:1, 57:11, 57:14, 57:21, 57:25, 58:3, 58:8, 58:25, 59:3, 59:9, 59:21, 60:3, 60:22, 61:16, 62:7, 62:23, 63:1, 63:7, 63:17, 63:23, 64:1, 64:4, 64:22, 65:12, 65:17, 65:20, 65:22, 66:2, 66:14, 67:7, 67:11, 67:20, 67:23, 68:21, 69:6, 69:9, 69:14, 70:9, 70:25, 71:5, 71:15, 71:19, 71:23, 72:11, 72:19, 72:23, 73:12, 74:1, 74:3, 74:10, 74:16, 75:2, 77:16, 78:7, 78:11, 80:17, 80:25, 81:8, 81:13, 81:21, 82:3, 82:16, 84:21, 85:15, 85:19, 90:18, 91:6, 91:17, 91:19, 92:3, 92:10, 92:12, 92:16, 92:21, 93:2, 94:13, 94:14, 101:19, 102:15, 102:20, 102:23, 103:4, 104:4, 104:11, 104:19, 105:5, 105:15, 107:4, 107:14, 107:18, 108:11, 108:25, 109:7, 109:10, 109:13, 109:21, 110:14, 111:3, 111:13, 111:20, 113:2, 113:16, 114:7, 116:19, 117:1, 118:8, 118:12, 119:5, 119:9, 119:13, 119:18
**MS** [96] - 3:5, 10:12, 11:9, 11:16, 11:23, 12:2, 12:14, 12:22, 13:2, 13:7, 13:14, 13:19, 13:22, 14:2, 14:9, 14:12, 14:20, 14:25, 15:17, 15:23, 16:11, 16:15, 17:8, 38:17, 39:5, 39:11, 39:16, 39:19, 40:5, 40:7, 40:10, 40:16, 41:7, 41:11, 41:13, 41:18, 41:20, 42:4, 42:6, 42:17, 42:20,

43:8, 43:12, 44:8, 44:13, 44:23, 45:4, 45:9, 45:15, 46:3, 47:14, 47:18, 53:2, 53:5, 53:20, 75:8, 75:18, 76:17, 76:22, 77:1, 77:9, 77:12, 77:22, 78:21, 80:15, 80:18, 80:20, 83:3, 83:12, 84:2, 85:21, 85:25, 87:18, 88:11, 88:17, 89:5, 89:13, 90:7, 90:12, 91:5, 97:8, 97:17, 97:24, 99:5, 99:23, 100:2, 100:8, 100:14, 100:19, 101:4, 101:16, 111:22, 112:1, 114:14, 114:25, 116:3
**multiple** [1] - 74:18
**must** [1] - 45:24

## N

**name** [1] - 114:18
**names** [1] - 114:21
**nature** [4] - 103:12, 104:23, 107:7, 107:15
**navigate** [1] - 97:3
**navigating** [1] - 96:17
**navigation** [1] - 95:15
**nearly** [1] - 9:16
**necessarily** [3] - 16:20, 99:4, 103:21
**need** [17] - 16:25, 17:14, 17:16, 39:3, 40:23, 55:4, 74:12, 85:17, 101:6, 117:24, 118:9, 118:11, 118:15, 118:18, 118:25, 119:12
**needs** [4] - 9:6, 61:12, 93:16, 95:2
**negotiate** [2] - 93:16, 96:23
**negotiated** [1] - 95:16
**negotiation** [1] - 13:23
**never** [6] - 23:7, 23:9, 51:5, 83:12, 86:6, 88:2
**nevermind** [1] - 14:24
**new** [10] - 53:14, 106:5, 106:18, 106:22, 106:24, 109:23, 110:5, 110:8, 110:21
**newton** [2] - 66:24,

70:14
**Newton** [2] - 2:25, 71:7
**NEWTON** [54] - 1:23, 53:21, 53:24, 55:12, 56:3, 56:10, 56:20, 57:1, 57:11, 57:14, 57:21, 57:25, 58:3, 58:8, 58:25, 59:3, 59:9, 59:21, 60:3, 60:22, 61:16, 62:7, 62:23, 63:1, 63:7, 63:17, 63:23, 64:1, 64:4, 64:22, 65:12, 65:17, 65:20, 65:22, 90:18, 91:6, 91:17, 91:19, 92:3, 92:10, 92:12, 92:16, 92:21, 93:2, 94:13, 105:5, 105:15, 109:7, 109:10, 109:13, 109:21, 110:14, 111:3, 111:13
**next** [24] - 9:10, 20:8, 56:13, 57:5, 85:14, 85:20, 85:25, 86:3, 90:17, 90:18, 97:7, 97:8, 99:19, 101:5, 101:9, 105:4, 105:5, 106:11, 106:21, 111:19, 111:25, 114:23, 115:3, 115:18
**Nichols** [1] - 2:22
**NICHOLS** [1] - 1:19
**nobody** [1] - 74:5
**nomenclature** [1] - 112:18
**nominal** [11] - 38:23, 38:24, 42:8, 42:14, 45:19, 48:25, 49:7, 50:15, 51:19, 53:7, 53:18
**none** [1] - 71:12
**nonetheless** [2] - 36:3, 44:20
**NOREIKA** [1] - 1:15
**Noreika** [1] - 2:17
**normal** [14] - 18:19, 21:24, 29:2, 31:3, 31:8, 31:17, 33:8, 34:5, 35:6, 35:12, 53:18, 61:10, 61:11, 61:17
**normally** [8] - 3:24, 21:10, 25:19, 31:18, 34:11, 52:12, 62:17, 118:14
**note** [1] - 36:25
**notes** [2] - 92:11,

119:22
**nothing** [16] - 9:3, 14:16, 28:9, 55:7, 56:1, 56:17, 59:12, 60:10, 61:13, 63:21, 64:3, 65:5, 73:24, 93:4, 93:6
**number** [7] - 6:9, 27:23, 43:1, 76:25, 77:1, 92:4, 113:16
**numbers** [1] - 113:20

# O

**object** [13] - 95:1, 96:1, 97:12, 97:15, 97:22, 98:13, 98:21, 99:14, 99:18, 100:16, 101:8, 101:12
**objections** [1] - 58:13
**objects** [2] - 91:10, 95:19
**obstacle** [31] - 58:20, 61:8, 63:10, 65:1, 65:2, 65:4, 65:7, 65:8, 65:10, 65:11, 67:9, 90:20, 91:7, 91:9, 91:10, 91:14, 91:15, 93:3, 93:5, 93:7, 93:16, 93:20, 94:4, 95:1, 95:2, 95:6, 95:9, 95:17, 96:18, 97:1
**obstacles** [19] - 91:22, 93:19, 94:2, 94:4, 94:8, 95:2, 95:18, 95:24, 96:5, 96:8, 96:12, 96:13, 96:17, 96:19, 96:21, 96:22, 96:24, 97:2
**obstruction** [1] - 103:13
**obviously** [9] - 19:5, 30:5, 33:6, 70:1, 72:24, 81:24, 82:11, 83:7
**occur** [2] - 46:25, 50:4
**occurred** [1] - 8:18
**occurring** [4] - 6:22, 46:5, 50:13, 79:19
**occurs** [2] - 66:11, 69:4
**October** [2] - 118:1, 119:10
**odd** [1] - 37:14
**oddity** [1] - 51:13
**odometry** [3] - 8:5, 8:8, 10:7
**OF** [1] - 1:1

**Official** [1] - 119:24
**omits** [1] - 113:6
**once** [7] - 66:14, 69:20, 71:8, 84:2, 84:3, 84:8, 86:6
**one** [92] - 4:2, 5:2, 8:20, 9:19, 16:13, 17:14, 18:11, 18:24, 20:8, 20:11, 20:15, 20:20, 21:8, 21:9, 21:14, 22:7, 25:4, 25:14, 26:10, 26:25, 28:5, 29:8, 30:14, 31:14, 31:15, 35:5, 37:1, 37:12, 38:10, 38:15, 38:18, 40:22, 42:25, 43:2, 43:12, 44:8, 45:15, 45:20, 45:24, 46:23, 49:25, 50:23, 52:2, 52:3, 52:4, 52:5, 52:17, 53:2, 53:5, 54:11, 59:5, 59:10, 59:16, 59:21, 61:2, 62:2, 64:23, 65:3, 68:5, 68:21, 68:22, 72:1, 72:14, 73:1, 74:12, 74:13, 76:22, 78:9, 85:11, 86:11, 90:16, 90:23, 92:4, 97:18, 104:17, 111:25, 113:4, 113:5, 113:12, 113:25, 114:19, 115:14, 117:8, 117:12, 117:13, 117:16, 117:18
**ones** [1] - 27:24
**operation** [2] - 6:21, 16:25
**operations** [1] - 17:6
**operative** [1] - 71:8
**opined** [2] - 13:14, 13:16
**opinion** [1] - 90:4
**opinions** [1] - 11:2
**opportunity** [1] - 14:4
**opposed** [5] - 10:14, 96:20, 109:5
**opposing** [1] - 53:6
**opposite** [2] - 5:14, 47:25
**option** [1] - 110:7
**optional** [2] - 61:22, 61:23
**order** [4] - 6:21, 34:6, 38:11, 93:16
**ordering** [2] - 113:21, 113:22
**ordinary** [8] - 10:18,

10:20, 10:21, 10:23, 11:4, 11:5, 11:7, 64:13
**organized** [1] - 32:11
**orient** [1] - 111:14
**originally** [3] - 13:15, 79:25, 94:20
**otherwise** [1] - 82:4
**overall** [2] - 14:21, 16:18
**overcome** [7] - 98:13, 98:22, 98:23, 99:18, 101:6, 101:8, 101:12
**overlap** [7] - 24:23, 29:20, 29:22, 30:7, 30:9, 36:16, 44:7
**overlapping** [3] - 33:2, 33:12, 35:11
**overlooked** [1] - 80:21
**overview** [3] - 3:18, 3:23, 5:19
**own** [2] - 72:9, 85:4

# P

**p.m** [1] - 119:21
**page** [3] - 3:23, 92:17, 94:15
**pages** [2] - 118:23, 119:6
**papers** [1] - 18:7
**paragraph** [3] - 90:5, 90:9, 90:10
**parallel** [4] - 93:20, 93:23, 94:5, 96:19
**parameter** [2] - 15:7, 15:8
**part** [57] - 19:19, 20:1, 22:16, 25:2, 29:7, 31:19, 32:9, 32:23, 33:5, 34:21, 35:4, 35:14, 37:13, 38:4, 38:5, 39:5, 39:11, 39:13, 39:14, 39:22, 39:23, 39:24, 40:18, 43:24, 45:5, 46:15, 48:4, 48:6, 48:14, 48:19, 50:8, 51:4, 51:5, 52:12, 60:11, 67:12, 68:25, 69:21, 76:6, 76:7, 76:9, 79:10, 79:14, 80:2, 80:9, 81:3, 82:22, 82:23, 87:23, 87:25, 88:2, 88:6, 89:16, 95:14, 95:16, 95:17
**partially** [1] - 96:3
**particular** [22] - 13:9, 14:3, 15:6, 15:8, 15:9, 38:25, 39:10,

40:17, 42:10, 43:24, 45:4, 47:2, 47:8, 48:22, 49:1, 50:16, 50:19, 72:17, 84:15, 84:16, 88:18, 89:6
**parties** [5] - 39:7, 80:21, 87:20, 97:10, 107:10
**partner** [1] - 2:25
**parts** [2] - 48:6, 48:25
**pass** [1] - 19:7
**passage** [1] - 95:8
**past** [3] - 8:21, 25:9, 53:25
**patent** [41] - 3:16, 3:19, 4:7, 4:9, 4:13, 5:1, 6:9, 7:7, 7:10, 8:20, 10:5, 25:10, 26:9, 32:10, 34:21, 35:23, 38:20, 39:20, 41:23, 43:24, 44:14, 47:23, 48:3, 51:19, 55:22, 57:22, 58:6, 61:15, 63:16, 67:25, 68:14, 68:17, 73:25, 80:13, 90:19, 95:3, 96:9, 98:9, 105:6, 117:18, 118:17
**path** [76] - 24:15, 29:11, 32:4, 38:25, 54:17, 55:1, 56:6, 57:10, 57:15, 57:20, 57:24, 61:3, 61:4, 62:9, 63:14, 64:8, 64:10, 64:11, 64:25, 66:9, 66:19, 67:14, 67:15, 67:16, 67:17, 67:24, 67:25, 68:4, 68:6, 68:9, 70:4, 70:20, 70:22, 70:23, 70:25, 72:24, 74:5, 74:20, 75:3, 76:16, 76:22, 78:6, 78:11, 79:4, 79:9, 81:4, 81:5, 81:9, 81:17, 81:25, 82:4, 82:5, 82:7, 82:8, 84:8, 84:11, 84:16, 84:22, 85:1, 85:2, 85:3, 85:4, 85:9, 85:10, 91:9, 92:2, 92:7, 92:9, 92:14, 93:15, 93:20, 93:22, 94:5
**pattern** [10] - 4:1, 4:4, 20:14, 32:14, 66:3, 66:16, 66:17, 69:17, 70:16, 74:21
**patterns** [1] - 72:8
**people** [1] - 72:1
**per** [1] - 36:18

**perceiving** [1] - 97:21
**perception** [1] - 96:3
**perfect** [1] - 8:1
**performed** [2] - 15:2, 15:3
**performing** [3] - 89:7, 89:8, 106:16
**period** [9] - 5:11, 56:10, 63:2, 63:4, 64:22, 68:11, 69:23, 73:17, 118:9
**person** [2] - 68:16, 116:22
**phrase** [7] - 75:21, 76:4, 77:24, 78:2, 79:13, 90:23, 94:20
**pick** [2] - 86:22, 86:25
**picked** [1] - 101:23
**picking** [2] - 6:8, 75:5
**picture** [4] - 8:23, 18:22, 59:14, 66:10
**pictures** [1] - 116:23
**piece** [1] - 15:9
**place** [3] - 59:16, 59:17, 92:1
**placed** [1] - 84:8
**places** [1] - 93:4
**plain** [16] - 9:8, 10:18, 10:20, 10:21, 10:23, 11:4, 11:5, 11:6, 24:5, 43:25, 54:21, 57:21, 76:23, 78:25, 79:6, 91:25
**plaintiff** [1] - 2:22
**Plaintiff** [2] - 1:4, 1:25
**plaintiffs** [1] - 109:2
**plan** [12] - 55:13, 58:21, 59:18, 59:21, 61:3, 70:20, 74:19, 74:20, 74:23, 84:11, 84:18, 108:15
**planned** [35] - 54:17, 55:1, 55:10, 59:17, 63:13, 72:24, 74:5, 76:22, 78:6, 78:11, 79:2, 79:9, 81:4, 81:5, 81:9, 81:11, 81:22, 81:23, 83:2, 83:9, 83:16, 83:21, 84:4, 84:7, 84:13, 84:20, 105:10, 105:11, 106:1, 107:19, 108:18
**planning** [5] - 83:14, 107:6, 108:12, 108:20, 109:23
**plans** [3] - 74:8, 84:8, 84:12
**play** [2] - 103:24, 111:14

**plenty** [1] - 7:25
**plug** [1] - 15:11
**plus** [1] - 22:5
**podium** [2] - 102:7, 102:8
**point** [49] - 6:15, 6:16, 7:1, 9:9, 14:25, 17:3, 18:17, 19:5, 24:11, 26:20, 29:19, 36:22, 39:8, 42:7, 45:3, 46:13, 57:17, 58:23, 59:21, 59:22, 61:1, 61:20, 62:20, 62:21, 64:4, 66:19, 70:2, 71:23, 72:3, 73:2, 74:2, 74:17, 75:2, 75:4, 78:19, 78:21, 81:19, 82:3, 84:4, 85:7, 93:11, 93:25, 97:22, 101:22, 102:20, 103:9, 116:20
**pointed** [2] - 66:24, 70:14
**pointing** [4] - 10:16, 73:23, 118:16, 119:2
**pointless** [1] - 60:11
**points** [4] - 9:11, 52:23, 58:16, 61:23
**pop** [1] - 4:8
**portion** [24] - 27:1, 27:8, 46:9, 46:14, 58:13, 64:2, 98:18, 112:8, 114:3, 115:3, 115:4, 115:10, 115:20, 117:2, 117:3, 117:4, 117:5, 117:7, 117:8, 117:13, 117:14, 117:20, 117:21
**POSITA** [1] - 115:24
**position** [12] - 9:13, 9:16, 46:24, 76:18, 92:18, 98:15, 99:15, 100:3, 113:9, 115:22, 118:19, 118:22
**positions** [2] - 92:25, 118:19
**possible** [5] - 9:21, 9:23, 25:17, 28:7, 34:9
**potential** [3] - 11:10, 103:4, 103:9
**potentially** [1] - 103:8
**precedes** [1] - 113:9
**preclude** [2] - 51:12, 84:17
**predetermined** [2] - 66:9, 81:25

**preplan** [1] - 83:25
**preplanned** [11] - 58:19, 81:15, 81:17, 81:22, 82:3, 82:7, 83:2, 83:4, 83:5, 83:9, 83:13
**preprogram** [2] - 61:3, 70:15
**preprogrammed** [5] - 66:13, 66:20, 68:6, 68:7, 110:4
**prescribed** [1] - 89:22
**presentation** [3] - 24:21, 75:10, 91:1
**presented** [1] - 113:3
**presiding** [1] - 2:17
**presumably** [1] - 74:14
**pretty** [3] - 53:16, 71:25, 99:24
**previously** [1] - 105:18
**primarily** [1] - 10:17
**problem** [21] - 6:4, 10:20, 12:9, 14:17, 29:3, 29:17, 54:13, 58:18, 60:1, 61:9, 62:18, 63:15, 78:5, 78:6, 81:22, 88:19, 94:23, 117:1, 117:11, 118:16
**problematic** [1] - 11:8
**proceed** [2] - 93:23, 94:5
**proceeding** [1] - 119:22
**proceeds** [1] - 99:16
**process** [4] - 12:23, 14:14, 14:17, 14:19
**processing** [1] - 16:20
**processor** [5] - 15:2, 15:9, 16:16, 16:17, 17:1
**product** [2] - 3:18, 64:21
**program** [3] - 58:15, 61:21, 109:25
**progresses** [1] - 61:2
**progressing** [1] - 61:7
**progression** [11] - 57:17, 58:2, 58:3, 60:23, 60:25, 64:11, 64:12, 65:13, 65:14, 65:18, 67:14
**prohibits** [1] - 51:16
**proper** [1] - 13:3
**properties** [3] - 96:18, 96:22, 97:2
**proposal** [9] - 49:19, 50:11, 56:22, 62:25,

71:13, 91:7, 92:17, 104:9, 105:9
**proposed** [20] - 11:9, 13:16, 13:22, 13:23, 54:13, 75:19, 75:24, 76:3, 77:23, 77:25, 78:1, 78:2, 79:13, 92:20, 94:16, 105:8, 113:19, 113:23, 114:8, 117:19
**proposes** [1] - 113:20
**proposing** [2] - 10:15, 80:2
**prosecution** [3] - 79:23, 80:6, 80:10
**prospective** [5] - 102:6, 103:12, 104:23, 107:7, 108:19
**prospectively** [5] - 103:23, 104:14, 107:20, 108:1, 108:23
**prove** [1] - 88:14
**provide** [4] - 49:14, 50:11, 79:19, 116:21
**provided** [2] - 102:11
**provides** [3] - 3:19, 53:11, 95:8
**pull** [3] - 15:21, 42:1, 104:5
**purely** [1] - 73:20
**purpose** [1] - 93:10
**purposes** [1] - 117:5
**pursuant** [3] - 72:5, 73:18, 82:21
**push** [2] - 19:7, 118:1
**put** [16] - 7:4, 16:4, 24:4, 27:7, 41:15, 41:17, 50:25, 59:9, 76:14, 82:21, 84:14, 92:22, 94:18, 106:5, 109:24, 110:24
**puts** [6] - 4:5, 32:7, 32:8, 98:15, 99:14, 110:24

**Q**

**quadruped** [2] - 86:10
**questions** [12] - 7:21, 17:9, 47:15, 47:17, 50:19, 79:17, 88:9, 97:5, 104:2, 107:1, 109:1, 117:22
**quick** [1] - 111:22
**quicker** [1] - 65:25
**quickly** [1] - 7:20
**QUINN** [1] - 1:22
**Quinn** [2] - 2:24, 2:25

**quite** [1] - 98:12
**quote** [1] - 27:5
**quotes** [1] - 27:8
**quoting** [1] - 90:10

**R**

**railing** [4] - 91:21, 93:15, 93:21, 93:23
**railings** [1] - 94:9
**raise** [1] - 87:12
**random** [1] - 82:10
**range** [1] - 49:5
**rather** [1] - 75:14
**reach** [11] - 41:25, 42:7, 42:10, 65:7, 103:21, 104:13, 104:14, 104:21, 104:24, 104:25
**reached** [3] - 49:5, 87:12, 103:20
**reaches** [14] - 25:15, 25:19, 27:17, 30:20, 31:16, 34:4, 37:21, 41:21, 43:6, 43:18, 48:13, 51:6, 52:10
**reaching** [1] - 47:6
**reaction** [1] - 9:22
**read** [19] - 3:20, 3:22, 15:16, 32:11, 44:16, 54:14, 55:21, 60:20, 61:15, 69:8, 88:23, 91:3, 100:17, 100:22, 103:12, 103:15, 105:12, 108:4, 108:5
**reading** [8] - 15:19, 46:21, 54:24, 63:13, 64:20, 68:16, 99:10, 102:22
**real** [4] - 91:6, 93:2, 105:11, 118:16
**realize** [1] - 21:19
**realized** [1] - 8:14
**realizes** [2] - 5:9, 26:3
**really** [28] - 5:23, 7:3, 9:5, 9:11, 10:22, 12:8, 16:8, 16:13, 25:3, 46:9, 48:3, 55:25, 56:14, 60:6, 60:16, 71:6, 71:22, 75:13, 75:16, 76:6, 80:9, 83:10, 86:2, 91:11, 98:16, 98:19, 109:16
**rear** [2] - 112:8, 114:12
**reason** [7] - 6:10, 20:13, 68:21, 68:23, 73:7, 94:7, 115:18

**received** [1] - 90:21
**recently** [1] - 94:16
**recited** [3] - 89:9, 89:25, 106:17
**recognizing** [4] - 91:8, 93:1, 94:19, 94:24
**record** [1] - 113:4
**red** [2] - 77:21, 77:25
**refer** [2] - 114:10, 114:11
**reference** [3] - 4:1, 80:6, 86:4
**referred** [1] - 96:11
**referring** [5] - 15:17, 16:15, 54:4, 58:10, 96:25
**refers** [7] - 14:9, 14:13, 16:11, 31:14, 54:2, 94:3, 111:8
**reflected** [1] - 92:3
**reflects** [1] - 91:7
**regard** [2] - 9:20, 17:23
**regardless** [1] - 84:1
**relate** [1] - 88:25
**relates** [1] - 89:20
**relation** [1] - 116:16
**relationship** [3] - 39:21, 89:2, 90:1
**relatively** [1] - 34:12
**relevance** [1] - 63:6
**relevant** [3] - 11:22, 11:23, 11:25
**rely** [2] - 35:25, 73:14
**relying** [1] - 73:24
**remember** [3] - 36:14, 79:6, 86:12
**remote** [1] - 74:16
**replace** [1] - 87:10
**replete** [1] - 10:5
**reply** [1] - 90:11
**report** [1] - 90:11
**Reporter** [1] - 119:24
**reports** [2] - 10:24, 19:1
**represented** [1] - 37:14
**representing** [1] - 43:14
**request** [1] - 12:15
**require** [2] - 61:22, 110:5
**required** [1] - 72:4
**requirement** [4] - 26:17, 34:18, 91:2, 93:6
**requirements** [2] - 54:23, 54:25
**requires** [9] - 38:11, 60:12, 100:3,

100:25, 101:3, 101:15, 101:16, 102:14, 102:18
**resemble** [1] - 97:2
**resolution** [1] - 116:21
**resolve** [1] - 88:18
**respect** [5] - 9:13, 46:11, 46:18, 48:20, 88:4
**respectfully** [2] - 56:3, 57:1
**respective** [2] - 112:7, 114:2
**response** [3] - 106:8, 106:14, 113:1
**responses** [1] - 119:7
**rest** [1] - 19:13
**result** [6] - 6:23, 10:7, 21:17, 22:19, 33:15, 34:14
**reversal** [1] - 116:8
**right-hand** [4] - 115:17, 115:23, 116:1, 116:12
**rise** [3] - 2:15, 21:22, 119:19
**risk** [1] - 108:21
**robot** [127] - 3:24, 4:4, 4:10, 4:17, 4:19, 4:22, 5:3, 5:7, 6:22, 7:12, 8:5, 9:12, 9:14, 9:22, 10:2, 12:12, 15:14, 16:1, 17:17, 18:1, 18:6, 18:8, 20:13, 21:16, 24:25, 25:19, 26:1, 30:18, 30:19, 32:15, 32:18, 32:21, 34:3, 35:9, 35:12, 36:3, 37:6, 37:17, 39:4, 39:10, 42:9, 44:19, 48:23, 49:4, 49:10, 49:12, 51:4, 51:9, 51:24, 52:10, 53:7, 53:12, 54:2, 56:5, 57:16, 58:12, 59:22, 61:6, 61:11, 61:20, 66:3, 66:6, 66:19, 68:6, 68:24, 70:12, 70:18, 70:23, 73:7, 74:17, 75:25, 76:10, 81:15, 82:8, 82:10, 84:5, 84:8, 86:1, 87:4, 87:8, 87:9, 91:7, 91:12, 93:10, 93:18, 93:22, 94:5, 96:13, 97:10, 97:16, 97:23, 98:4, 98:5, 98:6, 98:7, 98:14, 98:24, 98:25, 99:13, 99:16,

100:4, 100:10, 101:8, 103:13, 103:17, 103:18, 104:12, 104:20, 105:22, 106:4, 109:25, 110:5, 110:9, 112:7, 114:2, 116:5, 116:10, 116:11, 117:8, 117:10, 117:13, 117:16
**robot's** [7] - 8:17, 9:13, 46:11, 46:19, 48:21, 49:1, 93:15
**Robotics** [3] - 3:7, 12:22, 87:21
**ROBOTICS** [1] - 1:6
**robots** [2] - 13:9, 63:7
**rock** [3] - 32:6, 52:3, 70:6
**role** [1] - 113:7
**roots** [1] - 80:10
**rope** [1] - 91:20
**rotates** [5] - 115:11, 117:2, 117:4, 117:13, 117:14
**rotating** [1] - 117:7
**rough** [1] - 4:8
**row** [1] - 3:1
**rule** [2] - 119:15
**run** [1] - 57:8
**running** [1] - 65:23
**runs** [2] - 62:17, 93:20

## S

**save** [1] - 87:16
**saw** [1] - 67:4
**scenario** [1] - 95:13
**scenarios** [3] - 109:8, 109:22
**schedules** [1] - 118:6
**schematic** [1] - 43:15
**scope** [14] - 7:15, 11:19, 86:8, 87:11, 87:24, 88:4, 88:7, 89:12, 91:24, 94:10, 113:16, 113:19, 114:5, 114:6
**scopes** [6] - 89:6, 113:3, 113:12, 113:15, 116:20, 117:17
**screen** [5] - 20:17, 69:9, 102:25, 103:1, 103:16
**seated** [1] - 2:19
**second** [63] - 4:17, 5:1, 15:24, 16:2, 16:6, 16:9, 17:11,

17:24, 20:9, 20:18, 21:10, 22:11, 24:2, 26:14, 26:22, 28:5, 32:17, 34:18, 37:12, 38:3, 42:3, 42:7, 43:2, 51:25, 54:8, 61:6, 66:18, 68:5, 68:25, 69:2, 70:21, 76:3, 77:2, 78:8, 78:9, 79:12, 79:18, 79:21, 80:6, 80:9, 81:2, 81:7, 86:20, 86:22, 86:25, 87:2, 87:6, 87:13, 107:16, 112:15, 112:19, 113:7, 113:8, 113:18, 114:4, 114:5, 114:6, 114:8, 114:17, 114:18
**seconds** [18] - 4:5, 5:10, 5:11, 5:12, 63:9, 63:11, 65:11, 66:4, 66:5, 66:7, 66:8, 66:22, 68:5, 72:22, 73:3, 85:12, 116:18
**section** [7] - 37:23, 37:25, 92:24, 96:6, 96:10, 96:16, 96:25
**see** [33] - 4:1, 4:2, 4:17, 6:8, 7:3, 8:24, 9:22, 21:10, 21:24, 26:21, 31:2, 32:1, 32:20, 33:19, 42:21, 43:4, 46:14, 47:2, 49:25, 54:13, 64:15, 68:19, 75:20, 76:4, 79:10, 86:4, 96:22, 102:7, 104:3, 107:23, 109:9, 115:4, 116:4
**seeing** [2] - 43:15, 92:17
**seem** [3] - 41:2, 51:5, 56:17
**sees** [3] - 32:6, 91:14, 96:14
**send** [1] - 83:6
**sense** [19] - 6:12, 11:14, 14:11, 15:12, 57:4, 59:20, 60:21, 68:13, 68:15, 71:12, 83:3, 85:8, 103:7, 103:24, 105:2, 107:23, 108:8, 116:10, 116:11
**sensed** [1] - 7:11
**sensing** [26] - 5:23, 6:3, 6:7, 6:12, 6:18, 6:25, 7:2, 7:15, 8:3,

9:10, 11:9, 11:12, 11:15, 12:9, 13:11, 13:13, 13:15, 13:21, 14:3, 14:7, 14:9, 14:10, 14:13, 15:5, 16:24
**sensor** [8] - 6:12, 6:14, 7:9, 12:20, 15:4, 15:6, 15:7, 90:21
**sensors** [5] - 6:8, 6:10, 9:9, 9:12, 9:24
**sentence** [2] - 64:6, 106:11
**separate** [5] - 17:6, 44:4, 48:25, 60:12, 62:2
**separately** [1] - 17:12
**September** [1] - 1:9
**session** [1] - 2:16
**set** [3] - 84:2, 112:20, 113:9
**SHAW** [1] - 2:3
**Shaw** [1] - 3:6
**shift** [14] - 106:8, 106:16, 107:25, 109:24, 110:2, 110:4, 110:9, 110:12, 110:13, 110:16, 110:17, 110:21, 111:18
**shifted** [1] - 106:3
**shifting** [6] - 76:19, 105:23, 108:7, 109:15, 111:5, 113:20
**shifts** [3] - 106:1, 106:14, 110:24
**short** [1] - 96:6
**show** [14] - 22:17, 26:15, 28:8, 30:10, 42:23, 63:18, 63:25, 67:2, 75:16, 87:18, 100:7, 100:25, 104:12, 107:13
**showed** [3] - 26:10, 27:8, 78:13
**showing** [7] - 43:7, 67:4, 68:18, 87:19, 100:23, 101:1, 103:1
**shown** [3] - 36:1, 43:19, 44:18
**shows** [2] - 78:1, 98:17
**side** [18] - 38:15, 55:20, 74:4, 75:7, 101:18, 115:17, 115:24, 116:1, 116:4, 116:6, 116:7, 116:12, 117:8,

117:10, 117:12, 117:14, 119:5

**side's** [1] - 8:13
**significant** [1] - 8:17
**similarly** [1] - 39:24
**simpler** [1] - 24:4
**single** [5] - 28:16, 29:13, 29:23, 119:7, 119:8
**singular** [1] - 36:4
**situation** [35] - 18:15, 22:17, 28:7, 31:17, 31:24, 33:8, 33:11, 33:14, 33:17, 34:3, 34:5, 35:11, 35:12, 35:17, 36:17, 38:19, 42:12, 42:21, 51:20, 52:12, 52:22, 70:19, 86:13, 86:14, 87:5, 92:4, 93:21, 96:17, 99:16, 100:15, 101:5, 101:7, 105:17, 112:10, 113:2
**situations** [7] - 4:7, 27:23, 36:15, 38:8, 38:10, 52:19, 96:3
**six** [1] - 87:15
**skill** [2] - 68:16, 116:22
**slide** [28] - 8:2, 8:7, 18:17, 19:6, 27:1, 28:19, 29:5, 35:8, 43:1, 43:18, 50:25, 52:6, 75:9, 75:20, 75:22, 76:4, 86:3, 87:14, 91:1, 97:25, 99:19, 100:8, 104:6, 110:16, 111:20, 112:23, 113:14, 115:18
**slides** [5] - 20:3, 41:13, 42:4, 55:22, 104:5
**slight** [2] - 79:15, 80:23
**slip** [3] - 8:1, 8:2, 8:17
**smooth** [4] - 27:2, 27:14, 37:17, 48:9
**sold** [1] - 9:5
**solid** [1] - 21:3
**someone** [1] - 62:4
**someplace** [1] - 18:7
**sometimes** [13] - 7:12, 10:6, 23:4, 24:8, 24:12, 25:10, 25:18, 30:7, 30:8, 36:16, 36:17
**somewhat** [1] - 104:9
**somewhere** [1] -

105:16
**sorry** [7] - 48:12, 66:9, 77:6, 92:8, 104:17, 107:16, 109:13
**sort** [11] - 3:12, 12:3, 12:25, 16:24, 42:21, 43:21, 45:17, 47:25, 78:24, 79:18, 90:14
**sorts** [1] - 67:1
**sound** [3] - 56:23, 59:12, 66:12
**sounds** [3] - 58:18, 60:24, 92:21
**source** [1] - 14:18
**space** [6] - 58:16, 61:4, 61:24, 66:9, 75:3, 118:24
**spatial** [6] - 56:6, 61:4, 62:8, 63:14, 64:8, 64:25
**spec** [21] - 18:12, 21:10, 26:22, 27:5, 27:7, 32:1, 32:9, 33:14, 35:4, 37:2, 51:13, 52:7, 93:19, 98:16, 98:17, 98:18, 98:24, 99:8, 99:24, 100:20, 100:22
**special** [1] - 110:1
**specific** [16] - 4:14, 31:24, 39:6, 45:16, 46:17, 61:23, 62:8, 95:3, 95:9, 100:15, 100:20, 101:24, 101:25, 104:2, 112:4, 112:10
**specifically** [10] - 20:24, 30:15, 35:19, 45:20, 46:8, 51:23, 52:23, 103:5, 106:2, 106:11
**specification** [42] - 15:4, 16:23, 46:4, 46:23, 47:20, 48:18, 49:24, 53:10, 53:17, 54:21, 54:22, 54:23, 61:17, 61:18, 61:22, 63:24, 64:1, 64:5, 79:19, 79:22, 88:1, 93:7, 94:3, 94:8, 100:24, 101:2, 102:1, 102:3, 102:10, 102:16, 103:2, 103:6, 103:8, 106:2, 106:20, 110:6, 110:20, 111:7, 112:22, 116:21, 117:15
**specified** [2] - 82:13, 85:12

**specifies** [2] - 31:15, 51:14
**specify** [1] - 36:21
**speed** [3] - 18:24, 61:19, 67:17
**spend** [1] - 3:18
**square** [1] - 59:16
**stability** [3] - 87:4, 87:12, 103:11
**stable** [1] - 87:9
**stair** [4] - 94:21, 115:6, 115:22, 116:8
**staircase** [16] - 90:20, 90:24, 91:8, 91:21, 93:17, 94:6, 94:10, 94:24, 95:6, 95:14, 95:16, 95:19, 95:25, 96:1, 96:7
**stairs** [30] - 91:11, 91:13, 91:15, 91:23, 92:6, 92:7, 93:3, 93:5, 93:8, 93:12, 93:24, 94:18, 94:22, 95:1, 95:20, 95:22, 95:23, 95:24, 96:4, 96:8, 98:8, 101:13, 115:7, 115:8, 116:9, 116:12, 116:25
**stance** [43] - 9:17, 25:25, 32:13, 40:4, 47:21, 52:1, 69:24, 72:4, 72:15, 105:21, 105:24, 106:10, 110:2, 111:15, 112:2, 112:4, 112:5, 112:6, 112:8, 112:9, 112:13, 112:14, 112:15, 112:17, 112:18, 112:20, 113:5, 113:6, 113:7, 113:8, 113:17, 113:18, 114:1, 114:4, 114:5, 114:6, 114:9, 114:17, 114:18, 114:19
**stand** [1] - 78:15
**standing** [2] - 17:20, 40:14
**start** [13] - 3:16, 10:15, 38:17, 45:25, 55:14, 56:11, 59:5, 66:2, 75:8, 97:19, 97:20, 99:20, 113:13
**started** [1] - 45:25
**starting** [6] - 53:15, 58:9, 64:6, 78:7, 79:11, 96:2
**starts** [5] - 54:11, 55:18, 71:18, 81:17, 90:8

**state** [230] - 4:23, 4:24, 4:25, 17:16, 17:23, 17:24, 17:25, 18:1, 18:2, 18:6, 18:8, 18:11, 18:13, 18:17, 18:19, 19:8, 19:9, 19:16, 19:22, 21:12, 21:18, 22:25, 24:24, 25:5, 25:11, 25:14, 25:18, 25:24, 25:25, 26:8, 26:11, 26:17, 26:19, 26:21, 26:22, 27:3, 27:13, 27:16, 27:21, 27:25, 28:4, 28:9, 28:10, 28:11, 28:12, 28:14, 28:15, 28:16, 28:25, 29:18, 29:19, 29:20, 29:25, 30:3, 30:5, 30:6, 30:15, 30:19, 30:24, 30:25, 31:1, 31:16, 31:25, 32:3, 32:5, 32:13, 32:20, 32:22, 32:23, 33:1, 33:3, 33:5, 33:6, 33:8, 33:9, 33:10, 33:13, 33:24, 33:25, 34:3, 34:6, 34:7, 34:17, 34:18, 34:19, 34:20, 35:3, 35:5, 35:6, 35:7, 35:9, 35:11, 35:13, 35:14, 35:19, 35:20, 36:1, 36:6, 36:19, 36:20, 36:24, 37:3, 37:8, 37:16, 37:17, 37:20, 38:7, 38:9, 38:11, 38:19, 39:3, 39:9, 39:13, 39:14, 39:18, 39:22, 39:24, 39:25, 40:4, 40:12, 40:13, 40:16, 40:23, 40:25, 41:1, 41:24, 42:1, 43:5, 43:22, 43:23, 44:1, 44:2, 44:3, 44:18, 44:21, 44:22, 45:7, 45:8, 45:12, 45:13, 45:14, 45:20, 45:21, 46:8, 46:12, 46:15, 46:16, 46:21, 46:24, 46:25, 47:1, 47:5, 47:11, 47:21, 47:23, 47:25, 48:8, 48:12, 48:17, 49:2, 49:3, 49:10, 49:20, 49:25, 50:1, 50:6, 50:12, 50:13, 50:15, 51:3, 51:4, 51:6, 51:9, 51:12, 51:14, 51:15, 51:17, 51:23, 51:25, 52:1, 52:10, 52:12,

52:14, 52:16, 52:17, 52:18, 52:20, 52:21, 52:24, 53:7, 66:11, 69:23, 69:24, 72:4, 72:15, 72:16, 72:17, 72:20, 74:13, 74:15, 82:24, 89:17
**statement** [2] - 96:2, 103:1
**STATES** [1] - 1:1
**states** [22] - 26:15, 27:23, 37:5, 37:11, 39:20, 40:1, 41:1, 44:4, 44:15, 44:24, 44:25, 45:10, 45:20, 45:24, 46:2, 46:4, 46:6, 46:22, 47:19, 47:20, 49:22, 50:2
**States** [1] - 1:15
**stenographic** [1] - 119:22
**step** [148] - 4:25, 15:1, 15:3, 24:18, 25:3, 27:4, 27:11, 27:16, 27:20, 27:22, 27:25, 28:4, 28:9, 28:14, 28:16, 28:22, 29:17, 29:19, 29:23, 29:25, 30:3, 30:6, 30:14, 30:19, 30:23, 30:25, 31:16, 31:18, 32:23, 33:1, 33:9, 33:10, 33:13, 33:15, 33:24, 33:25, 34:3, 34:7, 34:14, 34:15, 34:16, 34:17, 34:18, 34:19, 35:7, 35:9, 35:13, 35:20, 36:6, 36:20, 37:19, 37:20, 37:24, 38:1, 38:6, 38:7, 38:9, 38:19, 39:25, 40:25, 43:22, 44:1, 44:3, 44:21, 45:7, 45:13, 45:21, 46:8, 46:16, 46:24, 47:1, 47:4, 47:11, 47:25, 48:10, 48:17, 49:3, 49:20, 50:5, 50:6, 50:13, 50:15, 51:3, 51:9, 51:12, 51:14, 51:23, 52:10, 52:12, 52:14, 52:16, 52:17, 52:18, 52:21, 52:24, 54:2, 54:7, 54:10, 54:20, 55:14, 56:4, 56:11, 57:17, 61:7, 61:17, 63:2, 63:9, 64:22, 65:14, 66:3, 66:4, 66:5, 66:7, 66:23, 67:24, 72:8,

74:5, 74:7, 75:25,
76:1, 76:10, 76:11,
81:10, 82:13, 92:13,
93:9, 105:6, 105:12,
105:22, 106:12,
106:14, 106:15,
106:22, 106:24,
107:12, 107:23,
107:25, 108:15,
109:15, 110:22,
110:25, 111:1,
111:3, 111:6
**stepdown** [1] - 27:3
**stepping** [5] - 24:8,
39:25, 40:14, 40:24,
108:21
**steps** [11] - 25:6, 31:9,
32:1, 33:11, 47:18,
66:17, 72:18, 73:18,
74:21, 88:6, 107:12
**Steve** [1] - 2:23
**STEVEN** [1] - 1:23
**sticks** [1] - 100:11
**still** [16] - 14:7, 21:17,
24:1, 33:20, 33:22,
34:16, 36:22, 40:10,
43:13, 45:17, 47:4,
64:25, 68:4, 81:3,
92:7, 95:22
**stopping** [1] - 24:13
**stops** [1] - 71:18
**straight** [1] - 31:10
**Street** [1] - 1:12
**stretch** [1] - 16:14
**strong** [1] - 75:13
**stuff** [6] - 9:23, 22:14,
56:1, 67:6, 68:18,
113:14
**subheading** [1] -
53:15
**submit** [1] - 118:24
**suggest** [4] - 17:5,
75:22, 79:1
**suggested** [1] - 83:12
**suggesting** [1] - 82:2
**suggestion** [1] - 36:11
**SULLIVAN** [1] - 1:22
**summary** [1] - 118:1
**support** [4] - 44:1,
58:6, 58:8, 79:5
**supports** [1] - 44:14
**supposed** [3] - 15:15,
55:10, 55:23
**surface** [50] - 3:25,
5:4, 5:8, 16:2, 16:7,
16:10, 18:19, 21:25,
25:16, 25:19, 25:21,
25:24, 27:18, 27:21,
28:15, 29:1, 29:2,
32:15, 32:18, 32:22,

34:13, 34:21, 35:10,
37:22, 38:2, 38:4,
38:6, 42:18, 42:20,
43:10, 43:13, 43:14,
43:16, 46:13, 46:15,
47:22, 48:15, 50:4,
51:7, 51:10, 51:16,
57:24, 71:10, 86:2,
86:24, 87:4, 111:9,
111:10
**surprise** [1] - 26:25
**surrounding** [1] -
108:16
**swing** [292] - 4:23,
4:24, 5:4, 5:6, 7:6,
9:15, 17:24, 17:25,
18:2, 18:5, 18:8,
18:11, 18:13, 18:17,
18:19, 19:8, 19:9,
19:12, 19:13, 19:15,
19:16, 19:19, 19:20,
19:22, 19:23, 19:24,
20:10, 20:11, 20:15,
20:21, 20:23, 20:24,
21:1, 21:2, 21:6,
21:11, 21:12, 21:13,
21:15, 21:17, 21:18,
21:20, 22:2, 22:7,
22:10, 22:18, 22:20,
22:23, 22:25, 23:1,
23:3, 23:5, 23:6,
23:8, 23:10, 23:12,
23:16, 23:17, 23:25,
24:1, 24:6, 24:10,
24:12, 24:24, 25:1,
25:5, 25:11, 25:14,
25:16, 25:18, 25:24,
26:8, 26:11, 26:17,
26:22, 27:3, 27:13,
27:15, 27:16, 27:21,
28:10, 28:11, 28:12,
28:16, 29:19, 30:5,
30:20, 30:24, 31:1,
31:17, 31:19, 31:20,
31:25, 32:2, 32:3,
32:5, 32:12, 32:16,
32:22, 33:2, 33:5,
33:6, 33:8, 33:13,
33:24, 33:25, 34:4,
34:6, 34:11, 34:15,
35:3, 35:4, 35:5,
35:6, 35:11, 35:13,
35:19, 36:5, 36:18,
36:24, 37:2, 37:8,
37:16, 37:18, 37:20,
38:9, 38:11, 39:22,
40:23, 40:25, 41:24,
41:25, 42:11, 43:5,
43:21, 43:23, 44:1,
44:3, 44:21, 45:7,
45:14, 45:21, 46:12,

46:15, 47:8, 48:5,
48:8, 48:9, 48:12,
49:2, 49:9, 49:11,
49:12, 49:15, 49:19,
49:20, 51:4, 51:5,
51:12, 51:14, 51:15,
51:25, 52:11, 52:13,
52:20, 52:24, 53:21,
53:24, 54:1, 54:3,
54:5, 54:6, 54:10,
54:17, 55:8, 55:9,
55:24, 56:17, 56:23,
57:7, 58:10, 58:14,
59:1, 59:2, 59:4,
59:5, 59:18, 60:8,
60:13, 60:17, 61:2,
61:13, 61:14, 62:11,
62:15, 63:20, 63:21,
64:5, 64:14, 64:16,
64:18, 65:15, 65:16,
65:19, 66:11, 66:17,
66:22, 68:17, 68:22,
69:1, 69:2, 69:11,
69:23, 69:24, 71:4,
71:14, 72:4, 72:15,
72:16, 72:17, 72:20,
72:21, 74:12, 74:13,
74:15, 75:21, 75:23,
75:24, 76:9, 76:11,
77:16, 77:20, 77:24,
78:1, 78:12, 78:13,
78:18, 78:22, 79:8,
79:9, 79:11, 80:3,
80:4, 80:9, 81:9,
82:9, 82:15, 82:17,
82:18, 82:19, 82:20,
82:24, 84:7, 85:6,
89:17, 98:4, 100:9,
103:16, 105:9,
105:21, 105:23,
105:24, 106:8,
106:9, 106:13,
106:15, 108:4,
108:6, 108:7,
109:15, 110:2,
111:7, 111:12,
111:14, 111:15,
111:16
**swinging** [22] - 9:15,
18:3, 24:11, 24:14,
24:15, 24:17, 24:25,
27:4, 27:10, 27:20,
34:23, 35:1, 37:24,
39:23, 50:9, 98:20,
98:22, 99:9, 99:17,
101:11, 111:8,
111:16
**swings** [4] - 18:9,
26:19, 59:8, 63:22
**switch** [4] - 26:21,
41:19, 42:2, 42:3

**synchronization** [1] -
87:19
**system** [1] - 96:3

## T

**table** [1] - 2:23
**talks** [26] - 4:19, 4:21,
7:7, 15:4, 20:11,
25:10, 26:4, 30:14,
32:2, 32:3, 35:4,
36:14, 37:2, 41:5,
46:7, 48:22, 51:19,
59:4, 67:7, 76:1,
88:2, 108:3, 109:25,
112:14, 115:7
**target** [189] - 5:4, 5:6,
7:6, 9:15, 19:13,
19:19, 19:20, 19:23,
19:24, 20:10, 20:11,
20:15, 20:21, 20:23,
20:24, 21:1, 21:2,
21:6, 21:11, 21:13,
21:15, 21:17, 21:20,
22:4, 22:8, 22:18,
22:20, 22:24, 23:3,
23:4, 23:5, 23:7,
23:9, 23:12, 23:16,
24:1, 24:10, 24:12,
25:1, 25:15, 29:3,
29:24, 30:20, 31:16,
31:19, 31:20, 32:2,
32:16, 34:4, 34:11,
34:15, 49:20, 52:11,
52:13, 53:21, 53:24,
54:1, 54:3, 54:5,
54:6, 54:10, 55:3,
55:6, 55:8, 55:9,
55:11, 55:12, 55:13,
55:16, 55:25, 56:8,
56:9, 56:10, 56:16,
56:22, 57:7, 57:8,
57:9, 58:10, 58:14,
58:17, 58:18, 58:19,
58:24, 59:1, 59:2,
59:3, 59:7, 59:18,
59:19, 59:25, 60:8,
60:13, 60:17, 60:19,
61:10, 61:13, 62:1,
62:4, 62:5, 62:10,
62:14, 62:16, 62:21,
63:20, 64:2, 64:5,
64:11, 64:12, 64:14,
64:16, 64:18, 65:5,
65:6, 65:7, 65:9,
65:10, 66:12, 66:15,
66:17, 66:22, 67:3,
68:17, 68:22, 69:1,
69:2, 69:11, 69:24,
71:3, 71:13, 72:10,
72:11, 72:21, 74:13,

74:15, 74:25, 75:21,
75:23, 75:24, 76:9,
76:11, 76:24, 77:16,
77:19, 77:24, 78:1,
78:13, 78:18, 78:22,
78:25, 79:8, 80:1,
80:3, 80:4, 80:9,
81:12, 81:16, 84:7,
84:11, 84:12, 84:18,
85:5, 105:10,
105:11, 105:15,
106:5, 106:12,
106:14, 106:17,
106:19, 106:22,
106:25, 107:19,
109:23, 110:6,
110:8, 110:21,
117:24
**technically** [2] - 92:6,
94:10
**technological** [1] -
93:14
**term** [32] - 3:11, 3:13,
5:20, 10:18, 11:21,
17:4, 17:8, 50:17,
63:6, 64:21, 75:19,
76:13, 85:14, 85:20,
85:25, 88:12, 90:19,
91:6, 97:7, 97:8,
102:2, 104:1, 105:4,
105:5, 111:19,
114:24, 114:25,
115:2, 117:22
**terms** [21] - 4:23, 9:4,
17:11, 18:24, 19:21,
22:16, 32:11, 36:16,
44:9, 44:12, 50:19,
51:3, 53:25, 54:5,
65:9, 68:6, 71:13,
71:22, 79:22, 86:8,
112:11
**terrain** [3] - 4:8, 4:9,
43:21
**testimony** [2] - 85:17,
118:15
**text** [1] - 48:11
**THE** [269] - 1:1, 1:1,
1:15, 2:18, 3:3, 3:9,
3:20, 5:25, 6:10,
7:18, 7:20, 8:6, 8:25,
9:5, 10:11, 10:20,
11:11, 11:17, 11:25,
12:4, 12:16, 13:1,
13:4, 13:10, 13:17,
13:20, 13:25, 14:6,
14:10, 14:15, 14:23,
15:15, 15:19, 16:8,
16:12, 17:7, 17:10,
17:14, 17:19, 18:1,
18:5, 18:22, 19:3,

19:11, 20:3, 20:7, 20:15, 20:19, 21:2, 21:5, 21:8, 22:2, 22:10, 22:13, 22:22, 23:7, 23:11, 23:15, 23:19, 23:22, 23:25, 24:16, 28:12, 28:18, 28:21, 28:25, 29:5, 29:8, 29:11, 29:13, 29:17, 29:21, 30:3, 30:9, 30:12, 31:10, 32:25, 35:1, 35:21, 35:24, 36:8, 36:10, 38:3, 38:14, 39:2, 39:9, 39:12, 39:17, 40:4, 40:6, 40:8, 40:11, 40:20, 41:9, 41:12, 41:15, 42:5, 42:15, 42:19, 42:23, 43:4, 43:9, 44:6, 44:11, 44:16, 45:1, 45:6, 45:11, 45:22, 47:12, 47:16, 50:21, 50:24, 53:1, 53:4, 53:19, 53:23, 55:1, 55:16, 56:8, 56:12, 56:22, 57:3, 57:12, 57:19, 57:22, 58:2, 58:4, 58:17, 59:1, 59:7, 59:11, 59:23, 60:4, 61:9, 61:25, 62:10, 62:24, 63:3, 63:15, 63:18, 63:25, 64:3, 64:9, 65:5, 65:15, 65:18, 65:21, 65:23, 66:12, 67:2, 67:8, 67:13, 67:21, 68:12, 69:5, 69:8, 69:11, 70:6, 70:22, 71:2, 71:12, 71:16, 71:21, 72:9, 72:13, 72:20, 73:9, 73:22, 74:2, 74:8, 74:11, 74:25, 75:7, 75:12, 76:6, 76:20, 76:25, 77:6, 77:11, 77:14, 77:19, 78:4, 78:10, 78:20, 80:11, 80:16, 80:19, 81:5, 81:11, 81:18, 82:1, 82:14, 82:25, 83:5, 83:15, 84:19, 85:14, 85:16, 85:20, 85:24, 87:15, 88:10, 88:14, 89:4, 89:11, 90:3, 90:10, 90:15, 91:4, 91:13, 91:18, 92:2, 92:8, 92:11, 92:14, 92:19, 92:23, 94:12, 97:6, 97:14, 97:19, 99:3, 99:20, 100:1, 100:6,

100:11, 100:17, 100:22, 101:14, 101:17, 102:13, 102:16, 102:21, 102:25, 104:3, 104:7, 104:17, 105:3, 105:14, 107:3, 107:13, 107:16, 108:8, 108:24, 109:2, 109:9, 109:12, 109:14, 110:11, 110:23, 111:7, 111:19, 111:21, 111:24, 112:24, 113:11, 113:24, 114:13, 114:23, 116:2, 116:17, 116:22, 117:23, 118:11, 118:14, 119:8, 119:11, 119:14
theme [1] - 14:21
themselves [3] - 16:16, 94:9, 96:4
therefore [2] - 91:23, 96:23
they've [1] - 37:7
thinking [3] - 40:13, 60:25, 71:3
third [41] - 5:14, 17:11, 86:1, 86:4, 86:6, 86:19, 86:23, 86:24, 87:3, 87:6, 87:11, 88:5, 88:19, 88:21, 88:23, 89:1, 89:2, 89:14, 89:15, 89:16, 89:17, 89:19, 89:24, 112:1, 112:4, 112:6, 112:9, 112:14, 112:16, 112:18, 113:5, 113:9, 113:18, 114:1, 114:5, 114:18
thirty [1] - 116:18
three [16] - 4:12, 5:11, 5:17, 32:11, 46:22, 48:5, 63:9, 63:11, 65:11, 66:7, 66:21, 72:22, 73:2, 88:21, 111:21
threshold [1] - 8:16
throughout [5] - 6:9, 7:10, 17:4, 74:20, 76:18
throw [1] - 40:11
throwing [1] - 40:15
Thursday [1] - 1:9
tight [1] - 88:11
timed [6] - 37:5,

38:23, 38:24, 40:2, 53:12, 73:7
timer [3] - 36:2, 44:19, 45:17
timing [4] - 3:17, 5:7, 85:8, 119:9
title [1] - 69:16
today [3] - 3:7, 77:4, 77:12
together [3] - 3:12, 3:13, 17:12
top [10] - 31:23, 75:20, 76:4, 91:13, 91:15, 92:5, 92:6, 93:12, 93:17, 112:22
topple [1] - 87:8
total [1] - 119:6
totally [1] - 82:5
touch [23] - 26:20, 52:21, 86:16, 105:5, 105:10, 105:12, 105:22, 106:13, 107:21, 108:9, 108:12, 109:5, 109:6, 109:15, 109:17, 110:25, 111:1, 111:3, 111:6, 111:11, 111:13, 111:18
touched [4] - 102:7, 111:5, 111:11, 111:17
touches [7] - 88:1, 105:9, 108:4, 108:6, 108:10, 108:13, 108:14
touching [3] - 51:13, 51:17, 107:22
toward [5] - 27:3, 27:15, 34:24, 37:18, 37:19
towards [10] - 29:24, 31:20, 34:23, 37:25, 48:10, 50:10, 117:2, 117:4, 117:7, 117:21
traces [2] - 102:2, 102:3
trajectory [236] - 5:5, 5:6, 5:9, 7:6, 9:15, 18:13, 18:16, 19:9, 19:12, 19:13, 19:15, 19:19, 19:20, 19:23, 19:25, 20:1, 20:10, 20:11, 20:15, 20:21, 20:23, 20:25, 21:1, 21:2, 21:11, 21:13, 21:15, 21:17, 21:20, 22:1, 22:2, 22:5, 22:7, 22:8, 22:10, 22:19, 22:20, 22:23,

23:1, 23:3, 23:5, 23:6, 23:8, 23:10, 23:12, 23:13, 23:16, 23:17, 24:1, 24:6, 24:7, 24:9, 24:10, 24:12, 25:1, 25:6, 25:15, 25:16, 25:20, 25:23, 27:2, 27:14, 27:15, 27:17, 28:3, 29:3, 29:24, 30:20, 31:8, 31:17, 31:19, 31:20, 31:25, 32:2, 32:5, 32:8, 32:16, 32:24, 33:6, 33:11, 33:20, 34:4, 34:6, 34:11, 34:15, 36:22, 37:3, 37:17, 37:18, 37:21, 37:25, 38:2, 38:12, 41:21, 42:6, 42:8, 42:10, 42:22, 43:6, 43:19, 43:22, 46:10, 47:8, 47:10, 48:9, 48:10, 48:13, 49:11, 49:12, 49:15, 49:20, 50:10, 51:6, 52:11, 52:13, 53:22, 53:24, 54:1, 54:4, 54:5, 54:6, 54:10, 54:19, 55:3, 55:8, 55:16, 55:21, 55:25, 56:15, 56:16, 56:22, 57:7, 57:9, 57:10, 57:15, 57:16, 57:19, 57:23, 58:1, 58:10, 58:14, 58:15, 58:24, 59:1, 59:3, 59:24, 59:25, 60:9, 60:13, 60:17, 60:23, 60:24, 61:5, 61:21, 62:1, 62:11, 62:14, 63:4, 63:20, 64:2, 64:5, 64:10, 64:14, 64:16, 64:18, 64:23, 65:5, 65:6, 65:9, 65:10, 66:18, 66:22, 67:2, 67:3, 67:14, 67:21, 67:23, 68:2, 68:17, 68:22, 69:1, 69:2, 69:12, 69:13, 69:25, 70:4, 71:3, 71:13, 72:10, 72:12, 72:21, 73:3, 73:15, 73:16, 75:21, 75:23, 75:24, 76:9, 76:11, 76:24, 77:16, 77:19, 77:24, 78:1, 78:14, 78:18, 78:22, 78:24, 79:4, 79:9, 80:1, 80:3, 80:4, 80:9, 81:16, 82:18, 82:19, 82:24, 84:5, 84:7, 84:11,

85:6, 117:24
transcript [1] - 119:22
transitioning [1] - 50:1
transitions [2] - 36:1, 44:18
traversal [2] - 115:7, 115:23
traverse [3] - 99:18, 115:8, 116:11
traversing [9] - 90:20, 90:24, 91:8, 94:18, 94:22, 94:23, 98:8, 101:12, 115:5
tread [1] - 115:10
treads [1] - 116:9
treat [1] - 94:8
treats [1] - 94:4
trial [1] - 12:19
triangle [1] - 59:16
tries [2] - 54:14, 96:2
trip [34] - 97:9, 97:11, 98:1, 98:3, 98:6, 98:11, 98:12, 98:13, 98:24, 98:25, 99:2, 99:8, 99:11, 99:12, 99:13, 99:15, 100:9, 100:19, 101:2, 101:10, 102:2, 102:13, 102:17, 102:18, 103:2, 103:14, 103:16, 103:19, 103:20, 103:21, 104:8, 104:13, 104:21, 104:23
trips [1] - 99:16
trot [1] - 84:4
true [7] - 8:16, 14:17, 43:24, 47:3, 91:4, 114:13, 119:22
truly [1] - 55:7
truncated [1] - 97:4
truth [2] - 7:2, 73:13
try [10] - 15:11, 15:21, 34:8, 54:1, 54:16, 57:14, 60:22, 101:4, 119:14, 119:15
trying [11] - 24:9, 25:1, 28:8, 29:22, 37:10, 40:11, 61:1, 70:2, 71:25, 100:18, 101:24
TUNNELL [1] - 1:19
turn [2] - 93:22, 94:5
tutorial [1] - 93:14
two [54] - 3:23, 9:18, 17:5, 18:12, 21:11, 25:17, 30:7, 35:3, 41:1, 41:6, 42:25,

43:4, 44:4, 44:9, 44:15, 44:24, 44:25, 45:19, 45:24, 46:1, 46:3, 48:25, 53:25, 54:11, 59:6, 59:10, 59:22, 61:2, 62:2, 64:23, 65:3, 66:4, 66:8, 66:22, 76:17, 76:20, 76:25, 77:1, 87:7, 90:22, 95:5, 95:7, 96:9, 105:18, 105:25, 113:3, 113:11, 113:12, 113:15, 114:9, 116:20, 117:7, 117:17

**two-page** [1] - 3:23
**type** [5] - 12:23, 15:5, 17:1, 105:21, 118:9
**types** [6] - 17:6, 28:8, 46:5, 46:6, 72:7, 94:1
**typically** [1] - 3:11

# U

**U.S** [1] - 119:25
**ultimately** [1] - 114:21
**unclear** [7] - 88:17, 88:21, 88:22, 89:1, 89:20, 89:24, 89:25
**under** [6] - 41:23, 46:20, 47:2, 53:14, 55:24, 84:19
**underlined** [1] - 8:7
**understandable** [2] - 34:5, 36:21
**understood** [4] - 6:2, 62:15, 76:17, 99:23
**undisturbed** [2] - 35:13, 53:18
**uneven** [3] - 4:9, 43:15, 43:21
**unexpected** [2] - 43:21, 47:9
**unexplained** [1] - 59:25
**UNITED** [1] - 1:1
**United** [1] - 1:15
**unless** [10] - 17:9, 50:18, 58:20, 75:15, 84:6, 88:8, 104:2, 107:1, 108:25, 117:22
**unlike** [1] - 71:7
**unstable** [11] - 98:6, 98:10, 98:11, 98:15, 99:14, 100:3, 100:4, 100:5, 100:13, 100:14

**up** [65] - 4:5, 4:8, 4:11, 4:12, 5:1, 5:11, 6:8, 8:8, 8:22, 11:7, 15:16, 15:21, 17:13, 17:21, 18:24, 23:15, 24:13, 26:20, 38:8, 39:24, 41:6, 41:15, 41:17, 41:22, 42:1, 47:15, 47:23, 47:24, 48:6, 50:25, 54:9, 57:23, 61:19, 68:4, 69:9, 69:18, 70:5, 73:1, 75:5, 75:10, 75:15, 78:15, 82:8, 82:25, 86:17, 86:22, 86:25, 87:6, 87:7, 93:16, 93:23, 94:5, 98:8, 98:23, 101:6, 101:12, 103:15, 104:6, 106:18, 112:12, 115:20, 116:24, 118:23
**uphill** [3] - 20:4, 23:19, 23:23
**upper** [7] - 112:7, 112:8, 114:2, 117:3, 117:5, 117:8, 117:21
**URQUHART** [1] - 1:22
**useful** [2] - 19:16, 68:7
**uses** [1] - 19:13

# V

**valid** [1] - 12:7
**validity** [3] - 11:20, 11:24, 63:6
**variables** [1] - 67:1
**variation** [2] - 79:15, 80:23
**various** [1] - 50:2
**velocity** [10] - 46:11, 46:18, 47:25, 48:2, 48:7, 48:20, 48:23, 58:13, 61:19, 67:9
**verbatim** [4] - 76:5, 79:14, 79:22, 80:22
**versa** [1] - 93:12
**versus** [3] - 6:3, 11:21, 116:25
**vice** [1] - 93:12
**view** [2] - 43:16, 94:7
**viewing** [1] - 9:19

# W

**wait** [1] - 47:12
**waiting** [1] - 17:20
**walk** [3] - 47:19, 84:3, 84:14

**walking** [31] - 4:1, 4:4, 17:21, 20:14, 21:9, 21:24, 25:19, 32:14, 33:18, 35:12, 42:9, 57:17, 68:1, 69:18, 70:10, 70:16, 70:17, 72:5, 72:6, 72:18, 83:7, 84:9, 84:13, 84:14, 84:15, 85:6
**walks** [2] - 3:24, 83:25
**wall** [13] - 91:21, 94:3, 94:4, 94:8, 96:11, 96:13, 96:14, 96:15, 96:18, 96:19, 96:23, 97:1
**walls** [3] - 94:9, 96:21, 97:3
**wandering** [1] - 58:22
**wants** [3] - 62:21, 64:19, 101:11
**ways** [1] - 117:7
**week** [4] - 118:1, 118:2, 118:3, 118:7
**weigh** [1] - 14:5
**weird** [1] - 51:11
**whereas** [1] - 18:18
**wherein** [4] - 15:24, 76:1, 79:14
**whoa** [1] - 110:13
**whole** [16] - 14:22, 22:6, 33:7, 34:19, 35:13, 72:3, 75:21, 76:1, 77:24, 78:2, 78:13, 78:18, 81:19, 82:17, 107:22
**wholly** [1] - 27:5
**width** [1] - 67:5
**Wilmington** [1] - 1:12
**wind** [1] - 11:7
**winds** [1] - 23:15
**wires** [1] - 91:22
**wonder** [1] - 97:20
**word** [15] - 6:18, 10:19, 60:24, 64:10, 65:12, 66:12, 66:13, 67:3, 67:13, 79:3, 83:15, 91:10, 94:18, 105:11, 114:5
**wording** [1] - 80:23
**words** [14] - 8:8, 24:23, 38:5, 55:2, 60:9, 64:13, 74:2, 75:13, 75:17, 76:15, 78:5, 102:22, 106:13, 107:19
**works** [4] - 101:21, 104:12, 107:6, 119:1
**world** [5] - 57:6, 68:7, 68:16, 70:2, 70:20

# Z

**zero** [2] - 64:23, 66:18

# Exhibit 15

# Merriam-Webster's Collegiate® Dictionary

## ELEVENTH EDITION



## Merriam-Webster, Incorporated
### Springfield, Massachusetts, U.S.A.



## A GENUINE MERRIAM-WEBSTER

The name *Webster* alone is no guarantee of excellence. It is used by a number of publishers and may serve mainly to mislead an unwary buyer.

*Merriam-Webster*™ is the name you should look for when you consider the purchase of dictionaries or other fine reference books. It carries the reputation of a company that has been publishing since 1831 and is your assurance of quality and authority.

Copyright © 2014 by Merriam-Webster, Incorporated

Library of Congress Cataloging in Publication Data

Merriam-Webster's collegiate dictionary. — Eleventh ed.
          p.     cm.
     Includes index.
     ISBN 978-0-87779-807-1     (Laminated unindexed : alk. paper)
     ISBN 978-0-87779-808-8     (Jacketed hardcover unindexed : alk. paper)
     ISBN 978-0-87779-809-5     (Jacketed hardcover with digital download : alk. paper)
     ISBN 978-0-87779-810-1     (Leatherlook with digital download : alk. paper)
     ISBN 978-0-87779-811-8     (Luxury Leather)
     ISBN 978-0-87779-813-2     (Canadian)
     ISBN 978-0-87779-814-9     (International)
     1. English language—Dictionaries. I. Title: Collegiate dictionary. II. Merriam-
     Webster, Inc.
     PE1628.M36       2003
     423—dc21                                   2003003674
                                                   CIP


Merriam-Webster's Collegiate® Dictionary, Eleventh Edition, principal copyright 2003

COLLEGIATE is a registered trademark of Merriam-Webster, Incorporated

All rights reserved. No part of this book covered by the copyrights hereon may be reproduced or copied in any form or by any means—graphic, electronic, or mechanical, including photocopying, taping, or information storage and retrieval systems—without written permission of the publisher.

Made in the United States of America

19th Printing Quad Graphics Versailles KY December 2014

**1278   tapestried • taros**

**tap·es·tried** \'ta-pə-strēd\ *adj* (1949)  **1** : covered or decorated with or as if with tapestry  **2** : woven or depicted in tapestry

**tap·es·try** \'ta-pə-strē\ *n, pl* **-tries** [ME, modif. of AF *tapicerie, tr. tapit, tapis* carpet, hanging, fr. GK *tapētion*, dim. of *tapēt-, tapēs* carpet] (15c)  **1 a** : a heavy handwoven reversible textile used for hangings, curtains, and upholstery and characterized by complicated pictorial designs  **b** : a nonreversible imitation of tapestry used chiefly for upholstery  **c** : embroidery on canvas resembling woven tapestry <needlepoint ~>  **2** : something resembling tapestry (as in complexity or richness of design) <nature's rich ~>

**tapestry carpet** *n* (1852) : a carpet in which the designs are printed in colors on the threads before the fabric is woven

**ta·pe·tum** \tə-'pē-təm\ *n, pl* **-ta** \-tə\ or **ta·pe·ta** \-'pē-tə\ [NL, fr. L *tapete* carpet, tapestry, fr. Gk *tapēt-, tapēs* carpet] (1713)  **1** : any of various reflective membranous layers or areas esp. of the choroid and retina of the eye  **2** : a layer of nutritive cells that invests the sporogenous tissue in the sporangium of vascular plants

**tape·worm** \'tāp-,wərm\ *n* [fr. its shape] (1706) : any of a class (Cestoda) of bilaterally symmetrical flatworms parasitic esp. in the intestines of vertebrates — called also *cestode*

**tap·hole** \'tap-,hōl\ *n* (1594) : a hole for a tap; *specif* : a hole at or near the bottom of a furnace or ladle through which molten metal, matte, or slag can be tapped

**tap·ho·no·my** \ta-'fä-nə-mē, ta-\ *n* [Gk *taphē* burial + E -*nomy*] (1940) : the study of the processes (as burial, decay, and preservation) that affect animal and plant remains as they become fossilized; *also* : the processes themselves — **taph·o·nom·ic** \,ta-fə-'nä-mik\ *adj* — **ta·pho·o·mist** \tə-'fä-nə-mist, ta-\ *n*

**tap–in** \'tap-,in\ *n* (1948)  **1** : TIP-IN  **2** : a very short easy putt in golf

**tap·i·o·ca** \,ta-pē-'ō-kə\ *n* [Pg, fr. Tupi *tipi'ōka*] (1707)  **1** : a usu. granular preparation of cassava starch used esp. in puddings and as a thickening in liquid food; *also* : a dish (as pudding) containing tapioca <~> : CASSAVA

**ta·pir** \'tā-pər *also* 'tä-,pir *or* tə-'pir\ *n, pl* **tapirs** *also* **tapir** [Pg *tapir, tapira*, fr. Tupi *tapi'ira*] (1774) : any of a genus (*Tapirus*) of herbivorous chiefly nocturnal perissodactyl mammals of tropical America and southeastern Asia from Myanmar to Sumatra that have a heavy sparsely hairy body and the snout and upper lip prolonged into a short flexible proboscis

**tap·is** \'ta-pē, ta-'pē\ *n* [AF — more at TAPESTRY] (15c) *archaic* : a small tapestry used for hangings and floor and table coverings — **on the tapis** : under consideration

**tap–off** \'tap-,ȯf\ *n* (ca. 1932) : ³TIP-OFF

**tap out** *vi* (1939) : to run out of money by betting

**tap pants** *n pl* (1977) : a loose-fitting woman's undergarment of a style similar to shorts formerly worn for tap dancing

**tapped out** *adj* (1950)  **1** : out of money : BROKE  **2** : SPENT, EXHAUSTED <*tapped out* after months on the road>

**tap·et** \'ta-pət\ *n* [irreg. fr. ²*tap*] (1745) : a lever or projection moved by some other piece (as a cam) or intended to tap or touch something else to cause a particular motion

**tapping** *n* (15c) : the act, process, or means by which something is tapped

**tap·pit hen** \'ta-pət-\ *n* [Sc *tappit*, alter. of E *topped*] (1721) *Scot* : a drinking vessel with a knob on the lid

**tap·room** \'tap-,rüm, -,rüm\ *n* (1807) : BARROOM

**tap·root** \-,rüt, -,rut\ *n* [¹*tap*] (1601)  **1** : a primary root that grows vertically downward and gives off small lateral roots  **2** : the central element or position in a line of growth or development

**taps** \'taps\ *n pl but sing or pl in constr* [prob. alter. of earlier *taptoo* tattoo — more at TATTOO] (1824) : the last bugle call at night blown as a signal that lights are to be put out; *also* : a similar call blown at military funerals and memorial services

**tap·ster** \'tap-stər\ *n* (bef. 12c) : BARTENDER

**tap water** *n* (1881) : water as it comes from a tap (as in a home)

**ta·que·ría** \,tä-kə-'rē-ə\ *n* [MexSp, fr. *taco* taco] (1982) : a Mexican restaurant specializing esp. in tacos and burritos

**¹tar** \'tär\ *n* [ME *terr, tarr*, fr. OE *tēoru*; akin to OE *trēow* tree — more at TREE] (bef. 12c)  **1 a** : a dark brown or black bituminous usu. odorous viscous liquid obtained by destructive distillation of organic material (as wood, coal, or peat)  **b** : a substance in some respects resembling tar; *esp* : a condensable residue present in smoke from burning tobacco that contains combustion by-products (as resins, acids, phenols, and essential oils)  **2** [short for *tarpaulin*] : SAILOR

**²tar** *vt* **tarred; tar·ring** (13c)  **1** : to cover with tar  **2** : to defile as if with tar <least *tarred* by the scandal —*Newsweek*>  **— tar and feather** : to smear (a person) with tar and cover with feathers as a punishment or indignity **— tar with the same brush** : to mark or stain with the same fault or characteristic

**³tar** *or* **tarre** \'tär\ *vt* **tarred; tar·ring; tars** *or* **tarres** [ME *terren, tarren*, fr. OE *tyrwan*] (bef. 12c) : to urge to action — usu. used with *on*

**tar·a·did·dle** *or* **tar·ra·did·dle** \,ta-rə-'di-dəl, 'ta-rə-,\ *n* [origin unknown] (ca. 1796)  **1** : FIB  **2** : pretentious nonsense

**Tar·a·hu·ma·ra** \,ta-rə-hü-'mär-ə\ *n, pl* **Tarahumara** *or* **Tarahumaras** [Sp] (1874)  **1** : a member of an American Indian people living in the state of Chihuahua, Mexico  **2** : the Uto-Aztecan language of the Tarahumara people

**tar·an·tel·la** \,ta-rən-'te-lə\ *n* [It, fr. *Taranto*, Italy] (1782) : a lively folk dance of southern Italy in 6/8 time

**tar·ant·ism** \'ta-rən-,ti-zəm\ *n* [NL *tarantismus*, fr. *Taranto*, Italy] (ca. 1656) : a dancing mania or malady of late medieval Europe

**ta·ran·tu·la** \tə-'ran-chə-lə, -tə-lə; -'rant-lə, -'rant-\ *n, pl* **ta·ran·tu·las** *also* **ta·ran·tu·lae** \-,lē\ [ML, fr. OIt *tarantola*, fr. *Taranto*] (1561)  **1** : a European wolf spider (*Lycosa tarantula*) popularly held to be the cause of tarantism  **2** : any of a family (Theraphosidae) of large hairy American spiders that are typically rather sluggish and capable of biting sharply though most forms are not significantly poisonous to humans

**Ta·ras·can** \tə-'ras-kən, -'räs-\ *n* [Sp *tarasco*] (1922)  **1** : a member of an American Indian people of the state of Michoacán, Mexico  **2** : the language of the Tarascan people

**tar baby** *n* [fr. the tar baby that trapped Brer Rabbit in an Uncle Remus story by Joel Chandler Harris] (ca. 1910) : something from which it is nearly impossible to extricate oneself

**tar·boosh** *also* **tar·bush** \tär-'büsh, 'tär-,\ *n* [Ar *ṭarbūsh*] (1702) : a red hat similar to the fez worn esp. by Muslim men

**tar·di·grade** \'tär-də-,grād\ *n* [ultim. fr. L *tardigradus* slow-moving, fr. *tardus* slow + *gradi* to step, go — more at GRADE] (1860) : any of a phylum (Tardigrada) of microscopic invertebrates with four pairs of short legs that live usu. in water or damp moss — called also *water bear*

**tar·di·ly** \'tär-də-lē\ *adv* (ca. 1798)  **1** : in a *tardive* tending toward late development (fr. F, fem. of *tardif*, fr. MF)  **+** *dyskinesia*] (1964) : a neurological disorder characterized by involuntary uncontrollable movements esp. of the mouth, tongue, trunk, and limbs and occurring esp. as a side effect of prolonged use of antipsychotic drugs (as phenothiazine)

**tar·do** \'tär-(,)dō\ *adj* [It, fr. L *tardus*] (ca. 1843) : SLOW — used as a direction in music

**¹tar·dy** \'tär-dē\ *adj* **tar·di·er; -est** [alter. of earlier *tardif*, fr. AF, fr. VL *tardivus*, fr. L *tardus*] (15c)  **1** : moving slowly : SLUGGISH <the ~ pace at which she was obliged to wade —Charles Dickens>  **2** : delayed beyond the expected or proper time : LATE <a ~ arrival> — **tar·di·ness** *n*

**²tardy** *n, pl* **tardies** (1960) : an instance of being tardy (as to a class)

**¹tare** \'ter\ *n* [ME; prob. akin to MD *tarwe* wheat] (14c)  **1 a** : the seed of a vetch  **b** : any of several vetches (esp. *Vicia sativa* and *V. hirsuta*)  **2** : a weed of grain fields esp. of Biblical times that is usu. held to be the darnel  **3** [*f*] : an undesirable element

**²tare** *n* [ME, fr. AF, fr. OIt *tara*, fr. Ar *ṭarḥa*, lit., that which is removed] (15c)  **1** : a deduction from the gross weight of a substance and its container made in allowance for the weight of the container; *also* : the weight of the container  **2** : COUNTERWEIGHT

**³tare** *vt* **tared; tar·ing** (1812) : to ascertain or mark the tare of; *esp* : to weigh so as to determine the tare

**¹targe** \'tärj\ *n* [ME, fr. AF] (14c) : a light shield used esp. by the Scots

**tar·get** \'tär-gət\ *n, often attrib* [ME, fr. MF *targette, targuete*, dim. of *targe* light shield, fr. OF, of Gmc origin; akin to ON *targa* shield] (14c)  **1** : a small round shield  **2 a** : a mark to shoot at  **b** : a target marked by shots fired at it  **c** : something or someone fired at or marked for attack  **d** : a goal to be achieved  **3 a** : an object of ridicule or criticism  **b** : something or someone to be affected by an action or development  **4 a** : the metallic surface (as of platinum or tungsten) upon which the stream of electrons within an X-ray tube is focused and from which the X-rays are emitted  **b** : a body, surface, or material bombarded with nuclear particles or electrons; *esp* : fluorescent material on which desired visual effects are produced in electronic devices (as in radar) — **off target** : not valid : INACCURATE — **on target**  **1** : precisely correct or valid esp. in interpreting or addressing a problem or vital issue

**²target** *vt* (1837)  **1** : to make a target of <~*ed* her for promotion>; *esp* : to set as a goal  **2** : to direct or use toward a target

**tar·get·able** \'tär-gə-tə-bəl\ *adj* (1964) : capable of being aimed at a target <missiles with ~ warheads>

**target date** *n* (1945) : the date set for an event or for the completion of a project, goal, or quota

**target language** *n* (1953)  **1** : a language into which another language is to be translated — compare SOURCE LANGUAGE  **2** : a language other than one's native language that is being learned

**Tar·gum** \'tär-,güm, -,gum\ *n* [LHeb *targūm*, fr. Aram, translation] (1587) : an Aramaic translation or paraphrase of a portion of the Old Testament

**Tar Heel** *n* (1864) : a native or resident of North Carolina — used as a nickname

**tar·iff** \'ter-əf, 'ta-rəf\ *n* [It *tariffa*, fr. Ar *ta'rīf* notification] (1592)  **1 a** : a schedule of duties imposed by a government on imported or in some countries exported goods  **b** : a duty or rate of duty imposed in such a schedule  **2** : a schedule of rates or charges of a business or a public utility  **3** : PRICE, CHARGE

**²tariff** *vt* (ca. 1828) : to subject to a tariff

**tar·la·tan** \'tär-lə-tən\ *n* [F *tarlatane*] (ca. 1741) : a sheer cotton fabric in open plain weave usu. heavily sized for stiffness

**tar·mac** \'tär-,mak\ *n* [fr. *Tarmac*, a trademark] (1919) : a tarmacadam road, apron, or runway

**Tarmac** *trademark* — used for a bituminous binder for roads

**tar·mac·ad·am** \,tär-mə-'ka-dəm\ *n* (1882)  **1** : a pavement constructed by spraying or pouring a tar binder over layers of crushed stone and then rolling  **2** : material of tar and aggregates mixed in a plant and shaped on the roadway

**tarn** \'tärn\ *n* [ME *terne, tarne*, of Scand origin; akin to ON *tjǫrn* small lake] (14c) : a small steep-banked mountain lake or pool

**tar·na·tion** \tär-'nā-shən\ *n* [alter. of *darnation*, euphemism for *damnation*] (1790) : DAMNATION — often used as an interjection or intensive often used with *in* <~ strike me —James Joyce> <where in ~ you from? —Jessamyn West>

**¹tar·nish** \'tär-nish\ *vb* [ME *ternysshen*, fr. MF *terniss-*, stem of *ternir*, prob. of Gmc origin; akin to OHG *tarnan* to hide] *vt* (15c)  **1** : to dull or destroy the luster of by or as if by air, dust, or dirt : SOIL, STAIN  **2 a** : to detract from the good quality of : VITIATE <his fine dreams now slightly ~*ed*>  **b** : to bring disgrace on : SULLY <the scandal has ~*ed* his reputation> ~ *vi* : to become tarnished — **tar·nish·able** \-ni-shə-bəl\ *adj*

**²tarnish** *n* (1684) : something that tarnishes; *esp* : a film of chemically altered material on the surface of a metal (as silver)

**tarnished plant bug** *n* (1902) : a common hemipterous brownish bug (*Lygus lineolaris*) of eastern No. America that causes injury to plants esp. by sucking sap from buds, leaves, and fruits

**ta·ro** \'tär-(,)ō, 'ter-\ *n, pl* **taros** [Tahitian & Maori] (1769) : a large-leaved tropical Asian plant (*Colocasia esculenta*) of the arum family grown throughout the tropics for its edible


tarnished plant bug

**tra·gus** \'trā-gəs\ *n, pl* **tra·gi** \-ˌgī, -ˌjī\ [NL, fr. Gk *tragos*, a part of the ear, lit., goat] (ca. 1693) : the prominence in front of the external opening of the outer ear

**¹trail** \'trāl\ *vb* [ME, perh. fr. AF *trailer*, alter. of *trainer* to drag, trail on the ground — more at TRAIN] *vi* (13c) **1 a** : to hang down so as to the ground **b** : to extend over a surface in a loose drag along or sweep the ground **b** : to extend over a surface in a loose or straggling manner ⟨a vine that ∼∼ over the ground⟩ ⟨∼*ing* branches of such length as to droop over toward the ground ⟨∼*ing* branches of a weeping birch⟩ **2 a** : to walk or proceed draggingly, heavily, or wearily : PLOD, TRUDGE **b** : to lag behind : do poorly in relation to others **3** : to move, flow, or extend slowly in thin streams ⟨smoke ∼*ing* from chimneys⟩ **4 a** : to extend in an erratic or uneven course or line : STRAGGLE **b** : DWINDLE ⟨her voice ∼*ing* off⟩ **5** : to follow a trail : track game ∼ *vt* **1 a** : to draw or drag loosely along a surface : al- low to sweep the ground **b** : HAUL, TOW **2 a** : to drag (as a limb or the body) heavily or wearily **b** : to carry or bring along as an addition, burden, or encumbrance **c** : to draw along in one's wake **3 a** : to fol- low upon the scent or trace of : TRACK **b** : to follow in the footsteps of : PURSUE **c** : to follow along behind **d** : to lag behind (as a com- petitor) *syn* see CHASE

**²trail** *n* (14c) **1** : something that trails or is trailed: as **a** : a trailing plant **b** : the train of a gown **c** : a trailing arrangement (as of flow- ers) : SPRAY **d** : the part of a gun carriage that rests on the ground when the piece is unlimbered **2 a** : something that follows or moves along as if being drawn along ⟨TRAIN ⟨a ∼ of admirers⟩ **b** (1) : the streak produced by a meteor (2) : a continuous line produced photo- graphically by permitting the image of a celestial body (as a star) to move over the plate **c** : a chain of consequences : AFTERMATH ⟨the ... movement left a ∼ of bitterness and prejudice behind it —Paul Blanshard⟩ **3 a** : a trace or mark left by something that has passed or been drawn along : SCENT, TRACK ⟨a ∼ of blood⟩ **b** (1) : a track made by passage esp. through a wilderness (2) : a marked or estab- lished path or route esp. through a forest or mountainous region **c** : a course followed or to be followed ⟨hit the campaign ∼⟩ — **trail·less** \'trāl-ləs\ *adj*

**trail bike** *n* (1966) : a small motorcycle designed for off-road use
**trail·blaz·er** \'trāl-ˌblā-zər\ *n* (1908) **1** : one that blazes a trail to guide others : PATHFINDER **2** : PIONEER **2** ⟨a ∼ in astrophysics⟩
**trail·blaz·ing** \-ziŋ\ *adj* (1951) : making or opening a new way ⟨∼ leg- islation⟩
**trail·break·er** \-ˌbrā-kər\ *n* (1925) : TRAILBLAZER
**¹trail·er** \'trā-lər\ *n* (1590) **1** : one that trails **2** : a trailing plant **3** : a nonautomotive vehicle designed to be hauled by road: as **a** : a vehicle for transporting something ⟨a boat ∼⟩; *esp* : SEMITRAILER **1 b** : a ve- hicle designed to serve wherever parked as a temporary dwelling or place of business **c** : MOBILE HOME **4** : PREVIEW **3 b** : a short blank strip of film attached to the end of a reel
**²trailer** *vb* (1938) **1** : to live or travel in or with a trailer **2** : to be trans- portable by trailer ⟨a light boat that ∼s easily⟩ ∼ *vt* : to transport (as a boat) by means of a trailer — **trail·er·able** \-lə-rə-bəl\ *adj* — **trail- er·ing** *n*
**trailer park** *n* (1942) : an area equipped to accommodate mobile homes — called also *trailer camp, trailer court*
**trail·head** \'trāl-ˌhed\ *n* (1948) : the point at which a trail begins
**trailing arbutus** (1785) : ARBUTUS **2**
**trailing edge** *n* (1909) : the rearmost edge of an object that moves and esp. of an airfoil
**trail mix** *n* (1972) : a mixture of seeds, nuts, and dried fruits eaten as a snack esp. by hikers
**trail·side** \'trāl-ˌsīd\ *adj* (1923) : of, relating to, or situated in the area immediately adjacent to a trail
**¹train** \'trān\ *n* [ME *traine* treachery, fr. AF, fr. *trahir* to betray, fr. L *tradere* — more at TRAITOR] (14c) *obs* : SCHEME, TRICK
**²train** *n* [ME, fr. AF, fr. *trainer* to draw, drag] (14c) **1** : a part of a gown that trails behind the wearer **2 a** : RETINUE, SUITE **b** : a moving file of persons, vehicles, or animals **3** : the vehicles, personnel, and some- times animals that furnish supply, maintenance, and evacuation servic- es to a combat unit **4 a** : order of occurrence leading to some result — often used in the phrase *in train* ⟨this humiliating process had been in ∼ for decades —Paul Fussell⟩ **b** : an orderly succession ⟨a ∼ of thought⟩ **c** : accompanying or resultant circumstances : AFTERMATH ⟨consequences the discovery will bring in its ∼⟩ **5** : a line of combus- tible material laid to lead fire to a charge **6** : a series of moving me- chanical parts (as gears) that transmit and modify motion ⟨a gear ∼⟩ **7 a** : a connected line of railroad cars with or without a locomotive **b** : an automotive tractor with one or more trailer units **8** : a series of parts or elements that together constitute a system for producing a re- sult and esp. for carrying on a process (as of manufacture) automati- cally — **train·ful** \'trān-ˌful\ *n*
**³train** *vb* [ME, fr. AF *trainer*, fr. VL *\*traginare*; akin to L *trahere* to draw] *vt* (15c) **1** : TRAIL, DRAG **2** : to direct the growth of (a plant) usu. by bending, pruning, and tying **3 a** : to form by instruction, discipline, or drill **b** : to teach so as to make fit, qualified, or proficient **4** : to make prepared (as by exercise) for a test of skill **5** : to aim at an ob- ject or objective : DIRECT ⟨∼ed his camera on the deer⟩ ⟨∼*ing* every effort toward success⟩ ∼ *vi* **1** : to undergo instruction, discipline, or drill **2** : to go by train *syn* see TEACH — **train·abil·i·ty** \ˌtrā-nə-'bi- lə-tē\ *n* — **train·able** \'trā-nə-bəl\ *adj*
**train·band** \'trān-ˌband\ *n* [alter. of *trained band*] (1630) : a 17th or 18th century militia company in England or America
**train·bear·er** \'trān-ˌber-ər\ *n* (1708) : an attendant who holds up (as on a ceremonial occasion) the train of a robe or gown
**train case** *n* (1948) : a small boxlike piece of luggage used esp. for toi- let articles
**train dispatcher** *n* (1857) : a railroad employee who directs the move- ment of trains within a division and coordinates their movement from one division to another
**train·ee** \trā-'nē\ *n* (1841) : one that is being trained esp. for a job
**train·ee·ship** \-'nē-ˌship\ *n*
**train·er** \'trā-nər\ *n* (1598) **1** : one that trains **2** : one (as a machine or vehicle) used in training **3** : a person who treats the ailments and minor injuries of the members of an athletic team **4** *chiefly Brit* : SNEAKER **2**

**train·ing** \'trā-niŋ\ *n* (1548) **1** : the act, process, or method of one that trains **2** : the skill, knowledge, or experience acquired by one that trains **3** : the state of being trained
**training college** *n* (1850) *Brit* : TEACHERS COLLEGE
**training school** *n* (1829) **1** : a school preparing students for a partic- ular occupation **2** : a correctional institution for the custody and education of juvenile delinquents
**training table** *n* (1893) : a table where athletes under a training regi- men eat meals planned to help in their conditioning
**training wheels** *n pl* (1964) : a pair of small wheels connected to the rear axle of a bicycle to help a beginning bicyclist maintain balance
**train·load** \'trān-ˌlōd\ *n* (1854) : the full freight or passenger capacity of a railroad train; *also* : a load that fills a train
**train·man** \-mən, -ˌman\ *n* (1877) : a member of a train crew su- pervised by a conductor
**train oil** \'trān-\ *n* [obs, *train* train oil, fr. ME *trane*, fr. MD *trane* or MLG *trān*; akin to OHG *trahan* tear] (1553) : oil from a marine an- imal (as a whale)
**traipse** \'trāps\ *vb* **traipsed; traips·ing** [origin unknown] *vi* (14c) **1** : to go on foot : WALK ⟨*traipsed* over to the restaurant⟩ ⟨children *traipsing* at her heels⟩; *also* : to walk or travel about without apparent plan but with or without a purpose ⟨a week *traipsing* through the Ozarks⟩ ⟨*traipsing* from office to office⟩ ∼ *vt* : TRAMP, WALK ⟨∼ the country- side⟩ *syn* see WANDER — **traipse** *n*
**trait** \'trāt, *Brit usu* 'trā\ *n* [MF, lit., act of drawing, fr. L *tractus* — at TRACT] (1589) **1 a** : a stroke of or as if of a pencil **b** : TOUCH, TRACE **2 a** : a distinguishing quality (as of personal character) ⟨curi- osity is one of her notable ∼s⟩ **b** : an inherited characteristic
**trai·tor** \'trā-tər\ *n* [ME *traytour*, fr. AF *traitre*, fr. L *traditor*, fr. *tradere* to hand over, deliver, betray, fr. *trans-, tra- trans- + dare* to give — more at DATE] (13c) **1** : one who betrays another's trust or is false to an obligation or duty **2** : one who commits treason
**trai·tor·ous** \'trā-tə-rəs, 'trā-trəs\ *adj* (14c) **1** : guilty or capable of treason **2** : constituting treason ⟨∼ activities⟩ *syn* see FAITHLESS — **trai·tor·ous·ly** *adv*
**trai·tress** \'trā-trəs\ *or* **trai·tor·ess** \'trā-tə-rəs, 'trā-trəs\ *n* (14c) : a woman who is a traitor
**tra·jec·tion** \trə-'jekt\ *vt* [L *trajectus*, pp. of *traicere*] (1657) : TRANSMIT —
**tra·jec·tion** \-'jek-shən\ *n*
**tra·jec·to·ry** \trə-'jek-t(ə-)rē\ *n, pl -ries* [NL *trajectoria*, fr. fem. of *tra- jectorius* of passing, fr. L *traicere* to cause to cross, cross, fr. *trans-, tra- + jacere* to throw — more at JET] (1696) **1** : the curve that a body (as a planet or comet in its orbit or a rocket) describes in space **2** : a path, progression, or line of development resembling a physical tra- jectory ⟨an upward career ∼⟩
**Tra·keh·ner** \trä-'kā-nər\ *n* [G, fr. *Trakehnen*, site of the Prussian royal stud in East Prussia] (1926) : any of a breed of large powerful saddle horses of East Prussian origin that excel in dressage and jumping
**¹tram** \'tram\ *n* [E dial., shaft of a wheelbarrow, prob. fr. LG *traam*, lit., beam] (ca. 1517) **1** : any of various vehicles: as **a** : a boxlike wagon running on rails (as in a mine) **b** *chiefly Brit* : STREETCAR **c** : a carri- er that travels on an overhead cable or rails **2** *pl, chiefly Brit* : a street- car line
**²tram** *vb* **trammed; tram·ming** (1874) : to haul in, travel on, or over a tram- way
**tram·car** \'tram-ˌkär\ *n* (1873) **1** *chiefly Brit* : STREETCAR **2** : TRAM 1a
**tram·line** \-ˌlīn\ *n* (1886) *Brit* : a streetcar line
**tram·mel** \'tra-məl\ *n* [ME *tramayle*, a kind of net, fr. OF *tramail*, fr. LL *tremaculum*, fr. L *tres* three + *macula* mesh, spot — more at THREE] (14c) **1** : a net for catching birds or fish; *esp* : one having three layers with the middle one finer-meshed and slack so that fish passing through carry some of the center net through the coarser opposite net and are trapped **2** : an adjustable pothook for a fireplace crane **3** : a shackle used for making a horse amble **4** : something impeding activ- ity, progress, or freedom : RESTRAINT — usu. used in pl. **5 a** : an in- strument for drawing ellipses **b** : a compass for drawing large circles that consists of a beam with two sliding parts — usu. used in pl. **c** : any of various gauges used for aligning or adjusting machine parts
**²trammel** *vt* **-meled** *or* **-melled; -mel·ing** *or* **-mel·ling** \'tram-liŋ, -mə-liŋ\ (ca. 1606) **1** : to catch or hold in or as if in a net : ENMESH **2** : to prevent or impede the free play of : CONFINE *syn* see HAMPER
**¹tra·mon·tane** \trə-'män-ˌtān, ˌtra-mən-'\ *n* (1593) : one dwelling in a tramontane region; *broadly* : FOREIGNER
**²tramontane** *adj* [It *tramontano*, fr. L *transmontanus*, fr. *trans- + mont-, mons* mountain — more at MOUNT] (1596) **1** : TRANSALPINE **2** : ly- ing on or coming from the other side of a mountain range
**¹tramp** \'tramp, *vi 1 & vt 1 are also* 'trömp\ *vb* [ME; akin to MLG *trampen* to stamp] *vi* (14c) **1** : to walk, tread, or step esp. heavily ⟨∼*ed* loudly on the stairs⟩ **2 a** : to travel about on foot : HIKE **b** : to journey as a tramp ∼ *vt* **1** : to tread on forcibly and repeatedly **2** : to travel or wander through or over on foot ⟨∼*ed* all the woods on their property⟩ — **tramp·er** *n*
**²tramp** \'tramp, *2, 4 are also* 'trämp, 'trömp\ *n* (1790) **1 a** : VAGRANT **1a b** : a foot traveler **c** : a woman of loose morals; *specif* : PROSTITUTE **2** : a walking trip : HIKE **3** : the succession of sounds made by the beating of feet on a surface (as a road, pavement, or floor) **4** : an iron plate to protect the sole of a shoe **5** : a ship not making regular trips but taking cargo when and where it offers and to any port — called also *tramp steamer* — **trampy** \'tram-pē\ *adj*
**³tramp** \'tramp\ *adj* (1873) : having no fixed abode, connection, or desti- nation ⟨a ∼ dog⟩
**tramp art** *n* (1974) : a style of wood carving flourishing in the U.S. from about 1875 to 1930 that is characterized by ornate layered whittling of- ten of cigar boxes or fruit crates; *also* : an object carved in this style
**tram·ple** \'tram-pəl\ *vb* **tram·pled; tram·pling** \-p(ə-)liŋ\ [ME, freq. of *trampen* to tramp] *vi* (14c) **1** : TRAMP; *esp* : to tread heavily so as to bruise, crush, or injure **2** : to inflict injury or destruction esp. con- temptuously or ruthlessly — usu. used with *on, over,* or *upon* ⟨*tram- pling* on the rights of others⟩ ∼ *vt* **1** : to crush, injure, or destroy by or as if by treading ⟨*trampled* the flowers⟩ — **trample** *n* — **tram·pler** \-p(ə-)lər\ *n*
**tram·po·line** \ˌtram-pə-'lēn, 'tram-pə-ˌ\ *n* [It *trampolino* springboard, fr. *trampoli* stilts, of Gmc origin; akin to MLG *trampen* to stamp]